# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM; JOSE VILLELA; TASHA ANDREWS; ADAM ARCE; ALEXANDER BAYON; MALCOLM BEZET; ALDABERT BIELSKI; LAURA BRUNSTETTER; ALEX BUSTILLOS; GRAHAM CODER; KIMBERLY CORPORA; JOSHUA CRIBBS; MICHAEL DEBEY; JAMES DROHAN; SAMUEL EBEYER; MARIAN ELLIOTT; JENNIFER GEREN; RACHELLE GLENN; BRETT GLOSS; IVAN GUTIERREZ; WARREN JENKINS; BRADLEY JOHNSON; MONTE KEIPER; SCOTT LEMASTER; SCOTT MCGLOTHIN; TY MORRISON; GARRET O'BOYLE; ANN PARRILLO; SUNDANAH PARSONS; DANIEL SAAVEDRA; ROBERT SCOTT; ANDREW SELLERS; KYLE SERAPHIN; LANCE SHAKESPEAR; CHRISTOPHER TOOMPAS; BRIAN TOY; ANTHONY TRAN; MARY BETH WRIGHT; PATRICK WRIGHT; PATRICK YORK, | CIVIL NO. 4:23-cv-1817 **Individual Defs. Garland & Wray's Motion to Dismiss under F.R.C.P. 12(b)(1), (2) and (6).** |

Plaintiffs,

v.

MERRICK B. GARLAND, Attorney General, in his individual and official capacities;

U.S. DEPARTMENT OF JUSTICE, a federal agency.

CHRISTOPHER WRAY, Director of the Federal Bureau of Investigation, in his individual and official capacities;

FEDERAL BUREAU OF INVESTIGATION, a federal agency

Defendants

# **TABLE OF CONTENTS**

**Nature of the Proceeding & Summary of the Argument** ........................................................... 1

**Factual Background** ..................................................................................................................... 2

    A. FBI's COVID-19 Safety Measures ........................................................................................ 2

    B. Plaintiffs and Their Allegations ........................................................................................... 4

**Procedural History and Statement of Issues** ............................................................................ 5

**Legal Standards** .......................................................................................................................... 6

**Argument** ..................................................................................................................................... 7

**I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' RFRA and *Bivens* Claims** ................................................................................................................................. 7

    A. Sovereign Immunity Bars Individual-Capacity RFRA Damages Claims Based on the Direct Effects of FBI Policy .................................................................................................. 8

    B. The Harms Alleged In The FAC Are Not Traceable To The Individual Defendants.... 10

**II.   This Court Lacks Personal Jurisdiction Over the Individual Defendants** ................. 11

**III.  Plaintiffs Fail to Plead Viable *Bivens* Claims** .......................................................... 13

    A. Plaintiffs' Claims Impermissibly Extend *Bivens* to a New Context ............................... 14

    B. Special Factors Preclude Extension of the *Bivens* Remedy to Plaintiffs' Claims ......... 16

        1.   Alternative Remedies ................................................................................................ 17

        2.   Other Special Factors ................................................................................................ 21

**IV.  The Individual Defendants Are Entitled To Qualified Immunity on All Claims** ..... 22

    A. Personal Involvement .......................................................................................................... 23

    B. Plaintiffs Fail to Allege a Violation of Clearly Established  Law Under the Constitution or RFRA ............................................................................................................................. 26

        1.   Constitutional Claims ............................................................................................... 27

        2.   RFRA Claim .............................................................................................................. 28

**V.    Plaintiffs' Allegations Do Not Support the Availability of Damages Against High-Ranking Federal Officials as "Appropriate Relief" Under RFRA.** .......................... 30

**Conclusion** ................................................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**

*Ackel v. Nat'l Comms., Inc.,*
    339 F.3d 376 (5th Cir. 2005) ................................................................. 6
*Adkins v. Kaspar,*
    393 F.3d 559 (5th Cir. 2004) ............................................................... 29
*Anderson v. Creighton,*
    483 U.S. 635 (1987) ............................................................................. 27
*Antietam Battlefield KOA v. Hogan,*
    461 F. Supp. 3d 214 (D. Md. 2020) .................................................... 32
*Application of President & Directors of Georgetown Coll., Inc.,*
    331 F.2d 1000 (D.C. Cir. 1964) ........................................................... 27
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... passim
*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................. 6, 7, 29
*Benzman v. Whitman,*
    523 F.3d 119 (2d Cir. 2008) ................................................................ 32
*Big Tyme Investments, L.L.C. v. Edwards,*
    985 F.3d 456 (5th Cir. 2021) ............................................................... 21
*Biron v. Upton,*
    No. 19-10862, 2022 WL 17691622 (5th Cir. Dec. 14, 2022) ............... 22
*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ........................................................................ 5, 13
*Broadway v. Block,*
    694 F.2d 979 (5th Cir. 1982) ............................................................... 19
*Brown v. Gen. Servs. Admin.,*
    425 U.S. 820 (1976) ............................................................................. 17
*Brownback v. King,*
    141 S. Ct. 740 (2021) .......................................................................... 6, 7
*Bundy v. Sessions,*
    812 F. App'x 1 (D.C. Cir. 2020) .......................................................... 24
*Bush v. Lucas,*
    462 U.S. 367 (1983) ...................................................................... 14, 15
*Butts v. Martin,*
    4 No. 1:12cv114, 2021 WL 1085310 (E.D. Tex. Mar. 8, 2021) ........... 15
*Cantu v. Moody,*
    933 F.3d 414 (5th Cir. 2019) ............................................................... 15
*Carlson v. Green,*
    446 U.S. 14 (1980) ............................................................................... 14
*Cheney v. U.S. Dist. Court for D.C.,*
    542 U.S. 367 (2004) ............................................................................. 31
*Coleman v. Dretke,*
    409 F.3d 665 (5th Cir. 2005) ................................................................. 2

*Colorado Springs Fellowship Church v. Williams*,
   No. 21-1269, 2022 WL 2118440 (10th Cir. June 13, 2022)..................................................25

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ...............................................................................................................19

*Cruzan v. Director, Missouri Dep't of Health*,
   497 U.S. 261 (1990)........................................................................................................15, 16

*Curry v. Gonzales*,
   No. 07-cv-0199 (JR), 2007 WL 3275298 (D.D.C. Nov. 6, 2007) .........................................25

*Davila v. Gladden*,
   777 F.3d 1198 (11th Cir. 2015) ..............................................................................................8

*Davis v. Fed. Bureau of Prisons*,
   No. 15-cv-0884-WJM-MJW, 2017 WL 11504857 (D. Colo. Apr. 7, 2017) ...........................25

*Davis v. Passman*,
   442 U.S. 228 (1979)........................................................................................................13, 16

*Delaughter v. Woodall*,
   909 F.3d 130 (5th Cir. 2018) ................................................................................................26

*Doe v. Franklin Square Union Free Sch. Dist.*,
   568 F. Supp. 3d 270 (E.D.N.Y. 2021) ..................................................................................30

*Dugan v. Rank*,
   372 U.S. 609 (1963)................................................................................................................9

*Egbert v. Boule*,
   142 S. Ct. 1793 (2022)....................................................................................................passim

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ...........................................................................................................18, 21

*Fazaga v. FBI*,
   965 F.3d 1015 (9th Cir. 2020) ..............................................................................................18

*Feds for Med. Freedom v. Biden*,
   30 F.4th 503 (5th Cir. 2022)..............................................................................................4, 27

*Feds for Med. Freedom v. Biden*,
   63 F.4th 366 (5th Cir. 2023) ....................................................................................4, 18, 19

*Feds for Med. Freedom v. Biden*,
   581 F. Supp. 3d 826 (S.D. Tex. 2022) .................................................................................1, 3

*Freeman v. United States*,
   556 F.3d 326 (5th Cir. 2009) ................................................................................................32

*Ganther v. Ingle*,
   75 F.3d 207 (5th Cir. 1996) ..................................................................................................22

*Gaspard v. United States*,
   713 F.2d 1097 (5th Cir. 1983) ........................................................................................18, 19

*Ghedi v. Mayorkas*,
   16 F.4th 456 (5th Cir. 2021) ......................................................................................7, 10, 11

*Goodyear Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............................................................................................................11

*Gonzalez v. Manjarrez*,
   558 F. App'x 350 (5th Cir. 2014) ..........................................................................................18

*Grisham v. United States*,
   103 F.3d 24 (5th Cir. 1997) ....................................................................................................9

iv

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................. 22

*Henley v. Simpson,*
    527 F. App'x 303 (5th Cir. 2013) ............................................. 9

*Hernandez v. Mesa,*
    140 S. Ct. 735 (2020) .................................................. 13, 14, 15

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997) ................................................................. 9

*Indest v. Freeman Decorating, Inc.,*
    164 F.3d 258 (5th Cir. 1998) ................................................... 6

*In re World Trade Ctr. Disaster Site Litig.,*
    521 F.3d 169 (2d Cir. 2008) ................................................... 32

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,*
    818 F.3d 193 (5th Cir. 2016) ................................................. 12

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) ............................................................ 16, 27

*Keller v. Fleming,*
    952 F.3d 216 (5th Cir. 2020) ................................................. 26

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ................................................................. 5

*Lane v. Pena,*
    518 U.S. 187 (1996) ................................................................. 8

*Lineberry v. United States,*
    436 F. App'x 293 (5th Cir. 2010) .................................... 24, 26

*Lloyd v. Birkman,*
    127 F. Supp. 3d 725 (W.D. Tex. 2015) ................................... 29

*Luder v. Endicott,*
    253 F.3d 1020 (7th Cir. 2001) ........................................... 9, 10

*Navy Seals 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2022) ........................................... 26, 29

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011) ................................................. 27

*Morgan v. White,*
    964 F.3d 649 (7th Cir. 2020) ................................................. 30

*Murphy v. Collier,*
    139 S. Ct. 1475 (2019) ........................................................... 30

*Oliva v. Nivar,*
    973 F.3d 438 (5th Cir. 2020) ...................................... 17, 19, 21

*Patel v. Bureau of Prisons,*
    125 F. Supp. 3d 44 (D.D.C. 2015) ......................................... 25

*Paz v. Brush Engineered Materials, Inc.,*
    445 F.3d 809 (5th Cir. 2006) ................................................... 7

