**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Feds for Medical Freedom, et al., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-01817 |
| | § | |
| Merrick B. Garland, et al., | § | |
| | § | |
| Defendants. | § | |

**<u>OFFICIAL CAPACITY DEFENDANTS' PARTIAL MOTION TO DISMISS</u>**

Dated: November 17, 2023

Respectfully submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By: <u>*/s/ Myra Siddiqui*</u>
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9600
Fax: (713) 718-3303
E-mail: myra.siddiqui@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iv

NATURE AND STAGE OF THE PROCEEDING........................................................................ 1

FACTUAL BACKGROUND ........................................................................................................ 1

STATEMENT OF THE ISSUES................................................................................................... 4

STANDARD OF REVIEW ........................................................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................................................ 5

ARGUMENT ................................................................................................................................. 6

I.   Feds for Medical Freedom has not met its burden to establish standing to bring suit........ 6

II.   Title VII Claims ............................................................................................................... 8

    A.   All Title VII claims against Director Wray in his official capacity, DOJ, and the FBI should be dismissed because the proper defendant in a Title VII action is the head of the agency. ................................................................................................................... 8

    B.   Plaintiffs' retaliation claim should be dismissed because Plaintiffs have not plausibly alleged a causal connection between a protected activity and an adverse employment action. .................................................................................................................... 9

    C.   Plaintiffs' claim for disparate treatment should be dismissed because Plaintiffs have not plausibly alleged that the challenged actions were taken because of their protected status. ................................................................................................................... 10

    D.   Plaintiffs' claim for harassment or hostile work environment should be dismissed because Plaintiffs have not plausibly alleged that the purported harassment was based on Plaintiffs' membership in a protected group. ........................................................ 12

    E.   Plaintiffs' claim for failure to accommodate should be dismissed as to Plaintiffs who sought only an accommodation from the vaccine requirement, because, per their allegations, these Plaintiffs were reasonably accommodated...................................... 13

    F.   Plaintiffs who did not resign from the FBI fail to state a claim for constructive discharge. ............................................................................................................... 15

III.   Plaintiffs' constitutional claims must also be dismissed................................................ 16

    A.   Plaintiffs' constitutional claims are barred by sovereign immunity.......................... 16

B. Plaintiffs' due process claim fails because there is no fundamental right to be free from vaccination, and the protocols satisfy rational-basis review. ..................................... 17

C. Plaintiffs fail to plead a plausible free exercise claim. ................................................ 20

IV. Plaintiffs' claims under RFRA are barred by sovereign immunity. ................................. 21

CONCLUSION ........................................................................................................................ 23

CERTIFICATE OF SERVICE ................................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Alfonso v. United States*,
752 F.3d 622 (5th Cir. 2014) ............................................................................... 5

*Antoine v. First Student, Inc.*,
713 F.3d 824 (5th Cir. 2013) ............................................................................. 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 5

*Baney v. Gonzales*,
2007 WL 1944462 (N.D. Tex. June 27, 2008) ...................................................... 8

*Bloch v. Samuels*,
No. CIV.A. H-04-4861, 2006 WL 2239016 (S.D. Tex. Aug. 3, 2006) .................... 21

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
70 F.4th 914 (5th Cir. 2023) ............................................................................. 21

*Bruff v. N. Mississippi Health Servs., Inc.*,
244 F.3d 495 (5th Cir. 2001) ............................................................................. 14

*Buyze v. Mukasey*,
2008 WL 904718 (N.D. Tex. Mar. 31, 2008) ....................................................... 8

*C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist.*,
415 F. App'x 541 (5th Cir. 2011) ...................................................................... 21

*Cantu-Delgadillo v. Holder*,
584 F.3d 682 (5th Cir. 2009) ............................................................................. 18

*Cicalese v. Univ. of Tex. Medical Branch*,
924 F.3d 762 (5th Cir. 2019) ............................................................................. 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................................. 6

*Clark v. Jackson*,
No. 22-5553, 2023 WL 2787325 (6th Cir. Apr. 5, 2023) .................................... 18

*Cooper v. Dallas Police Ass'n*,
278 F. App'x 318 (5th Cir. 2008) ........................................................................ 9

*Cornerstone Christian Sch. v. Univ. Interscholastic League*,
    563 F.3d 127 (5th Cir. 2009) ................................................................ 20, 21

*Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*,
    497 U.S. 261 (1990) ................................................................................ 19

*Davis v. Fort Bend Cnty.*,
    765 F.3d 480 (5th Cir. 2014) ................................................................ 13

*Davis v. Shields*,
    No. 1:17-CV-1347-P, 2017 WL 7051213 (W.D. La. Dec. 28, 2017) ...................................... 22

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015) ................................................................................ 14

*E.E.O.C. v. BJ Servs. Co.*,
    921 F. Supp. 1509 (N.D. Tex. 1995) ................................................................ 15

*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994) ................................................................................ 16

*Feds for Med. Freedom v. Biden*,
    581 F. Supp. 3d 826 (S.D. Tex. Jan. 21, 2022) ......................................................... 3

*Gibson v. Fed. Bureau of Prisons*,
    121 F. App'x 549 (5th Cir. 2004) ................................................................ 16

*Harris v. Hahn*,
    827 F.3d 359 (5th Cir. 2016) ................................................................ 20

*Hawkins v. Freeman*,
    195 F.3d 732 (4th Cir. 1999) ................................................................ 18

*Heller v. Doe ex rel. Doe*,
    509 U.S. 312 (1993) ................................................................................ 19, 20

*Horvath v. City of Leander*,
    946 F.3d 787 (5th Cir. 2020) ................................................................ 14

*Hunt v. Washington State Apple Advertising Comm'n*,
    432 U.S. 333 (1977) ................................................................................ 7

*Krim v. pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005) ................................................................ 5