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ............................................................... 23

*Perez v. F.B.I.,*
    71 F.3d 513 (5th Cir. 1995) ............................................. 18, 21

v

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)................................................................................... 9, 10

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ................................................................... 5, 30

*Prince v. Massachusetts*,
  321 U.S. 158 (1944).................................................................................... 27

*Ramie v. City of Hedwig, Tex.*,
  765 F.2d 490 (5th Cir. 1985) .................................................................... 29

*Ramirez v. Guadarrama*,
  3 F.4th 129 (5th Cir. 2021) ...................................................................... 23

*Rollins v. Marsh*,
  937 F.2d 134 (5th Cir. 1991) .................................................................... 18

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018) ........................................................... 7, 11, 12

*Saucier v. Katz*,
  533 U.S. 194 (2001).................................................................................... 23

*Shields of Strength v. U.S. Dept. of Def.*,
  -- F. Supp. 3d ---, 2023 WL 3293279 (E.D. Tex. May 5, 2023) ............ 8, 23

*Smith v. Carvajal*,
  558 F. Supp. 3d 340 (N.D. Tex. 2021) ............................................... 11, 22

*Sossamon v. Texas*,
  563 U.S. 277 (2011) ..................................................................................... 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).................................................................................... 10

*Spotts v. United States*,
  613 F.3d 559 (5th Cir. 2010) .................................................................... 32

*Tagore v. United States*,
  735 F.3d 324, 329 (5th Cir. 2013) ............................................................ 17

*Tanvir v. Tanzin*,
  894 F.3d 449 (2d Cir. 2018)...................................................................... 31

*Tanzin v. Tanvir*,
  141 S. Ct. 486 (2020)........................................................................... passim

*Targeted Justice, Inc. v. Garland*,
  No. H-23-1013, 2023 WL 4471553 (S.D. Tex. Jul. 11, 2023) ................. 12

*Terrebonne v. Blackburn*,
  646 F.2d 997 (5th Cir. 1981) ...................................................................... 2

*United States v. Comrie*,
  842 F.3d 348 (5th Cir. 2016) .................................................................... 28

*United States v. Horton*,
  No. 19-cr-115-ELH, 2023 WL 3390910 (D. Md. May 10, 2023) ............. 32

*Vu v. Meese*,
  755 F. Supp. 1375 (E.D. La. 1991) ........................................................... 11

*Walden v. Fiore*,
  571 U.S. 277 (2014)............................................................................. 11, 12

*Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*,
  998 F.3d 682 (5th Cir. 2021) .................................................................... 15

*White v. Sherrod*,
    No. 07-cv-821-MJR, 2009 WL 196332 (S.D. Ill. Jan. 28, 2009) .............................. 25
*Whitfield v. Cuyahoga Cnty. Pub. Library Foundation*,
    No. 1:21 CV 0031, 2021 WL 1964360 (N.D. Ohio May 17, 2021) ........................ 30
*Wilson v. Layne*,
    526 U.S. 603 (1999) ..................................................................................... 27
*Wilkie v. Robbins*,
    551 U.S. 537 (2007) ..................................................................................... 19
*Wyatt v. Fletcher*,
    718 F.3d 496 (5th Cir. 2013) ....................................................................... 23
*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ........................................................................... passim
*Zirpolo v. Williams*,
    No. 19-cv-2024-WJM-KMT, 2020 WL 3104078 (D. Colo. June 11, 2020) ........................ 25

**Statutes, Rules, and Other Authorities**

5 U.S.C. § 405 ............................................................................................... 20
5 U.S.C. § 413 ............................................................................................... 20
28 U.S.C. § 1346(b) ....................................................................................... 19
28 U.S.C. § 2671 ........................................................................................... 19
42 U.S.C. § 2000bb-1 .................................................................................... 28
*Contact Us: Field Offices*, https://www.fbi.gov/contact-us/field-offices (last visited November
    10, 2023) ..................................................................................................... 21
DOJ, OIG, HOTLINE, https://oig.justice.gov/hotline ........................................... 20
Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021) ....................... 1, 2, 22
Exec. Order No. 14099, 88 Fed. Reg. 30891 (May 9, 2023) ................................ 1
FBI, *Contact Us: FBI Headquarters*, https://www.fbi.gov/contact-us/fbi-headquarters ............ 21
Fed. R. Civ. P. 8 ............................................................................................... 6
HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020),
    https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx ............ 2, 32
OPR, Submit Professional Misconduct Complaint to OPR, https://www.justice.gov/opr/submit-
    professional-misconduct-complaint (last visited November 10, 2023) ................... 20
Prabhat Jha, Patrick E. Brown & Rashid Ansumana, *Counting the global COVID-19
    dead*, Lancet, May 6, 2022, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9075854/ ........ 32

## <u>INDIVIDUAL DEFENDANTS' MOTION TO DISMISS UNDER</u>
## <u>FED. R. CIV. P. 12(b)(1), (2), & (6)</u>

### Nature of the Proceeding & Summary of the Argument

The first page of Plaintiffs' First Amended Complaint (FAC) states:

> While the [COVID-19] pandemic clearly presented novel issues of medicine, medical freedom, bodily autonomy, religious freedom, and law and policy, there was never a time of fulsome consensus by the government, medical personnel, or the citizenry on how to respond to it. [. . .] Indeed, as more information about the pandemic now comes to light, much of what was considered false or controversial at one time [has come to] enjoy[] acceptance as factually accurate and true.

FAC at ¶¶ 3-4. Despite this introduction, Plaintiffs—an advocacy organization and 39 of its members—contend that Attorney General (AG) Merrick B. Garland and Federal Bureau of Investigation (FBI) Director Christopher Wray (the "Individual Defendants") must be held personally liable for violating *clearly established* law under the First Amendment, Fifth Amendment, and Religious Freedom Restoration Act (RFRA) merely because they presided over an agency that navigated those novel conflicts by implementing an Executive Order (E.O.) requiring vaccination against COVID-19.[1]

Plaintiffs are incorrect, and their claims should be dismissed for five reasons. First, the Court lacks subject-matter jurisdiction over Plaintiffs' RFRA claim because it is a challenge to official policies that must run against the Government rather than its employees, and Plaintiffs lack standing to sue the Individual Defendants for harms that are not traceable to them. Second, the Court lacks personal jurisdiction over the Individual Defendants, neither of whom lives or works in Texas. Third, separation of powers, alternative remedies, and other special factors preclude

---

[1] On September 9, 2021, "to promote the health and safety of the Federal workforce and the efficiency of the civil service," President Biden issued Executive Order 14043, which required all federal employees to become fully vaccinated against COVID-19, subject to exceptions required by law. Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021). While Plaintiffs mention the vaccine mandate, they readily acknowledge that the temporary vaccine mandate has not been in effect since January 21, 2022, *see* FAC ¶ 36, when a nationwide injunction enjoined federal agencies from enforcing E.O. 14043 as to their employees. *See also Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836-37 (S.D. Tex. 2022), *aff'd on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023). They further concede that E.O. 14043 was formally rescinded in May of this year. FAC ¶ 131; *see also* Exec. Order No. 14099, 88 Fed. Reg. 30891 (May 9, 2023).

1

recognition of Plaintiffs' novel *Bivens* claims based upon the alleged actions of the Individual Defendants during the implementation of a Government policy in response to a global pandemic. Fourth, qualified immunity applies because the FAC fails to plausibly allege that the Individual Defendants were personally involved in any violation of Plaintiffs' rights under the Constitution or RFRA, let alone that the Individual Defendants violated clearly established law. Finally, Plaintiffs fail to allege a RFRA violation under clearly established law because individual capacity damages are not "appropriate relief" in the context of this case, which challenges the Government's response to an unprecedented public health emergency.

For all these reasons, the Court should dismiss all claims against the Individual Defendants with prejudice and without leave to amend.

## Factual Background[2]

### A. FBI's COVID-19 Safety Measures

Novel Coronavirus Disease 2019 (COVID-19) and its variants have caused significant illness and death in the U.S. and globally. HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx. In response to the public health emergency created by COVID-19, the Executive Branch adopted policies "to halt the spread of [COVID-19], . . . by relying on the best available data and science-based public health measures." Exec. Order No. (E.O.) 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021). Among the measures adopted was a requirement that federal employees— including the FBI employees here—be vaccinated against COVID-19, "subject to such exceptions as required by law." *Id.* In adopting this policy, President Biden stated, "It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public. The [Centers for Disease Control and Prevention] ha[ve] found that the best way to do so is to be vaccinated." *Id.*

---

[2] The facts recited herein are drawn from the FAC, documents incorporated into it by reference, and other sources of judicially noticeable material, such as government websites, agency memos, and reports. *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (noticing government website); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) (noticing "agency records and reports.").

Like other federal agencies, the U.S. Department of Justice (DOJ) and FBI, a component of DOJ, implemented E.O. 14043. According to the FAC, DOJ Assistant Attorney General (AAG) Lee Lofthus began the implementation with a September 13, 2021, E-Mail to DOJ and FBI employees. FAC ¶ 74. The E-Mail ordered those employees "to comply with the President's mandate no later than November 22, 2021." *Id.* On September 17, 2021, AAG Lofthus sent another E-Mail, which stated that failure to meet the November 22 deadline would subject employees to "possible disciplinary action, up to and including removal from federal service, unless employees secured an exemption through the reasonable accommodation process." *Id.* ¶ 75. Plaintiffs admit that the FBI created a process by which employees could request such exemptions. *Id.* ¶¶ 77, 80.

Plaintiffs further admit that the FBI's Office of Equal Employment Opportunity Affairs circulated a memo to all FBI employees on November 17, 2021, which stated it had received over 2,500 requests for accommodations, and that it was in the process of adjudicating them. *Id.* ¶ 80. The memo announced that "[for] those who have completed the required COVID-19 vaccination attestations and requested a reasonable accommodation, no disciplinary action will be taken until an HR decision is rendered." *Id.* Finally, the memo provided that employees seeking accommodations were required to adhere to basic COVID-19 "safety protocols," namely masking, social distancing, and periodic testing. *Id.* ¶ 88. Plaintiffs contend that employees who did not share their religious beliefs "were not required to follow" these protocols but admit that the vaccination mandate also applied to employees seeking medical—rather than religious—exemptions. *Id.* (admitting that employees seeking "medical accommodations" were subject to the same protocols).