*Jackson v. Wilkie*,
  2020 WL 4912916 (E.D. Tex. July 21, 2020) ........................................................ 8

*Jacobson v. Commonwealth of Massachusetts*,
  197 U.S. 11 (1905) ................................................................................................ 18

*Johnson v. PRIDE Indus., Inc.*,
  7 F.4th 392 (5th Cir. 2021) .................................................................................. 12

*Klaassen v. Trustees of Indiana Univ.*,
  7 F.4th 592 (7th Cir. 2021) .................................................................................. 18

*Lucky v. COBX, Co.*,
  2023 WL 3359607 (E.D. Mich. May 10, 2023) ................................................. 9, 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 6

*Lulac Councils 4433 & 4436 v. City of Galveston*,
  942 F. Supp. 342 (S.D. Tex. 1996) ........................................................................ 7

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) .............................................................................................. 18

*Morgan v. Huntington Ingalls, Inc.*,
  879 F.3d 602 (5th Cir. 2018) ................................................................................. 6

*Onyeugbo v. Providencia Grp. LLC*,
  No. 3:22-CV-1719-B-BH, 2023 WL 3958909 (N.D. Tex. May 22, 2023) ............ 11

*Pacheco v. Universal Forest Prod. W. Div., Inc.*,
  No. 3:08-CV-1922-N, 2010 WL 11618656 (N.D. Tex. Aug. 31, 2010) ................. 16

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  748 F.3d 583 (5th Cir. 2014) ........................................................................... 19, 20

*Raich v. Gonzales*,
  500 F.3d 850 (9th Cir. 2007) ................................................................................ 18

*Raj v. Louisiana State Univ.*,
  714 F.3d 322 (5th Cir. 2013) ...................................................................... 11, 15, 16

*Reichert v. Infusion Partners, L.L.C.*,
  No. CV 22-5450, 2023 WL 4685377 (E.D. La. July 21, 2023) ....................... 12, 15

*Roberts v. Unitrin Specialty Lines Ins. Co.*,
    405 F. App'x 874 (5th Cir. 2010) ........................................................... 16

*Rynearson v. United States*,
No. DR-12-CV-24-AM/CW, 2013 WL 5461858 (W.D. Tex. Sept. 30, 2013) ........................ 17

*Schelske v. Austin*,
    No. 6:22-CV-049-H, 2023 WL 5986462 (N.D. Tex. Sept. 14, 2023) ...................... 22

*Self-Ins. Inst. of Am., Inc. v. Korioth*,
    53 F.3d 694 (5th Cir. 1995) ................................................................. 7

*Skoczylas v. Federal Bureau of Prisons*,
    961 F.2d 543 (5th Cir. 1992) ................................................................ 8

*St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*,
    556 F.3d 307 (5th Cir. 2009) ................................................................ 5

*Tagore v. United States*,
    735 F.3d 324 (5th Cir. 2013) .............................................................. 13

*Texas Peace Officers Ass'n v. City of Galveston*, Tex.,
    944 F. Supp. 562 (S.D. Tex. 1996) .......................................................... 7

*Tinsley v. Pittari*,
    952 F. Supp. 384 (N.D. Tex. 1996) ........................................................ 22

*Townsend v. Alexandre*,
    No. 18-CV-0842, 2019 WL 7560740 (W.D. La. Nov. 25, 2019) ............................ 17

*Troulliet v. Gray Media Grp., Inc.*,
    No. CV 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023) ............................ 10

*U.S. Navy SEALs 1-26 v. Biden*,
    No. 22-10077, 2023 WL 4362355 (5th Cir. July 6, 2023) ............................. 17, 22

*United States v. King*,
    395 U.S. 1 (1969) .......................................................................... 16

*United States v. Mitchell*,
    445 U.S. 535 (1980) ....................................................................... 16

*United States v. Mitchell*,
    463 U.S. 206 (1983) ....................................................................... 16

*United States v. Sherwood,*
  312 U.S. 584 (1941) ................................................................................. 16

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
  570 U.S. 338 (2013) ................................................................................... 9

*Washington v. Glucksberg,*
  521 U.S. 702 (1997) ................................................................................. 18

*Washington v. Harper,*
  494 U.S. 210 (1990) ................................................................................. 19

*We The Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir.) ............................................................................. 18

*Webman v. Fed. Bureau of Prisons,*
  441 F.3d 1022 (D.C. Cir. 2006) .............................................................. 21

*Workman v. Mingo Cnty. Bd. of Educ.,*
  419 F. App'x 348 (4th Cir. 2011) ........................................................... 19

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) ............................................................................. 16

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................... 1, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ................................................ 4, 5

**Other Authorities**

Executive Order No. 14,043, 86 Fed. Reg. 50989 (Sept. 9, 2021) ......................... 1, 3, 4

Executive Order No. 14,099, 88 Fed. Reg. 30,891 (May 9, 2023) ........................... 3, 4

Defendants Attorney General Merrick B. Garland, in his official capacity; U.S. Department of Justice; Federal Bureau of Investigation ("FBI") Director Christopher Wray, in his official capacity; and the FBI (together, the "Official Capacity Defendants") move to dismiss (i) all claims brought by Plaintiff Feds for Medical Freedom because the organization lacks standing to bring suit, and (ii) certain claims brought by Plaintiffs, pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs, 39 current and former FBI employees and the organization Feds for Medical Freedom, filed this suit arising out of the FBI's COVID-related protocols on May 17, 2023, Dkt. 1, and amended their complaint on July 11, 2023, Dkt. 6. Plaintiffs bring claims under Title VII of the Civil Rights Act for failure to accommodate, disparate treatment, disparate impact, hostile work environment, retaliation, and constructive discharge; the Religious Freedom Restoration Act of 1993 ("RFRA"); and the First Amendment and Fifth Amendment of the U.S. Constitution to challenge the vaccine requirement and safety protocols in Executive Order 14043. Dkt. 6, ¶¶ 71, 153-251. The Individual Capacity Defendants filed their motion to dismiss on November 10, 2023. Dkt. 44. The court extended the Official Capacity Defendants' deadline to answer to November 17, 2023. Dkt. 41.