Plaintiffs concede that they were no longer subject to the vaccine mandate beginning January 22, 2022, when they received notice that it had been enjoined. *Id.* ¶ 36. However, they allege that FBI continued to require masking, social distancing, and testing. *Id.* [3] That injunction

---

[3] The injunction did not prohibit enforcement of such safety measures. *See Feds for Medical Freedom*, 581 F. Supp. 3d at 836, *rev'd* 30 F.4th 503 (5th Cir. 2022) *and reinstated* 63 F.4th 366 (5th Cir. 2023).

was subsequently vacated by a three-judge panel of the Fifth Circuit, *see Feds for Medical Freedom v. Biden*, 30 F.4th 503 (5th Cir. 2022), but before the vaccine mandate could be reinstated, the Fifth Circuit granted rehearing *en banc* and vacated the panel opinion. The *en banc* Court then affirmed the injunction—over a five-judge dissent. *See Feds for Medical Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023). President Biden formally rescinded E.O. 14043 on May 12, 2023. FAC ¶ 131; *see also* Exec. Order No. 14099, 88 Fed. Reg. 30891 (May 9, 2023). Plaintiffs admit they are no longer subject to a vaccine mandate. *Id.* ¶¶ 84, 131.

**B. Plaintiffs and Their Allegations**

Plaintiffs are 39 current and former FBI employees and the organization Feds for Medical Freedom. Their allegations fall into two broad categories: first, that FBI's policies mandating vaccination against the COVID-19 disease "burdened" Plaintiffs' religious exercise because they forced a choice between accepting a vaccine contrary to their beliefs, or complying with safety protocols, like masking and social distancing. *See, e.g.*, FAC ¶ 88. In some cases, they also allege that they faced discipline or lost opportunities because they refused to accept vaccination or observe COVID-19 safety protocols that did not apply to their vaccinated coworkers. *Id.* Second, various Plaintiffs allege that anonymous coworkers and supervisors harassed them, avoided them, and treated them differently because they refused to vaccinate themselves and objected to COVID-19 safety measures. *See, e.g.*, FAC ¶¶ 39, 41, 43, 47, 50.

Notwithstanding their claims of religious discrimination and failure to accommodate, fourteen named Plaintiffs (Tasha Andrews, Adam Arce, Malcolm Bezet, Laura Brunstetter, Kimberly Corpora, James Drohan, Marian Elliot, Monte Keiper, Scott LeMaster, Garrett O'Boyle, Kyle Seraphin, Lance Shakespear, Anthony Tran, and Patrick York) do not allege what their religious beliefs are or explain why those beliefs preclude compliance with the safety measures at issue. FAC ¶¶ 24, 25, 27, 29, 32, 35, 37, 44, 45, 48, 54, 55, 58, 62. A fifteenth Plaintiff (Christopher Toompas) acknowledges that he "refused to submit an exception request" and thus never sought an accommodation. *Id.* ¶ 56. And a sixteenth Plaintiff (Alexander Bayon) rests his claim on the

implausible allegation that "the FBI ultimately terminated him on June 17, 2022," and thereafter, "put him on AWOL status on December 1, 2022." *Id.* ¶ 26; *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (courts "do not accept as true conclusory allegations, *unwarranted factual inferences*, or legal conclusions.") (citations omitted, emphasis added). The remaining 23 named Plaintiffs plead that vaccination itself conflicted with their religious beliefs but do not explain how alternative safety measures, such as masking and social distancing, did so.

None of the Plaintiffs alleges that AG Garland or Director Wray was responsible for drafting E.O. 14043 or creating its vaccine mandate, nor that either personally created the FBI policies that implemented the Executive Order. Likewise, no Plaintiffs allege that AG Garland or Director Wray personally adjudicated, or knew about, their requests for religious accommodation, or had any involvement in their disciplinary proceedings. Finally, no Plaintiff alleges that AG Garland or Director Wray in any way harassed, avoided, or adversely treated them. Indeed, the only references to AG Garland or Director Wray appear in the FAC's description of parties, where Plaintiffs simply identify their supervisory positions. FAC ¶¶ 65-66.

### Procedural History and Statement of Issues

On May 17, 2023, Plaintiffs commenced this action under Title VII of the Civil Rights Act, the First and Fifth Amendments (via *Bivens*),[4] and RFRA. Dkt. 1. Plaintiffs filed their FAC on July 11, 2023, Dkt. 6, and served the Individual Defendants on August 28, 2023 (Garland), and September 18, 2023 (Wray). Dkts. 31, 36. The Individual Defendants subsequently moved for an extension of AG Garland's response deadline to November 10, 2023. Dkt. 38.

This motion is filed on behalf of AG Garland and Director Wray in their individual capacities only.[5] As such, it addresses only Plaintiffs' *Bivens* claims (Counts VIII and IX) and their

---

[4] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[5] The U.S. Attorney's Office for the Southern District of Texas will file a separate motion to dismiss the official-capacity claims (Counts I-VI) against AG Garland and Director Wray, along with the claims against FBI and DOJ. *See generally Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("a judgment against a public servant in his official capacity [only] imposes liability on the entity he represents.") (quotations and citations omitted).

RFRA claim (Count VII), to the extent that claim seeks damages from the Individual Defendants personally. By contrast, it does not address Plaintiffs' Title VII claims (Counts I-VI), which may proceed only against the agency or official-capacity defendants. *See Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2005) ("Individuals are not liable under Title VII in either their individual or official capacities.") (citations omitted); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1998) (because "a Title VII suit against an employee is actually a suit against the corporation," a plaintiff "may not maintain a suit against both an employer and its [official-capacity] agent under Title VII").[6] Consequently, this motion presents the following legal issues: (1) whether Plaintiffs have plausibly alleged subject-matter jurisdiction (including standing) for their RFRA claims; (2) whether Plaintiffs have plausibly alleged a basis for personal jurisdiction over the Individual Defendants; (3) whether special factors and separation of powers concerns prohibit expansion of the *Bivens* remedy to Plaintiffs' constitutional claims; (4) whether Plaintiffs have plausibly alleged the Individual Defendants' personal involvement in violations of clearly established constitutional law; (5) whether Plaintiffs have plausibly alleged the Individual Defendants' personal involvement in clearly established violations of RFRA; and (6) whether clearly established law supports the conclusion that individual-capacity damages are "appropriate relief" for the RFRA violations Plaintiffs allege.

### Legal Standards

Dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate when a court lacks subject-matter jurisdiction over a plaintiff's claim. "Dismissal for lack of subject-matter jurisdiction is proper only when the claim is so completely devoid of merit as not to involve a federal controversy." *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (cleaned up). A claim "fails that test" (i.e., does *not* involve a justiciable controversy) when the plaintiff "does not 'plausibly allege all

---

[6] In light of the above-cited authority and Plaintiffs' failure to identify the Individual Defendants to their Title VII Counts, the Individual Defendants do not believe Plaintiffs intended to plead individual-capacity claims under Title VII. *See generally* Fed. R. Civ. P. 8. Nonetheless, to the extent Plaintiffs intended to plead individual-capacity Title VII claims, the Individual Defendants reserve the right to argue that Title VII does not support individual-capacity damages claims on Reply.

jurisdictional allegations.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (quoting *Brownback*, 141 S. Ct. at 749). The "same plausibility standard that applies in the Rule 12(b)(6) context also applies to Rule 12(b)(1)." *Id.* at 464.

Dismissal under Fed. R. Civ. P. 12(b)(2) is appropriate when a court lacks personal jurisdiction over a defendant. Personal jurisdiction exists if the forum's "long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citations omitted). The plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction over each defendant. *Id.* "[J]urisdictional allegations must be accepted as true, [but] acceptance does not automatically mean that a *prima facie* case for jurisdiction has been presented." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a complaint fails "to state a claim upon which relief can be granted." To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint meets this standard only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Argument**

## I.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' RFRA and *Bivens* Claims

As explained above, the allegations underlying Plaintiffs' claims fall into two broad categories: (1) claims that compliance with the FBI's COVID-19 vaccine mandate and agency safety policies was itself "an undue burden" on Plaintiffs' religious exercise; and (2) claims that Plaintiffs experienced a "culture of harassment" that created an undue burden on their religious exercise. *Compare* FAC ¶ 237 (claiming that refusing the vaccine subjected them to "testing . . . masking and social distancing") *with id.* ¶ 238 (alleging a "culture of harassment"). The Court lacks jurisdiction over individual-capacity RFRA claims pled based upon either theory of harm.

**A.   Sovereign Immunity Bars Individual-Capacity RFRA Damages Claims Based on the Direct Effects of FBI Policy**

It is difficult to discern whether Plaintiffs intended to plead their RFRA claim (Count VII) as an official- or individual-capacity claim. First, they conflate all the "Defendants" as being liable for the alleged RFRA violations. *See* FAC ¶¶ 19, 234-242. Then, citing *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020), as support, Plaintiffs contend their RFRA claim is valid because "[t]he Supreme Court has found that the [RFRA] allows [P]laintiffs to recover money damages against federal officials in their official capacities." FAC ¶ 242. Plaintiffs, however, misstate *Tanvir*'s holding, which establishes that Government employees may be held liable in their *individual capacities* "when appropriate." 141 S. Ct. at 493 ("RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their *individual* capacities") (emphasis added).

Here, it is clear that no claim for damages under RFRA could proceed against AG Garland or Director Wray in their official capacities. Such a claim is, in effect, a claim for damages against the United States, which requires a waiver of sovereign immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text. [. . .] To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."). But as courts have uniformly held, RFRA neither authorizes damages against the United States nor waives the government's sovereign immunity to damages claims.[7]

But even if Plaintiffs' RFRA claim is understood to be an individual-capacity claim, it still is barred by sovereign immunity. "[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the

---

[7] *Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011) (interpreting language identical to RFRA's as precluding damages claims against the Government); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015) ("Congress did not unequivocally waive its sovereign immunity in passing RFRA. RFRA does not therefore authorize suits for money damages against officers in their official capacities."); *Shields of Strength v. U.S. Dept. of Def.*, -- F. Supp. 3d ---, 2023 WL 3293279, at **6, 6 n.45 (E.D. Tex. May 5, 2023) (holding, in RFRA case, that "damages claims against defendants sued in their official capacities here do not fall within an unambiguous waiver of sovereign immunity" and dismissing such claims notwithstanding *Tanvir*).

effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). And litigants cannot make an "end run" around these principles of sovereign immunity merely by naming government officials individually. *Henley v. Simpson*, 527 F. App'x 303, 307 (5th Cir. 2013) (per curiam). The FAC attempts just such an "end run."