## FACTUAL BACKGROUND

Plaintiffs challenge Executive Order 14043 ("EO"), 86 Fed. Reg. 50989 (Sept. 9, 2021), requiring covered federal employees to vaccinate against COVID-19, subject to exceptions required by law. Dkt. 6, ¶ 71. The EO directed the Safer Federal Workforce Task Force ("Task Force") to issue guidance on implementation of the vaccination requirement. *Id*., ¶ 68 That guidance recognized that federal employees could be eligible for exceptions to the vaccination

1

requirement based on a medical condition or sincerely held religious belief, and instructed each agency to "follow its ordinary process to review and consider what, if any, accommodation it must offer." Task Force, Frequently Asked Questions, Vaccinations, https://perma.cc/VHQ3-R85R ("Vaccination FAQs"). The guidance further provided that any employee who requested an exception should not be subject to discipline during the pendency of that request. *Id.*

Plaintiffs alleged various objections to the vaccine and sought religious accommodations from this requirement. Several Plaintiffs identify their religious practices or religious beliefs. *See, e.g.*, *id.* ¶ 28, 30, 31, 38, 39. 14 of the Plaintiffs do not allege any religion or belief system. *Id.*, ¶¶ 24, 25, 27, 29, 32, 35, 37, 44, 45, 48, 54, 55, 58, 62.

On November 17, 2021, the FBI's Office of Equal Employment Opportunity Affairs circulated a memo to all FBI employees stating that it had received over 2,500 requests for accommodations, and that it was in the process of adjudicating them. *Id.*, ¶ 80. The memo announced that "[for] those who have completed the required COVID-19 vaccination attestations and requested a reasonable accommodation, no disciplinary action will be taken until an HR decision is rendered." *Id.*, ¶ 81. Finally, the memo provided that employees seeking accommodations were required to adhere to COVID-19 "safety protocols," including masking, social distancing, and periodic testing. *Id.*, ¶ 88. Some, but not all, Plaintiffs requested a second accommodation to be exempt from the masking-and-testing protocol. *See id.*, ¶¶ 26, 32, 39, 43, 46, 54.

Plaintiffs contend that employees who did not share their religious beliefs "were not required to follow" these protocols yet admit that the protocols also applied to employees seeking medical—rather than religious—exemptions. *Id.* ("[E]mployees who did not share Plaintiffs' religious beliefs (and who were not seeking a medical accommodation) were not required to

follow" the protocols.); *id.*, ¶ 97 ("Defendants separated employees with religious and medical objections to the vaccine from those who did not have those objections."); *id.*, ¶ 98 ("Plaintiff Scott McGlothin worked in a location where only 3% of employees were required to test (those who requested religious or medical accommodations) . . . .").

Plaintiffs allege a myriad of outcomes, such as allegations of feeling "unwelcome, separated, shamed, and pressured," *id.*, ¶ 24, being placed on Absent Without Leave ("AWOL") status, *id.*, ¶ 32, or voluntarily retiring, *id.*, ¶¶ 27, 38, 54.

As of January 21, 2022, Plaintiffs are no longer subject to the vaccine mandate and safety protocols, which have been rescinded. *Id.*, ¶ 36. On January 21, 2022, just a few months after the EO was issued, and after several courts rejected attempts to preliminarily enjoin it, a single district court entered a nationwide preliminary injunction prohibiting the government from "implementing or enforcing Executive Order 14043" pending resolution of the case on the merits. *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex. Jan. 21, 2022), vacated and remanded, 30 F.4th 503 (5th Cir. 2022), vacated, 37 F.4th 1093 (5th Cir. 2022) (en banc), aff'd on reh'g, 63 F.4th 366 (5th Cir. 2023) (en banc). While that injunction remained in effect, the government understood it to bind the entire Executive Branch, and no federal agency implemented the EO or disciplined any employee for noncompliance with its vaccination requirement. *See* Vaccination FAQs ("To ensure compliance with the applicable preliminary nationwide injunction . . . the Federal Government will take no action to implement or enforce the COVID-19 vaccination requirement pursuant to Executive Order 14043 . . . ."). The injunction was still in effect when, days before plaintiffs filed this lawsuit, President Biden revoked EO 14043. *See* Exec. Order No. 14,099, 88 Fed. Reg. 30,891 (May 9, 2023) ("EO 14099"). EO 14099 explained that the United States was "no longer in the acute phase of the COVID-19 pandemic" following the successful

vaccination requirement and continued investment in tests and therapeutics. *Id*. at 30,891. EO 14099 thereby rescinded agency policies premised on EO 14043 and directed federal agencies to no longer implement or enforce it. *See id*.

## STATEMENT OF THE ISSUES

1.      Whether Plaintiff Feds for Medical Freedom's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

2.      Whether Plaintiffs' Title VII claim for retaliation should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

3.      Whether Plaintiffs' Title VII claim for disparate treatment should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

4.      Whether Plaintiffs' Title VII claim for hostile work environment should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

5.      Whether the Title VII claim for failure to accommodate brought by Plaintiffs who sought only an accommodation as to the vaccine requirement should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

6.      Whether the claim for constructive discharge brought by Plaintiffs who did not resign from the FBI should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

7.      Whether Plaintiffs' constitutional claims should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).

8.      Whether Plaintiffs' RFRA claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss an action when it lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quotations omitted). Once a Rule 12(b)(1) motion is filed, the party asserting jurisdiction bears the burden of proof. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quotations omitted). In reviewing such a motion, a court may rely on any of the following to decide the matter: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quotations omitted).