*Henley* explains why Plaintiffs' RFRA claim is barred. In *Henley*, former highway patrol K-9 officers sued state officials in their individual capacities under the Fair Labor Standards Act (FLSA) and 42 U.S.C. § 1983 to recover overtime wages. 527 F. App'x at 303-04. The court assumed that FLSA, like RFRA, allows individual-capacity suits against public officials for damages. *Id.* at 306. However, because the plaintiffs asserted that the state's *policy* of requiring them to train and care for their service dogs while off duty was unconstitutional, a money judgment against the officials would have "'compel[led] the [State]' to revise" its policy. *Id.* at 307 (quoting *Pennhurst*, 465 U.S. at 101 n.11). The court therefore dismissed the plaintiffs' monetary claims and observed that, although sovereign immunity generally does not bar claims against individuals, "application of that rule without context could elevate 'empty formalism' over the principles undergirding sovereign immunity." *Id.* at 308 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)); *see also, e.g., Luder v. Endicott*, 253 F.3d 1020, 1024 (7th Cir. 2001) (dismissing claims where effect of FLSA suit against individual officials was "identical to a suit against the state").

Plaintiffs' individual-capacity claims in this case are analogous to those in *Henley*. As in *Henley*, Plaintiffs' RFRA claim seeks money damages from individuals, but challenges official government policies. *See* FAC ¶¶ 10, 71, 245 (attributing harm to Executive Orders and agency policies). If high-ranking officials such as the Individual Defendants may be sued for damages over official policy decisions with nationwide effects, such individuals could not possibly satisfy the judgments personally. *Cf. Henley*, 527 F. App'x at 307 (indicating that the government would have "no choice" but to indemnify). This is particularly so as this is a purported class action, which may encompass hundreds more plaintiffs, *see* FAC ¶¶ 133-52, similarly seeking monetary

damages from the Individual Defendants personally. And if Plaintiffs' claims succeed, the certainty of more damages claims arising from the same policies could "compel the [government] to revise" the COVID-19 policies, *id.*, and thus "interfere with the public administration," *Pennhurst*, 465 U.S. at 101 n.11. As courts have recognized in similar circumstances, these effects are "not hypothetical, but inescapable" consequences of a judgment against the Individual Defendants personally. *Luder*, 253 F.3d at 1024. Accordingly, the Court should treat Plaintiffs' RFRA claim as an official-capacity claim, which it is in all but name, and dismiss on sovereign immunity grounds.

### B. The Harms Alleged In The FAC Are Not Traceable To The Individual Defendants

To the extent that Plaintiffs allege harms that do not flow directly from the vaccine mandate itself or the FBI's disciplinary process, Plaintiffs lack standing to sue the Individual Defendants for those harms. Standing is an essential element of federal jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Thus, the Court must dismiss any complaint that does not "plausibly allege" standing's three elements: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ghedi*, 16 F.4th at 464.

Here, Plaintiffs lack standing to sue the Individual Defendants personally for harms related to workplace harassment, complaints about workplace culture, or other alleged *ultra vires* acts, *see, e.g.*, FAC ¶¶ 39, 41, 43, 47, 50, because such harms are not "fairly traceable" to the Individual Defendants. As noted previously, Plaintiffs include no specific allegations that either of the Individual Defendants—both of whom are high-level officials—personally harassed or avoided them, instead attributing these actions to unnamed coworkers and supervisors. Plaintiffs allege harassment by FBI coworkers, *see id.*, but such violations cannot be imputed to the Individual Defendants. *See Iqbal*, 556 U.S. at 676, 680-81. Plaintiffs' claims resemble those of the *Ghedi* plaintiff, who sued federal agency leaders for "atypical" illegal searches performed by line agents and other "third part[ies] not before the court." *Ghedi*, 16 F.4th at 465-66. In ruling on those claims,

the Fifth Circuit held that it could not "reasonably infer that the heads of DHS, TSA, or CBP . . . ever have caused the kind of . . . violation Ghedi alleges," and emphasized that the plaintiff's allegations about line agents' improper behavior cut against a finding of supervisory liability. *Id.* at 466. This Court should likewise hold that Plaintiffs' alleged injuries—which were ostensibly caused by unnamed coworkers and supervisors—are not "fairly traceable" to Director Wray or AG Garland.

## II.     This Court Lacks Personal Jurisdiction Over the Individual Defendants

Plaintiffs' complaint is silent on the black-letter law proposition that a plaintiff must establish personal jurisdiction over each individual-capacity defendant. *Walden v. Fiore*, 571 U.S. 277 (2014). The mere "fact that federal government officials enforce federal laws and policies on a nationwide basis is not sufficient . . . to maintain personal jurisdiction in a lawsuit which seeks money damages against those same governmental officials in their individual capacities." *Vu v. Meese*, 755 F. Supp. 1375, 1378 (E.D. La. 1991); *see also Smith v. Carvajal*, 558 F. Supp. 3d 340, 349 (N.D. Tex. 2021) ("It is not reasonable to suggest that federal . . . officials may be hauled into court simply because they have regional and national supervisory responsibilities . . . within a forum state.") (quotations and citations omitted). Rather, Plaintiffs must support their claim of personal jurisdiction by plausibly alleging that the Individual Defendants have "minimum contacts" with Texas sufficient to subject them to "general" or "specific" jurisdiction. *Sangha*, 882 F.3d at 101. The FAC fails to do this.

General jurisdiction exists when a defendant's contacts with the "state are so continuous and systematic as to render [him] essentially at home in the forum state." *Id.* at 101-02. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiffs do not make any allegations about the Individual Defendants' residence during the time-period in question and admit that they work in the District of Columbia. *See generally* FAC; *see also* Dkts. 31, 36 (service documents listing non-Texas residential addresses for the Individual Defendants). Thus, this Court lacks general jurisdiction over the Individual Defendants. *See also Targeted*

*Justice, Inc. v. Garland*, No. H-23-1013, 2023 WL 4471553, at **7-8 (S.D. Tex. Jul. 11, 2023) (finding no general personal jurisdiction over AG Garland and Director Wray in the Southern District of Texas).

Plaintiffs likewise fail to allege "minimum contacts" sufficient to establish specific jurisdiction. Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citations and quotations omitted). To establish specific jurisdiction, Plaintiffs must show that the Individual Defendants "purposefully directed [their] activities at [Texas], and the litigation results from alleged injuries that arise out of or relate to those activities." *Sangha*, 882 F.3d at 101 (citations omitted). When performing this analysis, the Court "looks to the defendant's contacts with the forum not . . . with persons who reside there." *Walden*, 571 U.S. at 285. Thus, "the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 291.

Plaintiffs do not allege that the Individual Defendants personally "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Texas on any matter related to this litigation. *Walden*, 571 U.S. at 289. Instead, their entire claim rests upon the assertion that, merely as the officials in charge of the DOJ and the FBI, the Individual Defendants presided over the implementation of E.O. 14043's vaccine mandate—a nationwide policy that affected FBI employees in Texas as in every other state. *See* FAC ¶¶ 6-7. Thus, Plaintiffs' claim of personal jurisdiction rests solely upon their allegation that they suffered injury in Texas from the Individual Defendants' actions outside the forum. But precedent makes clear that this is insufficient for specific jurisdiction. In *Walden*, the Supreme Court held that such allegations could not establish "intentional contact" with a forum state and therefore could not support jurisdiction. 571 U.S. at 286, 291. And Former Chief Judge Rosenthal of this Court recently reached the same conclusion with regard to AG Garland and Director Wray in *Targeted Justice*, 2023 WL 4471553, at **7-8.

This Court should likewise hold that Plaintiffs' general allegations of supervisory authority and nationwide policy are insufficient to support personal jurisdiction over the Individual Defendants.

### III.   Plaintiffs Fail to Plead Viable *Bivens* Claims

In Counts VIII and IX, Plaintiffs ask the Court to undertake the "disfavored judicial activity" of creating a new damages remedy under *Bivens* against high-ranking federal officials based on never-before-recognized legal theories. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Creating a new cause of action under *Bivens* is a "significant step under separation-of-powers principles." *Id*. Although federal courts once took that step with frequency in certain contexts, the Supreme Court has since "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020)). When a court expands the *Bivens* remedy, it necessarily "determine[s] that it has the authority . . . to create and enforce a cause of action for damages" and thereby encroaches on an area over which "Congress"—not the Judiciary—has "substantial responsibility." *Abbasi*, 137 S. Ct. at 1856; *Egbert*, 142 S. Ct. at 1802 ("At bottom, creating a cause of action is a legislative endeavor."). Thus, "courts must refrain from creating the [*Bivens*] remedy" if there is "any rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803; *Abbasi*, 137 S. Ct. at 1858.

A court faced with a *Bivens* claim must determine (1) whether the claim extends *Bivens* into a new context, and if so, (2) whether "special factors" cause the Court to "hesitate" to create a new *Bivens* claim. *Id*. "While [Supreme Court] cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.

The special factors inquiry in this case leads inexorably to one conclusion: separation-of-powers principles preclude the extension of *Bivens* to cover Plaintiffs' novel claims. Indeed, the application of the Supreme Court's settled *Bivens* jurisprudence to Plaintiffs' claims is so clear that this Court could dismiss Plaintiffs' individual-capacity claims based upon the Supreme

Court's holdings in *Bush v. Lucas*, 462 U.S. 367 (1983), and *Abbasi*, alone. In *Bush*, the Supreme Court declined to authorize a *Bivens* remedy "for federal employees whose First Amendment rights are violated by their superiors" because such claims "arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." 462 U.S. at 368. And in *Abbasi*, the Supreme Court declined to imply a *Bivens* remedy against "high executive officers in the Department of Justice" who were sued based upon their alleged "adoption of a formal policy" mandating the detention of "hundreds of illegal aliens" in violation of the Fifth Amendment. 137 S. Ct. at 1851, 1860. In reaching this conclusion, the Court squarely held that "*Bivens* is not a proper vehicle for altering an entity's policy" and may not be used to "challenge the conduct of a particular Executive Official in a discrete instance" if that challenge "would call into question the formulation and implementation of a general policy." *Id.* at 1860. Read together, these cases bar Plaintiffs' First and Fifth Amendment claims, which arise in the context of a federal employment relationship and challenge the adoption of nationwide policies (E.O. 14043's vaccine mandate and FBI's implementing rules) that applied to Plaintiffs only by virtue of that relationship.