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though the plausibility standard is not a "probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## SUMMARY OF THE ARGUMENT

First, Plaintiff Feds for Medical Freedom's claims should be dismissed because Feds for Medical Freedom alleges no injury to itself to establish standing on its own behalf and cannot bring suit under associational standing. Second, because Plaintiffs allege that all unvaccinated

employees, regardless of religious beliefs, were subject to the challenged actions, Plaintiffs cannot prove the requisite causation as to their claims for disparate treatment, hostile work environment, or retaliation. Third, Plaintiffs who sought only an accommodation to the vaccine requirement were provided with a reasonable accommodation of masking and testing. Fourth, Plaintiffs who have not resigned from the FBI fail to state a claim for constructive discharge. Fifth, Plaintiffs fail to plausibly allege claims under the Free Exercise Clause or Due Process Clause. Lastly, Plaintiffs' constitutional and RFRA claims are barred by sovereign immunity.

## ARGUMENT

### I.   Feds for Medical Freedom has not met its burden to establish standing to bring suit.

Feds for Medical Freedom alleges no injury to establish standing on its own behalf and cannot bring suit under associational standing. Standing requires (1) the plaintiff to have suffered an "injury in fact", meaning an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct complained of; and (3) for it to be likely that "the injury will be redressed by a favorable decision." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotations omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). Feds for Medical Freedom has alleged no injury to itself, let alone one that satisfies the three pre-requisites for standing.

As to associational standing, the Supreme Court has developed a three-part test for determining when an association has standing to bring suit on behalf of its members. An association has "associational standing" when: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose;

and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977). Courts have dismissed complaints filed by organizations bringing suit in the same manner as Feds for Medical Freedom here. For example, in *Lulac Councils 4433 & 4436 v. City of Galveston*, the court concluded that the organizations did not have standing for two reasons. 942 F. Supp. 342, 345 (S.D. Tex. 1996). First, the complaint failed to allege that the individuals allegedly discriminated against were members of the organizations bringing suit. *Id*. "Under the most basic logic, an organization cannot sue under an 'associational standing' theory if the aggrieved parties are not members of their organization." *Id*.; *see also Texas Peace Officers Ass'n v. City of Galveston*, Tex., 944 F. Supp. 562, 563 (S.D. Tex. 1996) (no standing for association to bring suit where complaint failed to allege individuals allegedly discriminated against were members).

Second, as to the third prong, the court concluded that "participation of the individual Plaintiffs is required in this lawsuit because of the individualized nature of discrimination cases and because of the nature of the relief sought in the case." *Lulac*, 942 F. Supp. at 345; *see also Texas Peace Officers*, 944 F. Supp. at 564 (same).

Because Feds for Medical Freedom does not allege that any aggrieved individuals are among its members, it cannot establish associational standing. Even if its members were aggrieved, those individuals would need to be party to this suit. An association "does not enjoy standing to seek damages for monetary injuries peculiar to individual members where the fact and extent of injury will require individualized proof." *Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 695–96 (5th Cir. 1995). That is the case here. The individual Plaintiffs have a diverse range of allegations, from those who remain employed at the FBI to those who voluntarily resigned, as well

as those who bring religious discrimination claims based on their Catholic beliefs to those who identify as agnostic or do not allege any religion or belief at all. The highly individualized nature of these claims and related relief requires the aggrieved persons to be part of this suit. Therefore, all claims brought by Feds for Medical Freedom should be dismissed for lack of standing and thus for lack of subject matter jurisdiction.

## II.   Title VII Claims

### A.   All Title VII claims against Director Wray in his official capacity, DOJ, and the FBI should be dismissed because the proper defendant in a Title VII action is the head of the agency.

As a preliminary matter, the proper defendant in a Title VII action is "the head of the department, agency, or unit." *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 544 (5th Cir. 1992) (quoting 42 U.S.C. § 2000e-16(c)). "Further, any Title VII claims against the head of the federal department, agency, or unit are against such individual in his or her official capacity only." *Jackson v. Wilkie*, 2020 WL 4912916, at *8 (E.D. Tex. July 21, 2020); *Buyze v.* Mukasey, 2008 WL 904718, at *4 (N.D. Tex. Mar. 31, 2008) ("Thus, as the head of the Agency that oversees the FBI, Attorney General Mukasey in his official capacity is the only proper defendant in the instant [Title VII] action."); *Baney v. Gonzales*, 2007 WL 1944462, at *1 (N.D. Tex. June 27, 2008) ("Plaintiff's Title VII claims are dismissed with prejudice against all named defendants except Attorney General Alberto Gonzales for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."). Here, as the head of the agency that oversees the FBI, Attorney General Garland in his official capacity is the only proper defendant with respect to Plaintiffs' Title VII claims. Thus, all Title VII claims against Director Wray in his official capacity, DOJ, and the FBI should be dismissed for failure to state a claim.

**B. Plaintiffs' retaliation claim should be dismissed because Plaintiffs have not plausibly alleged a causal connection between a protected activity and an adverse employment action.**

A prima facie case of retaliation under Title VII has three elements: "(1) the employee engaged in [an] activity protected by Title VII; (2) the employer took [an] adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) (internal citations omitted). On the last prong, but-for causation is required. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiffs' complaint fails to plausibly allege the causation element. Plaintiffs allege that the purported adverse employment actions were imposed on all employees who remained unvaccinated, including those who sought religious accommodations as well as those requesting medical accommodations to the vaccine requirement. *See, e.g.*, Dkt. 6, ¶ 97 ("Defendants separated employees with religious *and medical objections* to the vaccine from those who did not have those objections.") (emphasis added); *id.*, ¶ 98 ("Plaintiff Scott McGlothin worked in a location where only 3% of employees were required to test (those who requested religious *or medical accommodations*) . . . .") (emphasis added); *id.*, ¶ 88 ("[E]mployees who did not share Plaintiffs' religious beliefs (and who were not seeking a medical accommodation) were not required to follow" the protocols.). Because any challenged actions were the result of Plaintiffs' unvaccinated status, regardless of religious beliefs, Plaintiffs have not plausibly pleaded the requisite "but-for" causation as to religion, and their retaliation claim must be dismissed.