## A. Plaintiffs' Claims Impermissibly Extend *Bivens* to a New Context

In any event, precedent makes clear that this Court should not extend the *Bivens* remedy to this situation. The Supreme Court has recognized *Bivens* claims in only three narrow contexts: in *Bivens*, 403 U.S. at 388 (Fourth Amendment claim for unreasonable, warrantless search and seizure in a home by federal narcotics agents); in *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment claim based on a Congressman's firing of a female staffer on the basis of sex); and in *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim for deliberate indifference to a federal prisoner's life-threatening asthma). Outside these contexts, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Abbasi*, 137 S. Ct. at 1857 (quotations and citations omitted).

A case presents a "new context" if it is "different in a meaningful way" from these three contexts or "involves a new category of defendants." *Hernandez*, 140 S. Ct. at 743. The

"meaningfully different" standard is open-ended: a case may be "meaningfully different" because of, *inter alia*, "the statutory or other legal mandate under which the [defendant] officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. The new context inquiry is "easily satisfied." *Abbasi*, 137 S. Ct. at 1865.

Here, Plaintiffs' claims differ markedly from *Bivens*, *Carlson*, and *Davis*. As to the First Amendment claim, both the Supreme Court and Fifth Circuit have made clear that *Bivens* has never extended to First Amendment violations, and as explained above, *Bush* affirmatively *refused* to recognize *Bivens* claims based on the violation of a federal employee's First Amendment rights. *Egbert*, 142 S. Ct. at 1807 ("[We] have never held that *Bivens* extends to First Amendment claims"); *Bush*, 462 U.S. at 368; *see also Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 686 (5th Cir. 2021) ("Our holding [that *Bivens* does not extend to a First Amendment claim] is underscored by the fact that the Supreme Court has not only never recognized a *Bivens* cause of action under the First Amendment, [. . .] but also once rejected a First Amendment retaliation *Bivens* claim for federal employees [in *Bush*]."). The Supreme Court and the Fifth Circuit's district courts have further held that Free Exercise claims present a new context. *Iqbal*, 556 U.S. at 675 ("we have not found an implied damages remedy under the Free Exercise Clause."); *Butts v. Martin*, No. 1:12cv114, 2021 WL 1085310, at **3 (E.D. Tex. Mar. 8, 2021), *adopted by* 2021 WL 1061184 (same).

Plaintiffs' Fifth Amendment claim likewise differs meaningfully from its closest analogue, *Davis*. With respect to that case, the Fifth Circuit has made clear that, "No one thinks *Davis* . . . means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action." *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019); *see also Hernandez*, 140 S. Ct. at 743. And, despite Plaintiffs' reliance on *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990) for support, *see* FAC ¶ 249, the differences between a claim based on sex discrimination committed

by an individual in a congressional office and a substantive due process claim based on the "us[e] [of] economic power to secure 'consent' to an unwanted medical treatment[,]" via a government-wide Executive Order, *id.* ¶ 251, are vast. *Davis* involved the Due Process Clause's equal protection component, not its substantive due process component (*see* 442 U.S. at 235), and it did not *involve* health or medical treatment (to say nothing of the COVID-19 Public Health Emergency). For further contrast, *Davis* involved sex discrimination rather than religious discrimination, and it addressed a claim that arose in a congressional office prior to the passage of Title VII rather than in an Executive Branch agency subject to Title VII and the Civil Service Reform Act's (CSRA) extensive procedural protections. Finally, *Davis* did not involve claims against high-ranking agency officials (like the Attorney General and FBI Director) based upon the implementation of a nationwide policy.

It is readily apparent that Plaintiffs' claims against the Individual Defendants arise in a context decidedly different from that in *Davis*. Moreover, unlike the cause of action in *Davis*, Plaintiffs' Fifth Amendment claim would pose risks of judicial intrusion into the Executive's response to a nationwide public health emergency *and* Congress's broader scheme for resolving federal employee complaints (found in Title VII and the CSRA). And finally, claims of unwanted medical treatment present different factual and legal issues from claims of sex discrimination. *See Abbasi*, 137 S. Ct. at 1860; *see also Cruzan*, 497 U.S. at 270-75 (discussing legal issues related to consent and medical treatment); *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (discussing various legal issues raised by vaccine mandates).

**B. Special Factors Preclude Extension of the *Bivens* Remedy to Plaintiffs' Claims**

Upon finding a new context, the *Bivens* inquiry turns to special factors. The special factors analysis centers on separation-of-powers concerns and focuses "on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. To "be a special factor counseling hesitation, a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858. And courts *must* hesitate if there is "any rational reason (even one) to

16

think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805.

### 1.   Alternative Remedies

"[I]f there is an alternative remedial structure present in a . . . case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858. Alternative remedies can take many forms, including "injunctions and . . . other form[s] of equitable relief," state and federal tort law remedies, and administrative claims. *Id.* at 1865; *see also Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020) (recognizing an "administrative process" and the Federal Tort Claims Act as components of an alternative remedy scheme). "[S]o long as Congress or the Executive has created a remedial process that it finds sufficient . . . the courts cannot second-guess that calibration by superimposing a *Bivens* remedy," even if they "independently conclude that the government's procedures are not as effective as a damages remedy." *Id.*; *see also Egbert*, 142 S. Ct. at 1807 ("[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

Numerous alternative remedies are available to Plaintiffs in this case. First, Title VII of the Civil Rights Act, as amended by the Equal Employment Opportunity Act (EEOA), provides an obvious and comprehensive remedial structure for Plaintiffs' claims of religious discrimination and coercion. In *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976)—a case arising from allegations of discrimination in a federal workplace—the Supreme Court held that Title VII (which includes a cause of action for religious discrimination) and the EEOA are "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination" before describing their "administrative and judicial enforcement mechanisms" in some detail. *Id.* at 830-31; *see also Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (listing elements of "a prima facie case of religious discrimination under Title VII"). Tellingly, the Supreme Court explicitly rejected a petitioner's "contention that [Title VII] was designed merely to supplement other putative judicial relief" and emphasized that "the balance, completeness, and structural integrity of [Title VII] are inconsistent with [this] contention." *Id.* at 832. In light of these and

17

other statements in *Brown*, the Fifth Circuit has held that "Title VII provides both the exclusive cause of action and the exclusive remedy for federal employees who wish to assert claims of employment discrimination," including claims under the First and Fifth Amendments. *Perez v. F.B.I.*, 71 F.3d 513, 515 (5th Cir. 1995) (affirming dismissal of FBI agents' First and Fifth Amendment class-action for want of jurisdiction). Indeed, Plaintiffs plead six of their nine claims under Title VII. *See* FAC Counts I-VI.

Second, employees like Plaintiffs are protected by the Civil Service Reform Act (CSRA), a "comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). The Fifth Circuit has "repeatedly held that the CSRA provides the exclusive remedy for federal employees seeking damages for alleged constitutional violations arising out of the employment relationship" and specifically observed that "*Bivens* actions by federal employees against their employers for First Amendment violations have been expressly precluded." *Gonzalez v. Manjarrez*, 558 F. App'x 350, 353 (5th Cir. 2014); *see also Grisham v. United States*, 103 F.3d 24, 26 (5th Cir. 1997) ("It is clearly established in the Fifth Circuit that . . . *Bivens* claims under the First Amendment by employees regarding employment actions covered by the CSRA are precluded"); *Rollins v. Marsh*, 937 F.2d 134, 136-38 (5th Cir. 1991) (holding that the CSRA precluded *Bivens* claims under the Fifth Amendment). Accordingly, the CSRA provides a second alternative remedy for Plaintiffs' claims.[8]

---

[8] The *en banc* decision in *Feds for Medical Freedom v. Biden* does not deprive the CSRA of its effectiveness as an alternative remedial structure. There the Fifth Circuit distinguished *Elgin* and held that the CSRA did not strip the district court's jurisdiction to hear a constitutionally-based, pre-enforcement challenge to E.O. 14043 because that challenge did not run against a "covered personnel action." 63 F.4th at 372; 383 (distinguishing between a "challenge to termination" that would be covered by the CSRA, and a tort claim for "invasion of privacy" that would not be). But the issue in this case is not whether an alternative remedy strips the district court's jurisdiction, but whether existing remedial processes provide evidence that Congress has considered and either addressed or intentionally declined to address the sorts of harms underlying Plaintiffs' *Bivens* claims. *Egbert*, 142 S. Ct. at 1807 ("[T]he question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts."); *Fazaga v. FBI*, 965 F.3d 1015, 1057-58 (9th Cir. 2020), *rev'd in part on other grounds by* 142 S. Ct. 1051 (2022) (the "lack of relief against some potential defendants does not disqualify [a statute] as an alternative remedial scheme"); *Gaspard v. United States*, 713 F.2d 1097, 1105 (5th Cir. 1983) (holding, in *Bivens* case filed by a military veteran, that "[i]t is the existence of the VA compensation scheme, and not payment in fact, that lessens the justification for a *Bivens* remedy."). And it is obvious that the CSRA represents Congress's

Injunctive relief—including the possibility of reinstatement for terminated employees and nationwide injunctions of vaccine mandates—offers a third alternative remedy for harms of the sort Plaintiffs allege. The Supreme Court has stated that challenges to "large-scale policy decisions"—like the decision to implement E.O. 14043—are appropriately addressed via "injunctive relief" and emphasized that *Bivens* claims are "not a proper vehicle for altering an entity's policy." *See Abbasi*, 137 S. Ct. at 1860; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Indeed, at least one Plaintiff (Feds for Medical Freedom) has already sought and obtained such relief from the Fifth Circuit. *See Feds for Medical Freedom*, 63 F.4th at 366; FAC ¶¶ 131-32 (discussing the injunction and repeal of E.O. 14043).[9]

Fourth, to the extent that Plaintiffs believe they have alleged the torts of harassment, invasion of privacy, battery (via unwanted medication), or the like, Congress has decided that such state-law claims should be channeled through the Federal Tort Claims Act (FTCA). *See* 28 U.S.C. §§ 1346(b), 2671-80. The Fifth Circuit has squarely held that a plaintiff's ability to bring an FTCA claim is another special factor that supports the existence of an "alternative remedial structure" and precludes expansion of the *Bivens* remedy. *Oliva*, 973 F.3d at 443; *Wilkie v. Robbins*, 551 U.S. 537, 551 (2007) (declining to imply a *Bivens* remedy where the plaintiff "had a civil remedy in damages in trespass.").