For example, in *Lucky v. COBX, Co.*, the court granted the motion to dismiss a Title VII retaliation claim where the amended complaint made clear that the plaintiff "was terminated because she refused the vaccine, not because she requested a religious exemption." No. 22-12514, 2023 WL 3359607, at *3 (E.D. Mich. May 10, 2023). The allegations and the employer's policy

showed that the employer terminated the plaintiff "because she refused to get vaccinated against COVID-19, not because she requested an accommodation." *Id*. Moreover, like this case, the plaintiff did not allege that, "had she never requested a religious exemption but still refused to get vaccinated, she would have remained employed." *Id*. Nor did she allege that "had she gotten vaccinated, she still would have been suspended and terminated because she had requested a religious exemption." *Id*.  Since the adverse employment action resulted not from the plaintiff's request for accommodation but from her failure to get the COVID-19 vaccine after her request for accommodation was denied, the retaliation claim was dismissed. *Id*.; *see also Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *7 (E.D. La. Apr. 11, 2023) (dismissing retaliation claim where plaintiff did not "allege a single fact to support finding that it was the request for religious accommodation that resulted in her termination. As she herself argues, she was terminated because she would not comply with [employer's] vaccine policy").

Like the plaintiff in *Lucky*, Plaintiffs do not allege that similarly situated employees without religious objections to the vaccine but who refused to vaccinate or comply with masking and testing protocols did not suffer the alleged adverse employment actions. Indeed, Plaintiffs contradict that allegation, by admitting that all unvaccinated employees, including those who sought accommodations for non-religious reasons, were also subject to these protocols. Dkt. 6, ¶¶ 88, 97, 98. Because any purported adverse employment action was the result of Plaintiffs' unvaccinated status, not their religious beliefs, Plaintiffs have failed to plausibly state a claim for retaliation due to requests for religious accommodation.

     **C.**   **Plaintiffs' claim for disparate treatment should be dismissed because Plaintiffs have not plausibly alleged that the challenged actions were taken because of their protected status.**

In a disparate treatment claim under Title VII, a plaintiff must plausibly plead two ultimate elements: (1) that he suffered an adverse employment action; and (2) that the action was taken

"because of" his protected status. *Onyeugbo v. Providencia Grp. LLC*, No. 3:22-CV-1719-B-BH, 2023 WL 3958909, at *4 (N.D. Tex. May 22, 2023) (citing *Cicalese v. Univ. of Tex. Medical Branch*, 924 F.3d 762, 767 (5th Cir. 2019)). "[T]he 'ultimate question' in a Title VII disparate treatment claim remains 'whether a defendant took the adverse employment action against a plaintiff *because* of her protected status.'" *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (affirming dismissal for failure to state a disparate treatment claim) (internal citations omitted). For example, in *Raj*, the Fifth Circuit affirmed dismissal of a complaint, noting that the plaintiff "did not allege any facts . . . that would suggest [the employer's] actions were based on [the plaintiff's] race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably." *Id*.

Here, Plaintiffs' complaint fails to plausibly allege that any purported adverse employment action resulted from Plaintiffs' religious beliefs. Numerous times, Plaintiffs admit that the masking-and-testing protocols were imposed on all unvaccinated employees, including both Plaintiffs *and* those seeking accommodations for medical reasons. *See, e.g.*, Dkt. 6, ¶ 97 ("Defendants separated employees with religious *and medical objections* to the vaccine from those who did not have those objections.") (emphasis added); *id*., ¶ 98 ("Plaintiff Scott McGlothin worked in a location where only 3% of employees were required to test (those who requested religious *or medical accommodations*) . . . .") (emphasis added); *id*., ¶ 88 ("[E]mployees who did not share Plaintiffs' religious beliefs (and who were not seeking a medical accommodation) were not required to follow" the protocols.). The disparate treatment claim alleges that "Plaintiffs were treated differently than similarly situated employees in that employees who did not assert religious objections to the vaccine (*or request a medical accommodation*) and related requirements were

11

not terminated or threatened with termination, denied opportunities for travel, training, development, career growth." *Id*., ¶ 196.

Thus, the complaint alleges that FBI employees who did not obtain a COVID-19 vaccination, regardless of religious beliefs, were subject to the safety protocols. Plaintiffs fail to identify a single similarly situated employee outside of their protected class (i.e., a non-religious unvaccinated employee) who was not subject to the safety protocols. *See Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *6 (E.D. La. July 21, 2023) (dismissing complaint where plaintiff did not allege that defendants treated "similarly situated employees outside of her protected class" more favorably). Instead, the complaint refutes this suggestion by alleging the FBI imposed the challenged policies on unvaccinated employees altogether, not just employees who were unvaccinated for religious reasons.

Because Plaintiffs have failed to state a plausible claim that their religious beliefs were the cause of their alleged adverse employment actions, Plaintiffs' disparate treatment claim should be dismissed.

### D. Plaintiffs' claim for harassment or hostile work environment should be dismissed because Plaintiffs have not plausibly alleged that the purported harassment was based on Plaintiffs' membership in a protected group.

To establish a claim of hostile work environment, Plaintiffs must prove that they (1) belong to a protected group; (2) were subjected to unwelcome harassment; (3) the harassment complained of was based on their membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021).