Finally, even if Plaintiffs are dissatisfied with all the potential remedies Congress provided, that does not mean that any conceivable misconduct would go unchecked. In *Egbert*, the Supreme Court held that the availability of an agency grievance procedure—even one that did not permit judicial review or allow a complainant to participate in the disciplinary process—precluded a

---

preferred framework for resolving claims arising in the federal workplace, and thus the Court should "hesitate" to bypass it even if it does not provide relief for every harm Plaintiffs allege. *Id.; see also Broadway v. Block*, 694 F.2d 979, 986 (5th Cir. 1982) (CSRA was "painstakingly established" to "work out personnel problems.").

[9] The fact that Plaintiffs have already obtained injunctive relief does not negate the usefulness of this remedy either. As discussed above, (*supra* n.7), it "is the existence of the [remedial] scheme," not the Plaintiffs present ability to use the scheme, "that lessens the justification for a *Bivens* remedy." *Gaspard*, 713 F.2d at 1105. If anything, Plaintiffs' prior success in obtaining injunctive relief underscores that such relief provides a meaningful alternative remedy.

19

*Bivens* remedy. 142 S. Ct. at 1807. Here, Plaintiffs have access to DOJ and FBI grievance procedures that are comparable to those available in *Egbert*. Congress, through the Inspector General Act of 1978, as amended, has authorized inspectors general across the Executive Branch to investigate and report abuse by federal employees. *See, e.g.*, 5 U.S.C. § 413 (providing that "any component" of the Department of Justice that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General [of the Department]," and authorizing the Inspector General to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department for disciplinary action.). Any person, including Plaintiffs, may report alleged wrongdoing or misconduct, and DOJ's Office of the Inspector General (OIG) and Office of Professional Responsibility (OPR) provide links on their public website to report allegations of wrongdoing or misconduct. *See* DOJ, OIG, HOTLINE, https://oig.justice.gov/hotline, and OPR, Submit Professional Misconduct Complaint to OPR, https://www.justice.gov/opr/submit-professional-misconduct-complaint (last visited November 10, 2023).

Additionally, the Inspector General Act requires that inspectors general—including that of DOJ—prepare semiannual reports that are transmitted to Congress and that describe "significant problems, abuses, and deficiencies" related to the administration of DOJ's "programs and operations." 5 U.S.C. § 405. The Inspector General Act also requires that those reports contain "matters referred to prosecutive authorities and the prosecutions and convictions which have resulted." *Id.* Through such provisions, Congress has already taken steps to be notified regarding substantiated misconduct at DOJ or the FBI, enabling it to conduct its own inquiries should it so choose, and to enact any laws or provide any remedies it deems fit to address misconduct by DOJ or FBI employees.

Finally, just as the plaintiff in *Egbert* could lodge a complaint with the officer's agency, 142 S. Ct. at 1807, here too, any person, including Plaintiffs, who believes they have been

aggrieved by FBI conduct may file a complaint with the FBI through FBI Headquarters or any of the 56 FBI field offices in person, by mail, or by email. *See* FBI, *Contact Us: FBI Headquarters,* https://www.fbi.gov/contact-us/fbi-headquarters, and *Contact Us: Field Offices,* https://www.fbi.gov/contact-us/field-offices (last visited November 10, 2023).

In summary, Title VII, the CSRA, the FTCA, injunctive relief, and statutorily mandated agency procedures for reporting and investigating misconduct, combine to form a robust structure for claims related to FBI's personnel practices, the implementation of vaccine mandates, and employee harassment. This Court should not disturb the coequal Branches' comprehensive remedial scheme by supplementing those avenues with a new *Bivens* remedy.

## 2.  Other Special Factors

Considering the wealth of alternative remedies in this case, the Court need not dwell on the question of whether other special factors also preclude a *Bivens* damages remedy. Nonetheless, two such factors merit attention: First, as mentioned previously, it is apparent that Plaintiffs' claims abut *two* statutes (Title VII and the CSRA) that limit federal courts' exercise of jurisdiction. *See Elgin,* 567 U.S. at 1 (CSRA); *Perez*, 71 F.3d at 515 (Title VII). When determining whether special factors "counsel hesitation," the Court must consider "what Congress has done and what Congress has left undone." *Oliva*, 973 F.3d at 444. Here, what Congress has "done" is restrict the scope of federal courts' jurisdiction over claims arising in the federal workplace and channel those claims through statutory avenues, like Title VII. *Id.* This Court should at least "hesitate" before bucking this trend and authorizing new *Bivens* causes of action in the federal workplace. *See Egbert*, 142 S. Ct. at 1818 (no new *Bivens* remedies if "there is any rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed.").

Second, this Court should hesitate to imply a damages remedy because "judges are not public health experts, and [they] should respect the judgment of those with special expertise and responsibility in this area." *Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 470 (5th Cir. 2021) (upholding State COVID-19 restrictions). Though Plaintiffs now dispute some of the

underlying science, it is undisputed that E.O. 14043 and the FBI policies implementing it were based upon CDC recommendations and the advice of public health experts. *See* E.O. 14043 at 1. This Court should at least hesitate before imposing damages liability personally on high-ranking officials who attempted to craft policy based on public health experts' recommendations in the midst of a public health emergency. Deciding whether—and when—such life-or-death decisions should subject high-level officials to personal damages liability is a task for Congress, not the courts. *Abbasi*, 137 S. Ct. at 1862-63 ("Congress, not the Judiciary" must decide what "balance [should be] struck between deterring constitutional violations and freeing high officials to make the lawful decisions necessary to protect the Nation.").

In light of the numerous remedies and special factors outlined above, the Court "must refrain" from expanding the *Bivens* remedy to this novel case. *Abbasi*, 137 S. Ct. at 1858.

## IV.    The Individual Defendants Are Entitled To Qualified Immunity on All Claims

Even if the Court finds that it has subject matter jurisdiction, that Plaintiffs' general allegations support a finding of personal jurisdiction, and that no special factors preclude extension of the *Bivens* remedy, Plaintiffs' claims would be barred under the doctrine of qualified immunity. Executive officials performing official duties are generally entitled to qualified immunity, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), which is a defense to claims pled under the Constitution as well as RFRA. *See Tanzin*, 141 S. Ct. 492 n.* (assuming without deciding that qualified immunity applies to a RFRA claim).[10] Once a defendant raises qualified immunity, "the burden is on the

---

[10] Although Supreme Court and Fifth Circuit case law on the question is limited, the available opinions strongly suggest that qualified immunity is an available defense in RFRA cases. First, in *Tanzin*, the Supreme Court explained that the RFRA provided "the same avenues of relief against officials that they would have had before [its decision in *Employment Division v.*] *Smith*," including a "damages claim [for] clearly established violations of the First Amendment." 141 S. Ct. at 492 (citing *Smith*, 494 U.S. 872 (1990)). As the Supreme Court's use of the term "clearly established" implies, such claims would have been subject to the defense of qualified immunity. Second, in *Biron v. Upton*, an unpublished decision, the Fifth Circuit followed the Supreme Court's lead in assuming (but not deciding) that the defense was available. No. 19-10862, 2022 WL 17691622, at *2 (5th Cir. Dec. 14, 2022). In so doing, the court noted that it had previously "appl[ied] the qualified immunity analysis to a RFRA claim against state officials before RFRA was limited to apply only to federal officials," and thus concluded that extending the defense to federal officials would be no great leap. *Id.* at *2 n.1 (citing *Ganther v. Ingle*, 75 F.3d 207, 211 (5th Cir. 1996)). Third, Judge Barker of the Eastern District of Texas has suggested that allowing federal employees to raise qualified immunity in RFRA cases is consistent with RFRA's legislative history and Congress's

plaintiff to prove that a government official is not entitled to qualified immunity." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). To carry this burden, Plaintiffs must allege: (1) that each defendant personally violated a constitutional right; and (2) that the claimed right was "'clearly established at the time of the alleged violation.'" *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)), *cert. denied*, 142 S. Ct. 2571 (2022).

A *Bivens* defendant is entitled to qualified immunity if a plaintiff fails to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The doctrines of vicarious liability and *respondeat superior* do not apply in *Bivens* actions. *Id.* at 680-81. The qualified immunity defense—and its requirement that Plaintiffs plead personal involvement—apply in the same manner to RFRA cases. *Tanzin*, 141 S. Ct. 492 n.*; *infra* at 24 (collecting cases on RFRA and personal involvement).

## A. Personal Involvement

As an initial matter, all Plaintiffs' claims should be dismissed because they fail to allege the Individual Defendants' personal involvement. Under prong one of the qualified immunity analysis, courts must analyze not just whether the allegations make out a violation, but also whether the individual official was personally involved in the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (assessing whether "the facts alleged show the *officer's conduct* violated a constitutional right" (emphasis added)). This is because a government official "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

In *Iqbal*, the plaintiff claimed he was deprived of various constitutional protections while in federal custody. His complaint against numerous high-level federal officials—including former Attorney General John Ashcroft and former FBI Director Robert Mueller—alleged these officials adopted an unconstitutional policy that subjected him to harsh conditions of confinement

---

intent for that statute "to restore the compelling interest test" in religious freedom cases. *Shields of Strength*, 2023 WL 3293279, at *18. Finally, all five of the circuit courts to consider the issue "have held that qualified immunity may be asserted in a RFRA action against federal officials." *Id.* at *18 n.162 (collecting cases from the Third, Fourth, Ninth, Tenth, and Eleventh Circuits).

on account of his race, religion, or national origin. The Supreme Court disagreed when it found that plaintiff failed to "nudge[] [his] claims . . . across the line from conceivable to plausible," because it included nothing but "bare assertions" and specifically noted that the complaint lacked "factual allegations against" the individual defendants other than accusing them of  "adopting a policy." *Iqbal*, 556 U.S. at 683.