Plaintiffs' complaint fails to plausibly allege the causation element in the third prong of their hostile work environment claim. Again, Plaintiffs admit that the alleged adverse employment

actions were imposed on all unvaccinated employees, including those who sought non-religious accommodations to the vaccine requirement.  *See* Dkt. 6, ¶¶ 88, 97, 98.

Thus, the complaint alleges that employees who did not vaccinate, regardless of religious beliefs, were subject to the same masking-and-testing protocols and other alleged adverse employment actions. The existence of different procedures for unvaccinated employees is not an example of discrimination based on religion, but instead distinction based on vaccination status, which is not a protected class. Plaintiffs have not alleged that any unvaccinated employee with different religious beliefs was treated more favorably. Because any alleged actions were based on Plaintiffs' unvaccinated status, and not by religious beliefs, Plaintiffs have failed to allege a plausible hostile work environment claim.

### E. Plaintiffs' claim for failure to accommodate should be dismissed as to Plaintiffs who sought only an accommodation from the vaccine requirement, because, per their allegations, these Plaintiffs were reasonably accommodated.

Plaintiffs who requested an accommodation from the vaccine requirement and did not seek a religious accommodation from the other protocols have failed to state a claim for failure to accommodate.[1] Plaintiffs were never subject to discipline for failure to comply with the vaccination mandate. Instead, Official Capacity Defendants reasonably accommodated this initial request by providing the alternate protocol of masking and testing.

To establish a prima facie religious accommodation claim, a plaintiff must show "that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v.*

---

[1] The Official Capacity Defendants do not concede that the remaining Plaintiffs plead a plausible or valid failure to accommodate claim and do not waive the right to later challenge this claim as to the remaining Plaintiffs.

*Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)). If the plaintiff makes this showing, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

Plaintiffs who only raised religious objections to the vaccine itself have not plausibly alleged failure to accommodate for one simple reason: they were never required to comply with the vaccine mandate. If an employer allows "the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary—adverse action 'because of' the religious practice is not shown." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015). As Plaintiffs admit, Official Capacity Defendants did not enforce the vaccine requirement against them while their exemption requests were pending. *See* Dkt. 6, ¶¶ 81, 91. By suspending enforcement of the vaccine requirement while Plaintiffs' requests were pending, Official Capacity Defendants eliminated any potential conflict between the Plaintiffs' beliefs and Official Capacity Defendants' policies. Accordingly, those plaintiffs who objected only to the vaccine did not suffer an adverse employment action "because of" the vaccination requirement; that requirement was never enforced against them.

Even if Plaintiffs had plausibly alleged that they were disciplined for failing to comply with the vaccine requirement (which they have not), Official Capacity Defendants reasonably accommodated their beliefs by permitting them to mask and test in lieu of vaccination. "Once an employer has established that it offered a reasonable accommodation, even if that alternative is not the employee's preference, it has satisfied its obligation under Title VII as a matter of law." *Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020); *see also Bruff v. N. Mississippi*

14

*Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001) ("Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee."); *E.E.O.C. v. BJ Servs. Co.*, 921 F. Supp. 1509, 1513 (N.D. Tex. 1995) ("Title VII does not guarantee that an employee will be given the accommodation of his choice."). For plaintiffs who objected only to the vaccine itself, Official Capacity Defendants fulfilled their duty by permitting employees with religious objections to the vaccine to test and mask instead.[2] *See Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *4 (E.D. La. July 21, 2023) (finding that weekly testing for COVID-19 was "an objectively reasonable accommodation").

Because Plaintiffs who only requested a religious exemption from the vaccine requirement were not required to receive the vaccine and were offered a reasonable accommodation instead, these Plaintiffs have failed to plead a plausible claim for failure to accommodate.

**F. Plaintiffs who did not resign from the FBI fail to state a claim for constructive discharge.**

Plaintiffs also bring a claim for constructive discharge. Dkt. 6, ¶¶ 230-33. To the extent Plaintiffs who did not resign from the FBI seek a constructive discharge claim, these claims should be dismissed.[3] "A constructive discharge claim is based on a plaintiff's actual resignation, without which no discharge—constructive or otherwise—has occurred." *Raj v. Louisiana State Univ.*, 714

---

[2] EEOC Guidance explicitly permits the Department's accommodations. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, EEOC at K.2, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#:~:text=The%20EEO%20laws%2C%20including%20Title,about%20steps%20employers%20should%20take (May 15, 2023) ("[A]s a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or nonemployees, work a modified shift, get periodic tests for COVID-19 . . . be given the opportunity to telework, or finally, accept a reassignment.").
[3] The Official Capacity Defendants do not concede that the remaining Plaintiffs plead a plausible or valid constructive discharge claim and do not waive the right to later challenge this claim as to the remaining Plaintiffs.

F.3d 322, 330 (5th Cir. 2013); *see also Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 879 (5th Cir. 2010) (constructive discharge claim "without merit" where plaintiff did not resign and was terminated); *Pacheco v. Universal Forest Prod. W. Div., Inc.*, No. 3:08-CV-1922-N, 2010 WL 11618656, at *4 (N.D. Tex. Aug. 31, 2010) ("[A] constructive discharge plaintiff must have actually quit her job."). Plaintiffs who remain employed by the FBI or who were terminated thus have not and cannot state a plausible claim for constructive discharge. *See Raj*, 714 F.3d at 330 ("Because at the time of his complaint Raj remained a tenured professor at LSU, he has not stated a plausible claim for relief for constructive discharge.").

### III.    Plaintiffs' constitutional claims must also be dismissed.

#### A.  Plaintiffs' constitutional claims are barred by sovereign immunity.

The United States, its agencies, and its officials cannot be sued unless sovereign immunity has been unambiguously waived by statute. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). A waiver of sovereign immunity cannot be implied; it must be unequivocally expressed. *Mitchell*, 445 U.S. at 538; *United States v. King*, 395 U.S. 1, 4 (1969). Absent a waiver of sovereign immunity, the district court lacks jurisdiction over a claim against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983).