Similar to *Iqbal*, Plaintiffs in this case failed to plead factual content that would allow this Court to draw the reasonable inference that the Individual Defendants had any involvement in the misconduct alleged. The allegations against the Individual Defendants are even less precise than those in *Iqbal*. Plaintiffs fail to allege facts indicating that the Individual Defendants played any role in promulgating, effectuating, or enforcing the alleged policy of masking, COVID-19 testing, or work restrictions. *Cf. Lineberry v. United States*, 436 F. App'x 293, 295 (5th Cir. 2010) (dismissing *Bivens* claim against BOP Director for failure to allege personal involvement where the plaintiff's "conclusional allegations are not supported by any specific facts showing [the Director's] personal involvement in the daily operation of the prison, or that [the Director] *personally implemented* a deficient policy resulting in a constitutional violation") (emphasis added). Simply put, Plaintiffs have failed to allege any facts demonstrating that the Individual Defendants "personally implemented" unlawful policies or played any role in the alleged constitutional or RFRA violations. Instead, as in *Iqbal*, Plaintiffs bring this suit against high-level federal officials without any factual allegations connecting them to the alleged violations. Plaintiffs' "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim against the Individual Defendants. *See Iqbal*, 556 U.S. at 678, 685.

Numerous courts have applied this principle in the RFRA context and required plaintiffs to plead facts plausibly showing that each individual defendant was personally involved in the conduct that is alleged to have imposed a substantial burden on religious exercise. *See Bundy v. Sessions*, 812 F. App'x 1, 2 (D.C. Cir. 2020) (unpublished) (requiring plaintiff to plausibly allege each defendant's personal participation in authorizing raid, arrest, and prosecution in order to state

a RFRA claim, "[p]ure vicarious liability . . . is [also] not sufficient to state a claim under RFRA" (quoting *Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55 (D.D.C. 2015))); *see also Zirpolo v. Williams*, No. 19-cv-2024-WJM-KMT, 2020 WL 3104078, at *4 (D. Colo. June 11, 2020) (dismissing RFRA claim where plaintiffs failed to allege that any "Defendant, personally, had anything to do with Plaintiffs being unable to access" religious video), *aff'd sub nom. Colorado Springs Fellowship Church v. Williams*, No. 21-1269, 2022 WL 2118440, at *2 (10th Cir. June 13, 2022); *Davis v. Fed. Bureau of Prisons*, No. 15-cv-0884-WJM-MJW, 2017 WL 11504857, at *8 (D. Colo. Apr. 7, 2017) (dismissing RFRA claim for failure to allege "how each named defendant was personally involved" in refusing religious services), *aff'd*, 798 F. App'x 274 (10th Cir. 2020); *White v. Sherrod*, No. 07-cv-821-MJR, 2009 WL 196332, at *2 (S.D. Ill. Jan. 28, 2009) (inmate failed to state RFRA claim against warden based on allegedly being prevented from "say[ing] whatever he wishe[d] to say within the context of religious services," because the warden "was not the individual who prevented him from speaking at these services"); *Curry v. Gonzales*, No. 07-cv-0199 (JR), 2007 WL 3275298, at *1 (D.D.C. Nov. 6, 2007) (dismissing RFRA and *Bivens* claims where plaintiff failed to allege that "high-level officials were personally and directly involved in the misdeeds"). For the reasons below, this Court should apply it in this case and dismiss the FAC.

A review of the FAC shows Plaintiffs failed to establish either of the Individual Defendants played any role in any alleged violation of Plaintiffs' constitutional or statutory rights. Instead, the Plaintiffs' RFRA claim against the Individual Defendants is that policies which "forc[e] religious believers to accept invasive and painful testing," as well as "stigmatizing masking," create a substantial burden. FAC ¶¶ 237-39. Plaintiffs allege that they have lost professional opportunities and experienced a "culture of harassment and ridicule because of their disfavored religious beliefs." *Id*. ¶ 238. Notably missing from these allegations, however, is any factual allegation that the Individual Defendants were involved in any way in harassing or ridiculing Plaintiffs, or that they—rather than E.O. 14043 and its implementing policies— "forc[ed] religious believers to accept invasive and painful testing." *Id*. ¶ 91. Not one of the Plaintiffs alleges they complained to

the Individual Defendants about their requests for accommodation, that the Individual Defendants took any action regarding their requests, or that they were involved in rejecting their requests. Plaintiffs fail even to allege the Individual Defendants were aware of their requests or the alleged discrimination to which Plaintiffs were subjected, and never allege they made the Individual Defendants aware of the burden imposed on the exercise of their religion. In fact, Plaintiffs refer to several other offices and individuals (both named and unnamed) that allegedly coerced or harassed them. *See e.g.*, FAC ¶¶ 39, 41, 43, 47, 50 (instances of alleged harassment); 77, 80 (official communications). Yet, they never once claim those actions were committed by the Individual Defendants, or that the Individual Defendants ever knew about those alleged incidents. Indeed, apart from a single, boilerplate allegation of a purely supervisory nature identifying each Individual Defendant, *id.* ¶¶ 65-66, the Complaint is devoid of any allegations identifying their conduct, let alone claiming they took action to deny Plaintiffs the right to exercise their religion or to be free from unwanted medical treatment. Such allegations cannot overcome qualified immunity. *Iqbal*, 556 U.S. at 677; *Lineberry*, 436 F. App'x at 295.

### B. Plaintiffs Fail to Allege a Violation of Clearly Established Law Under the Constitution or RFRA

The Individual Defendants are also entitled to qualified immunity because Plaintiffs fail to plausibly allege that the vaccine mandate and FBI's implementation of it violated clearly established law. "For purposes of determining whether [a] right [or law] is clearly established, '[t]he relevant question . . . is . . . whether a reasonable officer could have believed his or her conduct to be lawful, in light of clearly established law and the information the . . . officers possessed.'" *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (citations omitted). "In other words, Plaintiffs must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law." *Id*. Plaintiffs may do this by identifying "controlling [Supreme Court or Fifth Circuit] authority—or a robust consensus of persuasive authority—that defines the contours of the right in

question . . . with a high degree of particularity." *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018) (citations omitted).

### 1. Constitutional Claims

With respect to their constitutional claims, the only precedents Plaintiffs cite are *Feds for Medical Freedom v. Biden*, *supra.*, and *Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022), *dismissed as moot by* 72 F.4th 666 (5th Cir. 2023), both cases in which vaccine mandates were enjoined. Neither case is sufficient to establish that the vaccine mandate and its implementing policies violated *clearly established* law for the simple reason that both were decided well *after* January 22, 2022, which is the date on which Plaintiffs concede that FBI stopped enforcing its vaccine mandate. *See* FAC ¶ 36. And the question of "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action," the Supreme Court tells us, "generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' *at the time it was taken*." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)) (emphasis added). Put simply, neither *Feds for Medical Freedom* nor *Navy Seals* was "controlling authority" when the vaccine mandate was in force, nor was there a "controlling consensus of authority" sufficient to give the Individual Defendants "fair warning" that the vaccine mandate and the FBI's implementing policies were unlawful. *See Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (the "*sine qua non* of the clearly-established inquiry is fair warning"). On the contrary, the broader body of case law on compulsory vaccination available to the Individual Defendants suggested that governments had broad latitude to impose vaccination requirements. *See, e.g.*, *Jacobson*, 197 U.S. at 11; *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944); *Application of President & Directors of Georgetown Coll., Inc.*, 331 F.2d 1000, 1008 (D.C. Cir. 1964). Indeed, the conduct complained of here—being required to vaccinate, or else complete an accommodation process, mask, social distance, and test—is far less of a burden on individual rights than the compulsory vaccination upheld in *Jacobson*. And even the *en banc Feds for Medical Freedom* decision cited in the FAC was preceded by a panel decision which reversed the district court's decision to enjoin E.O. 14043

27

and denied Plaintiffs any relief from its mandates. *See Feds for Medical Freedom*, 30 F.4th 503 (5th Cir. 2022).

For these reasons, the law underlying Plaintiffs' constitutional claims was sharply contested at the time the vaccine mandate and its implementing policies were in effect. The vaccine mandate and its implementing policies therefore did not violate the "clearly established law" in place at the time, and the Individual Defendants cannot now be held liable for violating the First or Fifth Amendment merely because they presided over agencies that implemented E.O. 14043's vaccine mandate.

### 2.   RFRA Claim

Plaintiffs likewise fail to allege that the vaccine mandate and FBI's implementing policies violated clearly established law under the RFRA. RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the challenged conduct is: (1) "in furtherance of a compelling government interest;" and (2) "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. "To claim RFRA's protections, a person must show that (1) the relevant religious exercise is grounded in a sincerely held belief and (2) the government's action or policy substantially burdens that exercise by, for example, forcing the plaintiff to engage in conduct that seriously violates his or her religious beliefs." *United States v. Comrie*, 842 F.3d 348, 351 (5th Cir. 2016) (citations omitted). "Only if the religious person carries this burden does the government bear the burden of proof to show that its action or policy (1) is in furtherance of a compelling government interest and (2) is the least restrictive means of furthering that interest." *Id.* Plaintiffs fail to plausibly allege a RFRA violation under this test, let alone a "clearly established" one.