While a plaintiff may in some instances bring a *Bivens* action against individual officers in their individual capacity for an alleged constitutional violation—which Plaintiffs know as evidenced by also suing the Individual Capacity Defendants for the same underlying conduct— he may not bring such a damages action against the United States, its agencies, or its officers in their official capacities "as such claims are barred by the doctrine of sovereign immunity." *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (noting that while Section 1983 permits suits against state officials,

"Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government"); *Rynearson v. United States*, No. DR-12-CV-24-AM/CW, 2013 WL 5461858, at *5 (W.D. Tex. Sept. 30, 2013) (agreeing that the "constitutional claims should be dismissed for lack of subject matter jurisdiction because the United States and its agencies have not waived sovereign immunity for any constitutional claims for damages"); *Townsend v. Alexandre*, No. 18-CV-0842, 2019 WL 7560740, at *2 (W.D. La. Nov. 25, 2019), report and recommendation adopted, No. 18-CV-0842, 2020 WL 122626 (W.D. La. Jan. 9, 2020) ("[C]laims for monetary damages against federal employees in an official capacity based upon allegations of constitutional violations are barred by the doctrine of sovereign immunity . . . .").

In this suit, Plaintiffs seek only monetary damages from the Official Capacity Defendants. Dkt. 6 at 64. Even if Plaintiffs had sought declaratory or injunctive relief, such claims would be rendered moot by the undisputed rescission of the vaccine requirement. *See, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077, 2023 WL 4362355, at *1 (5th Cir. July 6, 2023) (finding that U.S. Navy's rescission of its COVID-19 vaccine mandate rendered dispute over lawfulness of vaccine requirement moot and deprived court of jurisdiction). Because sovereign immunity has not been waived as to constitutional claims for damages against federal agencies or federal officials in their official capacity, Plaintiffs' constitutional claims must be dismissed.

### B. Plaintiffs' due process claim fails because there is no fundamental right to be free from vaccination, and the protocols satisfy rational-basis review.

Even if the Court had jurisdiction over Plaintiffs' due process claim, it would fail on the merits. Plaintiffs allege a due process violation of the "constitutionally protected liberty interest in refusing unwanted medical treatment." Dkt. 6, ¶ 249. In a substantive due process inquiry, the

Court's analysis must begin with "a careful, specific description of the right at issue." *McDonald v. City of Chicago*, 561 U.S. 742, 797 (2010) (Scalia, J., concurring); *see also, e.g.*, *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (court must "adopt a narrow definition of the interest at stake"); *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999) (cautioning against "analyzing the claimed right at too general a level"). The Court must then determine whether the asserted right—"thus narrowly defined," *McDonald*, 561 U.S. at 797—is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty," i.e., "fundamental," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted). If the challenged government action infringes upon a fundamental right, it receives heightened judicial scrutiny; if not, it receives rational basis review. *See, e.g.*, *Cantu-Delgadillo v. Holder*, 584 F.3d 682, 687 (5th Cir. 2009).

Courts have found that a plaintiff has no fundamental right again vaccination. For example, in *Jacobson v. Commonwealth of Massachusetts*, the Supreme Court upheld a state law permitting localities to require smallpox vaccination under penalty of criminal sanctions. 197 U.S. 11, 39 (1905). "Following *Jacobson*, federal courts have consistently held that vaccine mandates do not implicate a fundamental right and have applied rational basis review." *Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *6 (6th Cir. Apr. 5, 2023); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), and cert. denied sub nom. *Dr. A. v. Hochul*, 142 S. Ct. 2569, 213 L. Ed. 2d 1126 (2022) ("Both this Court and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional."); *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th

592, 593 (7th Cir. 2021) (no "constitutional problem with vaccination against SARS-CoV-2" as condition of university attendance).

There is no merit to Plaintiffs' assertion that the vaccine requirement and related protocol implicates the "constitutionally protected liberty interest in refusing unwanted medical treatment." Dkt. 6, ¶ 249. The Supreme Court has recognized this right only in the context of "forced administration of life-sustaining medical treatment," *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 279 (1990), and "forced administration of antipsychotic drugs," *Washington v. Harper*, 494 U.S. 210, 236 (1990). Plaintiffs fail to reference any history or tradition that suggest a right to refuse vaccination. *See Washington*, 521 U.S. at 721. On the contrary, vaccine mandates have been upheld by multiple courts as discussed above. Moreover, the policies at issue here did not force any plaintiff to receive medical care, as the employees were entitled to seek an exception based on a medical condition or religious objection and follow the alternate protocols.

Accordingly, courts have consistently used rational basis review to assess mandatory vaccination measures. *See, e.g.*, *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 355-56 (4th Cir. 2011). "Under rational basis review, courts must presume that the [measure] in question is valid and sustain it so long as [it] is rationally related to a legitimate state interest." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014). The challenged measure "is presumed constitutional," and "[t]he burden is on the one attacking the [measure] to negative every conceivable basis which might support it." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (quotation omitted). Here, there should be no serious dispute that the vaccine requirement and safety protocols are rationally related to the government's strong interest in promoting "the health and safety of the Federal workforce, and the health and safety of

members of the public with whom they interact" during the COVID-19 pandemic. 86 Fed. Reg. at
50,989.

The vaccine requirement and related safety protocols are rationally related to legitimate
government interests, so they must be upheld even if "there is an imperfect fit between means and
ends." *Planned Parenthood*, 748 F.3d 583 at 594 (quoting *Heller*, 509 U.S. at 321); *see also, e.g.*,
*Harris v. Hahn*, 827 F.3d 359, 365, 369 (5th Cir. 2016) (upholding state law under rational basis
review despite evidence that it was "both underinclusive and overinclusive"). Plaintiffs cite no
case holding that a vaccination requirement lacked a rational basis, and Official Capacity
Defendants are aware of none. Accordingly, the vaccine requirement and safety protocols plainly
comport with substantive due process.