As an initial matter, 14 of the 39 individual Plaintiffs fail to plead any allegations identifying the religious beliefs that were allegedly burdened by the vaccination requirement. FAC ¶¶ 24, 25, 27, 29, 32, 35, 37, 44, 45, 48, 54, 55, 58, 62. Although these individuals may have sincerely held religious beliefs regarding the COVID-19 vaccine, those religious beliefs must still be sufficiently pled to survive a motion to dismiss, provide the Individual Defendants fair notice,

and enable them to respond to their claims. *See Iqbal*, 556 U.S. at 681, 685. Accordingly, the claims asserted by Plaintiffs Andrews, Arce, Bezet, Brunstetter, Corpora, Drohan, Elliot, Keiper, LeMaster, O'Boyle, Seraphin, Shakespear, Tran, and York all fail to plead the basic elements of a RFRA claim and must be dismissed. *See Twombly*, 550 U.S. at 570.[11]

Furthermore, none of the Plaintiffs alleges that the vaccine mandate or its implementing policies imposed a "substantial burden" on their "religious exercise," as those terms are defined in clearly established law. "A government action or regulation creates a substantial burden on religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Navy Seals,* 27 F.4th at 350 (citing *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). In arguing that the vaccine mandate and implementing policies burdened their rights, Plaintiffs cite recent Fifth Circuit case law (namely *Navy Seals*) holding that requiring a person to take a vaccine over a religious objection would substantially burden their rights. FAC ¶ 240. But not only did the *Navy Seals* opinion not exist during the period relevant to the Individual Defendants' qualified immunity defense (*supra* at 26-28), it is also inapposite, because none of the Plaintiffs was required to be vaccinated. *Cf.* 27 F.4th at 350 (describing a hypothetical choice between "jobs and jabs"). Rather, Plaintiffs here faced the choice between (a) taking the vaccine and (b) seeking accommodations while complying with masking, testing, and social distancing requirements. *See, e.g.*, FAC ¶ 237. Plaintiffs cite no cases holding that masking, social distancing, or simple accommodations processes give rise to a "substantial burden" under clearly established law, nor do they include any allegations to explain why these things restricted their religious exercise. And even if they had included some caselaw, Plaintiffs

---

[11] Plaintiffs' appeals to "privacy" do not excuse their failure plead the factual basis of their claims. FAC ¶¶ 24, 27, 29, 37, 54, 58. "Gender and religious beliefs are generally not such intimate matters and are subject to public exposure," particularly when the holders of those beliefs seek to perform some public function. *Ramie v. City of Hedwig, Tex.*, 765 F.2d 490, 492 (5th Cir. 1985). Indeed, in *Lloyd v. Birkman*, the court found no "constitutional privacy interest in disclosure of [the plaintiff's] positions on gay marriage and abortion" even though these beliefs "implicate religion." 127 F. Supp. 3d 725, 772 (W.D. Tex. 2015). This Court should similarly hold that Plaintiffs—who are named Parties in a publicly filed lawsuit seeking vast sums of money—have no valid interest in hiding the religious basis of their anti-vaccine views from the public and from the Court which must decide these issues.

would fail to bear their burden in light of contrary authority that has upheld masking requirements and other COVID-19 safety precautions, sometimes against challenges based on the First Amendment and its analogues. *See, e.g.*, *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 287-88 (E.D.N.Y. 2021) (collecting district court cases upholding masking requirements); *Whitfield v. Cuyahoga Cnty. Pub. Library Foundation*, No. 1:21 CV 0031, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("There is no general constitutional right to wear, or to refuse to wear a face mask in public places."); *see also Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020) (upholding order requiring social distancing against First Amendment challenge because social distancing orders do not "limit speech").

Lastly, Plaintiff Toompas's allegations also fail to establish a substantial burden on his religion because he never requested an accommodation. *See Murphy v. Collier*, 139 S. Ct. 1475, 1484 (2019) (Alito, Thomas, Gorsuch, dissenting from grant of application of a stay) (suggesting there is no substantial burden where a claimant has alternative ways to satisfy his or her religious beliefs). And Plaintiff Bayon fails to allege one because the course of conduct he alleges—being found AWOL six months after his termination—is too patently implausible to establish the existence of a substantial burden. *IP Axess Inc.*, 407 F.3d at 696.

Based on the foregoing reasons, the Court should find that Plaintiffs have failed to allege that the vaccine mandate and implementing policies violated their clearly established rights under RFRA.

## V.     Plaintiffs' Allegations Do Not Support the Availability of Damages Against High-Ranking Federal Officials as "Appropriate Relief" Under RFRA.

Finally, Plaintiffs' RFRA claims against the Individual Defendants warrant dismissal because they arise in an unprecedented context—high-ranking federal officials responding to a global pandemic—for which personal damages are not "appropriate relief." Although the Supreme Court resolved the question of whether monetary damages *can generally* be an appropriate remedy for an individual capacity RFRA claim, *Tanvir*, 141 S. Ct. 486, that does not mean they *are necessarily* appropriate in every RFRA case or context. Rather, *Tanvir* considered whether

RFRA's express remedies provision, which allows plaintiffs to "obtain appropriate relief against a government," § 2000bb–1(c), "encompasses money damages against officials." 141 S. Ct. at 489. In determining that it did, the Supreme Court was careful to limit its holding, specifically stating that RFRA "permits litigants, *when appropriate*, to obtain money damages against federal officials in their individual capacities." *Id.* at 493 (emphasis added). Courts, therefore, must assess the appropriateness of damages under RFRA on a claim-by-claim basis.

The term "'appropriate' may well take on different meanings in different settings," *Tanvir v. Tanzin*, 894 F.3d 449, 466 (2d Cir. 2018), *aff'd*, 141 S. Ct. 486 (2020), and thus what constitutes "appropriate relief" is "inherently context dependent," *Tanvir*, 141 S. Ct. at 491 (quoting *Sossamon*, 563 U.S. at 286). Fundamentally, the question is whether damages would be "[s]pecially fitted or suitable, proper" in the context of the particular claim before the court. *Id.* (quoting 1 Oxford English Dictionary, at 586). Plaintiffs' RFRA claim differs significantly from those in *Tanvir* and does not support the appropriateness of damages.

Plaintiffs' attempt to hold the Individual Defendants responsible for a nationwide policy during a global pandemic is inappropriate. Indeed, judicial reluctance to impose individual-capacity damages should be especially great where such damages would limit the government's response to a global public health crisis that could have national, and international, security implications. Precedent from other contexts underscores that authorizing damages claims against high-level officials personally for establishing policies to address a national crisis like COVID-19 would be inappropriate. In the context of *Bivens* claims—the only means of suing federal officials personally under the Constitution—the Supreme Court made clear in *Abbasi* that awarding damages on the basis of policymaking is not appropriate, especially where the policies in question concerned "major elements of the Government's whole response to the September 11 attacks." *See* 137 S. Ct. at 1849. The Supreme Court explained that allowing such claims against officials "would call into question the formulation and implementation of a general policy," *id.* at 141, and that "the burden and demand of litigation might well prevent [officials] from devoting the time and effort required for the proper discharge of their duties." *Id.* (citing *Cheney v. U.S. Dist. Court*

*for D.C.*, 542 U.S. 367, 382 (2004)). The fact that *Abbasi* and other *Bivens* cases are implied rather than statutory causes of action is not a hindrance. In this context the judicial assessment of when and whether damages are "appropriate relief" under RFRA involves precisely the same common law considerations that courts look to when assessing implied rights of action.

The reticence to extend liability for policymaking, particularly in times of crisis, is apparent in other contexts too. For instance, the Fifth Circuit has interpreted the "discretionary function exception" in the FTCA to preclude government liability for policy decisions responding to a natural disaster. *See, e.g., Freeman v. United States*, 556 F.3d 326, 340-41 (5th Cir. 2009) (rejecting claim alleging negligent federal response to Hurricane Katrina); *Spotts v. United States*, 613 F.3d 559, 572-73 (5th Cir. 2010) (rejecting claim based on decision not to evacuate high-security prisoners after hurricane). And as the Second Circuit has explained, Congress has also legislated to prevent "judicial second-guessing" in the context of "disaster relief efforts" by adding a similar exception to the Stafford Act, which governs federal disaster response. *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 192 (2d Cir. 2008) (interpreting Section 305 of the Stafford Act, 42 U.S.C. § 5148); *see also Benzman v. Whitman*, 523 F.3d 119, 126 (2d Cir. 2008) (concluding that "a suit against a federal official for decisions made as part of federal disaster response and cleanup efforts implicate the sort of 'special factors' that counsel against creation of a *Bivens* remedy").

These decisions stand for a principle that is relevant here: damages are not appropriate in the context of federal policymaking in response to a national crisis. COVID-19 has been a significant cause of illness and death, not only in this country, but globally. *See* HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx; *see also* Prabhat Jha, Patrick E. Brown & Rashid Ansumana, *Counting the global COVID-19 dead*, Lancet, May 6, 2022, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9075854/. *See United States v. Horton*, No. 19-cr-115-ELH, 2023 WL 3390910, at *9 (D. Md. May 10, 2023) (quoting *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in*

*part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022) (noting that "COVID-19 spawned 'a public health crisis more severe than any seen for a hundred years'")).

For these reasons, a damages remedy would not be "appropriate relief" here. If *Tanvir*'s statement that litigants may only recover individual capacity damages under RFRA "when appropriate" means anything, it warrants not extending damages relief to a claim like the cause of action presented by Plaintiffs, and others similarly situated, against high-ranking federal employees. *See* 141 S. Ct. at 493.

## Conclusion

For all the foregoing reasons, the Court should grant the Individual Defendants' motion to dismiss and dismiss all claims against them with prejudice.

Dated this 10th Day of November, 2023      Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, Jr.
Director
Civil Division, Torts Branch

JAMES G. BARTOLOTTO
Senior Trial Counsel
Civil Division, Torts Branch

*/s/ Jacob A. Bennett*
JACOB A. BENNETT
"Attorney-in-Charge"
NY Bar # 5753744
SDTX Bar # 3839455
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Constitutional & Specialized Tort Litigation
175 N. St. NE, Room 7.1815
Washington, DC 20002
Phone: (202) 451-7745
Facsimile: (202) 616-4314

Email: Jacob.A.Bennett@usdoj.gov

*Attorneys for Individual Defendants Merrick B. Garland and Christopher Wray*

## CERTIFICATES OF SERVICE & CONFERENCE

I certify that on November 10, 2023, the foregoing was filed and served on Plaintiffs and counsel of record through the Court's electronic filing system (ECF).

I further certify that this filing, a motion under Fed. R. Civ. P. 12(b), is exempt from the Local Rules' Conference Requirements. *See* S.D. Tex. L.R. 7.1D.

*/s/ Jacob A. Bennett*
Jacob A. Bennett
Trial Attorney

34