### C.  Plaintiffs fail to plead a plausible free exercise claim.

Similarly, even if the Court had jurisdiction over Plaintiffs' free exercise claim, it would
fail on the merits. The First Amendment proscribes a law "prohibiting the free exercise" of
religion. *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 135 (5th Cir.
2009). "The government does not impermissibly regulate religious belief, however, when it
promulgates a neutral, generally applicable law or rule that happens to result in an incidental
burden on the free exercise of a particular religious practice or belief." *Id*. (internal citations
omitted).

For example, in *Cornerstone Christian Sch. v. Univ. Interscholastic League*, the Fifth
Circuit affirmed dismissal under Rule 12(b)(6) because the plaintiffs failed to state a claim under
the free exercise clause. In that case, a Christian college preparatory school sued the University
Interscholastic League, a non-profit association of Texas schools that organizes interscholastic
athletic and academic competitions, because UIL deemed the plaintiff school ineligible for
membership since it was eligible for membership in another league and because its membership

in another association was suspended or revoked for rules violations. *Id*. at 130-32. The Fifth Circuit affirmed the district court's conclusion that "free exercise is not substantially implicated in this case." *Id*. at 137. To reach this conclusion, the Court noted that UIL's policy "is religiously neutral and generally applicable: it does not distinguish between private and parochial nonpublic schools and does not deny the [plaintiffs] their right actively to practice their faith." *Id*. Thus, the policy did "not unduly burden the [plaintiffs'] free exercise of their religion." *Id*.; *see also C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist.*, 415 F. App'x 541, 547 (5th Cir. 2011) (affirming grant of motion to dismiss free exercise claim where plaintiff was denied re-entry into class after he refused to attend counseling or sign behavioral contract for religious reasons, because defendants had "enforced a rule of discipline applicable to all students").

Here, Plaintiffs allege that the masking-and-testing protocols were applied to all unvaccinated employes, including both employees who sought an accommodation for religious reasons and those who sought accommodations for medical reasons. *See, e.g.*, Dkt. 6, ¶¶ 88, 97, 98. Therefore, even according to Plaintiffs' allegations, the vaccine requirement was neutral and generally applied without favoring or disfavoring any religion. Plaintiffs have thus failed to state a plausible claim for violation of the free exercise clause, and this claim should be dismissed.

## IV.   Plaintiffs' claims under RFRA are barred by sovereign immunity.

RFRA provides that the federal government "shall not substantially burden a person's exercise of religion" unless the burden furthers a "compelling governmental interest" and is "the least restrictive means of furthering" that interest. *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 937 (5th Cir. 2023) (internal citations omitted). However, "RFRA does not waive the federal government's sovereign immunity for damages." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006). Damages, such as those sought by Plaintiffs in this suit, cannot be recovered against federal officials such as Attorney General

Garland and Director Wray or against federal agencies such as DOJ or the FBI. *See Bloch v. Samuels*, No. CIV.A. H-04-4861, 2006 WL 2239016, at *7 (S.D. Tex. Aug. 3, 2006) ("Federal officials are protected from claims for monetary damages by sovereign immunity, which was not waived by the RFRA.") (internal citations omitted); *Davis v. Shields*, No. 1:17-CV-1347-P, 2017 WL 7051213, at *2 (W.D. La. Dec. 28, 2017), report and recommendation adopted, No. 1:17-CV-1347-P, 2018 WL 540230 (W.D. La. Jan. 24, 2018) ("Because *Bivens* and RFRA actions for monetary damages cannot be brought against a federal agency or an employee in his official capacity, Davis's claims for monetary damages against the BOP and Defendant Shields in his official capacity should be dismissed."); *Tinsley v. Pittari*, 952 F. Supp. 384, 389 (N.D. Tex. 1996) ("Nor does any other language in the RFRA purport to waive the federal government's sovereign immunity from monetary claims. . . . Thus Tinsley's claim under the RFRA must be dismissed insofar as it is asserted against defendants in their official capacities."); *Schelske v. Austin*, No. 6:22-CV-049-H, 2023 WL 5986462, at *30 (N.D. Tex. Sept. 14, 2023) ("[T]he term 'appropriate relief' in RFRA does not unequivocally waive the defendants' sovereign immunity to claims for monetary damages.").

In their complaint, Plaintiffs seek only monetary damages from the Official Capacity Defendants. Dkt. 6 at 64. Even if Plaintiffs had sought declaratory or injunctive relief, such claims would be rendered moot by the rescission of the vaccine requirement. *See, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, No. 22-10077, 2023 WL 4362355, at *1 (5th Cir. July 6, 2023) (finding that U.S. Navy's rescission of its COVID-19 vaccine mandate rendered dispute over lawfulness of vaccine requirement moot and deprived court of jurisdiction). Therefore, Plaintiffs cannot bring a claim under RFRA.

22

## CONCLUSION

For the foregoing reasons, Official Capacity Defendants respectfully request that the Court dismiss (i) all claims brought by Plaintiff Feds for Medical Freedom; (ii) Plaintiffs' Title VII claim for retaliation; (iii) Plaintiffs' Title VII claim for disparate treatment; (iv) Plaintiffs' Title VII claim for hostile work environment; (v) the Title VII claim for failure to accommodate brought by Plaintiffs who sought only an accommodation as to the vaccine requirement; (vi) the claim for constructive discharge brought by Plaintiffs who did not resign from the FBI; (vii) Plaintiffs' constitutional claims; and (viii) Plaintiffs' RFRA claims.

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2023, the foregoing was filed and served on counsel for Plaintiffs via the Court's CM/ECF system.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
