UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDS FOR MEDICAL FREEDOM; JOSE VILLELA; TASHA ANDREWS; ADAM ARCE; ALEXANDER BAYON; MALCOLM BEZET; ALDABERT BIELSKI; LAURA BRUNSTETTER; ALEX BUSTILLOS; GRAHAM CODER; KIMBERLY CORPORA; JOSHUA CRIBBS; MICHAEL DEBEY; JAMES DROHAN; SAMUEL EBEYER; MARIAN ELLIOT; JENNIFER GEREN; RACHELLE GLENN; BRETT GLOSS; IVAN GUTTIEREZ; WARREN JENKINS; BRADLEY JOHNSON; MONTE KEIPER; SCOTT LEMASTER; SCOTT MCGLOTHIN; TY MORRISON; GARRET O'BOYLE; ANN PARRILLO; SUDANAH PARSONS; DANIEL SAAVEDRA; ROBERT SCOTT; ANDREW SELLERS; KYLE SERAPHIN; LANCE SHAKESPEAR; CHRISTOPHER TOOMPAS; BRIAN TOY; ANTHONY TRAN; MARY BETH WRIGHT; PATRICK WRIGHT; PATRICK YORK,<br><br>           Plaintiffs,<br>v.<br><br>MERRICK B. GARLAND, Attorney General, in his individual and official capacities;<br><br>U.S. DEPARTMENT OF JUSTICE, a federal agency;<br><br>CHRISTOPHER WRAY, Director of the Federal Bureau of Investigation, in his individual and official capacities;<br><br>FEDERAL BUREAU OF INVESTIGATION, a federal agency;<br><br>           Defendants. | CIVIL NO. 4:23-cv-1817<br><br>**Individual Defs. Garland & Wray's Reply in Further Support of Their Motion to Dismiss** |

### INDIVIDUAL DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1), (2), & (6)

Plaintiffs' Response to the motion to dismiss filed by Defendants Merrick B. Garland and Christopher Wray ("Individual Defendants") concedes that Plaintiffs' Title VII statutory claims do not run against the Individual Defendants and that their First and Fifth Amendment claims are subject to dismissal. Dkt. 48 at 6-8.[1] However, Plaintiffs incorrectly assert that the Religious Freedom Restoration Act (RFRA) suspends the constitutionally-based requirement that Plaintiffs establish personal jurisdiction over all Defendants. This argument proceeds from a mistaken premise, so the Court should reject all conclusions Plaintiffs draw from it.

The Court should further reject Plaintiffs' arguments on sovereign immunity, standing, and qualified immunity (including personal involvement), which contradict both themselves and the Amended Complaint, cite no caselaw, and fail to address *any* of the cases the Individual Defendants cited to demonstrate the absence of clearly established law.

### Argument

**I.   RFRA Does Not Confer Personal Jurisdiction on This Court**

Plaintiffs do not contest the Individual Defendants' substantive arguments on personal jurisdiction, thereby conceding that their Amended Complaint fails to allege a basis for either general or specific jurisdiction under the Texas long-arm statute. *Compare* Dkt. 44 at 18-20, *with* Dkt. 48 at 8. Instead, Plaintiffs put forth a proposed "RFRA exception" to personal jurisdiction, Dkt. 48 at 8-10, arguing that the issue of "whether Plaintiffs may bring suit [under RFRA] in the district court where those Plaintiffs suffered the harm against the individual defendants with supervisory government roles—appears to be one of first impression in this District and the Fifth

---

[1] All docket citations in this brief refer to Electronic Court Filing System (ECF) pagination.

1

Circuit" and adducing a variety of policy reasons to support their supposed right to disregard settled constitutional law on personal jurisdiction. Dkt. 48 at 8. Plaintiffs' arguments are misguided.

### A. Courts in this Circuit have found that personal jurisdiction did not exist over RFRA claims.

As an initial matter, the "issue" Plaintiffs purport to identify is not wholly unknown in this Circuit. In *Wall v. Black*, the U.S. District Court for the Southern District of Mississippi dismissed a prisoner's claim under "the First Amendment, the Religious Freedom Restoration Act, and the Religious Land Use and Institutionalized Persons Act [RLUIPA]" against the Bureau of Prisons' Director for want of personal jurisdiction. No. 5:08-cv-274 (DCB) (MTP), 2009 WL 3215344, at **2, 7-8 (S.D. Miss. Sept. 30, 2009). In reaching this decision, the court applied an ordinary "minimum contacts" analysis and correctly concluded that "mere allegations relating to a BOP official's supervisory activities . . . are insufficient to establish personal jurisdiction." *Id.* at *8. Moreover, in *Tinsley v. Comm'r of the Internal Revenue Serv.*, the U.S. District Court for the Northern District of Texas dismissed several "*Bivens* type [i.e., individual capacity] claims," including a RFRA claim, for want of personal jurisdiction. No. 396-CV-1769-P, 1998 WL 59481, at **1, 3 (N.D. Tex. Feb. 9, 1998). Finally, in *Shields of Strength v. U.S. Dep't of Def.*, the U.S. District Court for the Eastern District of Texas considered a personal jurisdiction defense to a RFRA claim. -- F. Supp. 3d --, No. 6:21-cv-00484, 2023 WL 3293279, at *8-9 (E.D. Tex. May 5, 2023). Although the Eastern District's decision sidestepped the merits of the parties' personal jurisdiction dispute, the *Shields of Strength* opinion made clear that RFRA claims are subject to the same jurisdictional rules as other claims. *Id.* (acknowledging that courts considering RFRA claims "must address any challenge to personal jurisdiction over a defendant before addressing . . . the merits of a claim.").

2

### B. Plaintiffs' arguments regarding personal jurisdiction contradict well-established case law.

But even without this case law, Plaintiffs' arguments in favor of a "RFRA exception" to the due process requirement that courts possess personal jurisdiction are unconvincing. *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has no meaningful contacts, ties, or relations.") (quotations and citations omitted). Plaintiffs' argument that RFRA's plain language confers personal jurisdiction on this Court ignores the Supreme Court's opinion in *BNSF Ry. Co. v. Tyrrell*, which held that "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." 581 U.S. 402, 409 (2017).[2] Because RFRA contains no language authorizing nationwide service of process, *see* 42 U.S.C. §§ 2000bb *et seq.*, none of the courts to consider the issue have held that it provides a basis for nationwide personal jurisdiction. *See, e.g.*, *Nichols v. Fed. Bureau of Prisons*, No. 09-cv-00558-CMA-CBS, 2010 WL 3239291, at *4 (D. Colo. Jun. 22, 2010) (conducting ordinary minimum contacts analysis and dismissing for lack of personal jurisdiction "[b]ecause neither *Bivens* nor RFRA confers nationwide service of process."), *adopted in relevant part by* 2010 WL 3219998, at *3 (D. Colo. Aug. 12, 2010) (performing the same analysis and noting "that the Magistrate Judge correctly concludes that all claims against [certain supervisor-defendants] must be dismissed for lack of personal jurisdiction."); *Muhammad v. United States*, No. 07-cv-01808-WYD-BNB, 2010 WL 551413, at *8 (D. Colo. Feb. 11, 2010) (finding "no federal statute which potentially confers [personal] jurisdiction by authorizing service of process" in case filed "pursuant to *Bivens*, RLUIPA, RFRA, and the FTCA."); *Ford v. Fed. Bureau of*

---

[2] "Congress uses this terminology because . . . a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction." *Id.*

3

*Prisons*, No. 08-cv-00882-LTB-BNB, 2009 WL 3011112, at *2 (D. Colo. Sept. 16, 2009) (reaching the same conclusion in a case filed under "*Bivens*, RFRA, and RLUIPA"); *see also Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10, 13 (D.D.C. 1996) (holding, in RFRA case, that "The District of Columbia long-arm statute is the *only* basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District.") (citations omitted, emphasis added).

These courts' holdings are wholly consistent with RFRA's purpose, as expressed in its statutory text. As Congress explained, RFRA's purpose is "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b). Courts interpreting the statute have routinely considered that purpose when deciding how to adjudicate RFRA claims. *See, e.g.*, *Shields of Strength*, 2023 WL 3293279, at *18 (permitting defendants to raise qualified immunity as a defense to a RFRA claim because that defense was available as a defense to First Amendment *Bivens* claims "leading up to RFRA's enactment" and in the era of *Sherbert* and *Yoder*). Accordingly, the fact that personal jurisdiction defenses would have been available to federal officials sued individually for Free Exercise violations "leading up to the RFRA's enactment" and at the time of *Sherbert* and *Yoder* provides further evidence that RFRA did not abrogate ordinary jurisdictional rules.

Plaintiffs' various arguments do not alter this conclusion. To begin with, *Bostock v. Clayton Cnty.*'s dicta describing RFRA as a "super statute" that "might supersede" other federal laws "in appropriate cases" is irrelevant to the jurisdictional question before the Court. 140 S. Ct. 1731, 1754 (2020). As discussed above, personal jurisdiction requirements are not creatures of federal statutory or common law: instead, they emanate from the Fifth and Fourteenth

4

Amendments' Due Process guarantees. *See Burger King Corp.*, 471 U.S. at 471. And while Congress can vest particular federal courts with nationwide personal jurisdiction over certain statutory claims, Congress did not do so in the RFRA. *Supra* at 3-4*; see also BSNF Ry. Co.*, 581 U.S. at 409. Likewise, the fact that RFRA permits aggrieved parties to seek relief in a "judicial proceeding" has no bearing on the Court's analysis of personal jurisdiction. As Plaintiffs acknowledge, Dkt. 48 at 10, the Fifth Circuit has given that phrase a "broad definition" which obviously encompasses lawsuits filed in districts where RFRA defendants are subject to personal jurisdiction, and nothing in the phrase "judicial proceeding" suggests Congressional intent to strip defendants of elementary constitutional protections. *See generally Doster v. Kendall*, 54 F.4th 398, 414 (6th Cir. 2022) ("[C]ourts must follow Article III's [jurisdictional] rules whether or not RFRA cited them.").

Finally, Plaintiffs' citation to *Stafford v. Briggs* supports the Individual Defendants' arguments on personal jurisdiction. *See* Dkt. 48 at 10 (citing 444 U.S. 527 (1980)). As Plaintiffs recognize, *Stafford* rejected a broad interpretation of the Mandamus Venue Act of 1962, which would have permitted individual-capacity lawsuits to "be brought against [] federal officers while in Government service—and . . . even after the official has left federal service—in any one of the 95 federal districts covering the 50 states and other areas within federal jurisdiction." 444 U.S. at 544. "This[,]" the Supreme Court reasoned, "would place federal officers, solely by reason of their Government service, in a very different posture in personal damages suits from that of all other persons[.]" *Id.* In reaching this conclusion, the Supreme Court emphasized that "[t]here is . . . no indication that a Congress concerned with the sound and equitable administration of justice . . . intended to impose on those serving their Government the burden of defending personal damages actions in a variety of different districts" and noted that it would not impose such a burden on

5

Government employees "absent a clear indication that Congress intended such a sweeping effect." *Id.* at 545 (citations omitted). Where, as here, Congress has neither expressly discussed personal jurisdiction in RFRA's statutory text nor employed its "typical mode" of conferring jurisdiction by authorizing nationwide service, there is no indication that Congress "intended to impose . . . the burden of defending personal damages actions in a variety of different districts" on federal employees. *Id.*; *see also BNSF Ry. Co.*, 581 U.S. at 409.[3] *Stafford* therefore supports the Individual Defendants' argument that an ordinary "minimum contacts" analysis should apply in this case.

## II. Plaintiffs' Contradictory Arguments on Subject-Matter Jurisdiction are Insufficient to Bear their Burden of Proof

Plaintiffs' arguments on subject-matter jurisdiction fare no better. In response to the Individual Defendants' motion, Plaintiffs assert that sovereign immunity does not bar their claims because, in contrast to *Henley v. Simpson*, their claims would not create "a need to *change* [FBI] policy, only [to] *follow* it by adhering to 'applicable law.'" Dkt. 48 at 11; *see also* 527 F. App'x 303, 307 (5th Cir. 2013) (holding that purported individual-capacity claims that challenged and would have compelled revision of a state policy were properly treated as official-capacity claims against the state). However, in the very next paragraph, Plaintiffs dispute the Individual Defendants' separate standing-traceability argument (Dkt. 44 at 17-18) by arguing that "[t]his case is not a question of a few rogue agents performing 'atypical searches' as in *Ghedi v. Mayorkas*, [.

---

[3] Plaintiffs' argument that "the limited scope of RFRA" authorizes nationwide personal jurisdiction lacks merit. Dkt. 48 at 10. Even if Plaintiffs had cited authority for that proposition, there is nothing "limited" about a RFRA class-action that seeks vast sums of money based on the allegedly unlawful implementation of a nationwide public health policy. *See* Dkt. 44 at 37-40 (discussing some of the impacts recognizing Plaintiffs' RFRA damages claims would have). And Plaintiffs further contend that RFRA is a "super statute" that applies across all arenas of Government activity. *See generally* 42 U.S.C. § 2000bb-3; *Bostock*, 140 S. Ct. at 1754. Such statements are inconsistent with their novel characterization of the statute as "limited" in scope.

6

. .]. The harm is burdening religious belief, which occurred as a matter of policy, which the Defendants set." Dkt. 48 at 12 (citing 16 F.4th 456, 463 (5th Cir. 2021)).

Plaintiffs cannot have it both ways, particularly since their Amended Complaint fails to attribute any specific actions to the Individual Defendants. Either Plaintiffs' alleged harms were caused by a policy that "defendants set," or else those harms were caused by deviations from official governmentwide policy as alleged. *See* Dkt. 6 (Am. Compl.) ¶¶ 10, 71, 245. In the former case, *Henley* and *Pennhurst State Sch. & Hosp.* bar their claims as an impermissible attempt to challenge DOJ/FBI policy by way of an individual-capacity damages action. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984); *Henley*, 527 F. App'x at 303. In the latter case, *Ghedi* does so, because courts may not "reasonably infer" that federal agency leaders deliberately cause their subordinates to deviate from the policies they establish. 16 F.4th at 465-66. In either case, Plaintiffs have not borne their burden to establish subject-matter jurisdiction. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008) ("The party seeking to assert federal jurisdiction [here, Plaintiffs] has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.").

Moreover, Plaintiffs cannot establish the traceability requirement for standing, as they fail to allege *any* action taken by either Individual Defendant, let alone actions to support Plaintiffs' claims. In the 65-page complaint, Director Wray's name appears once—to state that he is the Director of the FBI. Dkt. 6 at ¶ 65. Similarly, Attorney General Garland's name appears twice, to list him as a defendant and to state his title. *Id*. ¶¶ 1, 66. Because Plaintiffs fail to allege any facts regarding the Individual Defendants' actions, they have not plausibly pled an injury that can fairly be traced to the challenged action of the defendants. Standing cannot be satisfied, and the claims against the Individual Defendants must be dismissed.

### III. Plaintiffs Cannot Bear Their Burden on Qualified Immunity

Finally, Plaintiffs fail to carry their burden to rebut the Individual Defendants' entitlement to qualified immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) ("the burden is on the plaintiff to prove that the government official is not entitled to qualified immunity."). As an initial matter, Plaintiffs do not dispute that qualified immunity is a valid defense to a RFRA claim, nor that they are required to plausibly allege an individual's personal participation in a clearly established RFRA violation to overcome that defense. *See* Dkt. 44 at 29-31 (making these arguments); *see also Tanzin v. Tanvir,* 592 U.S. 43, 52 n.* (2020) (permitting defendant to raise qualified immunity defense in a RFRA case where "Both the Government and respondents agree that government officials are entitled to assert a qualified immunity defense."); *Shields of Strength*, 2023 WL 3293279, at *18 (doing the same where plaintiffs failed to substantively brief their argument that qualified immunity was unavailable, and emphasizing that "All five circuit courts to decide the issue have held that qualified immunity from damages may be asserted in a RFRA action against federal officials.").

Moreover, Plaintiffs fail to oppose—and thereby concede—the Individual Defendants' argument that 16 of the 39 individual Plaintiffs either failed to plead—or in one case, implausibly pled—the basic elements of a RFRA claim. *See* Dkt. 44 at 35-37. Consequently, the Individual Defendants' claim of entitlement to qualified immunity on those claims stands uncontested. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("A necessary concomitant" to determining if a constitutional or statutory right is clearly established is whether plaintiffs stated a claim "at all.").

To the limited extent that Plaintiffs respond to the Individual Defendants' assertion of qualified immunity, their arguments are unpersuasive. First, Plaintiffs contend—without reference to authority—that the Individual Defendants "personally violated RFRA" because they "create[ed]

8

a culture of religious burden, ridicule and harassment." Dkt. 48 at 12. Yet, as set forth in the Individual Defendants' motion, the Amended Complaint is devoid of any allegations to support this contention or establish the Individual Defendants took any improper actions with respect to Plaintiffs. *See* Dkt, 44 at 30-33. Accordingly, the Amended Complaint fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and is subject to dismissal under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]

Finally, Plaintiffs' conclusory argument that the Individual Defendants are not entitled to qualified immunity because "the right to free exercise of religion is as old as the Bill of Rights and has been enforced in RFRA's formulation since 1963," Dkt. 48 at 12, is wholly insufficient to meet the "demanding standard" Plaintiffs are required to satisfy to show clearly established law. *See Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). "The Supreme Court 'repeatedly' has told [courts] 'not to define clearly established law at a high-level of generality,'" and courts must therefore determine whether the law governing a defendant's conduct is clearly established "in the light of the specific context of the case, not as a broad general proposition." *Id.* (quoting *Ashcroft v. al-Kidd*, 763 U.S. 731, 742 (2011) and *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Here, Plaintiffs' broad appeals to the "free exercise clause" are precisely the sort of "broad general propositions" that do not suffice to clearly establish the law governing a federal official's actions, particularly when those actions were taken in the unprecedented context of a worldwide pandemic. *See also* Dkt. 6 (Am. Compl.) at ¶¶ 3-4 (Plaintiffs' admission that the COVID-19 "pandemic clearly presented novel issues of medicine, medical freedom, bodily autonomy, *religious freedom, and*

---

[4] Even a generous reading of the Amended Complaint as alluding to an adverse workplace "culture" purportedly created by the Individual Defendants' implementation of a government-wide policy, *see* Dkt. 44 at 32-33 (discussing Plaintiffs' allegations of harassment by third parties), cannot support individual-capacity liability here, since *Iqbal* and a wide-range of cases preclude reliance on *respondeat superior* and other vicarious liability theories in individual-capacity damages actions (including RFRA actions) against supervisory federal officials. *Iqbal*, 556 U.S. at 677; *see also* Dkt. 44 at 31-32 (collecting cases).

9

*law and policy*, [and] there was never a time of fulsome consensus by the government, medical personnel, or the citizenry on how to respond to it.") (emphasis added).

Separately, Plaintiffs fail to address any of the legal authority the Individual Defendants cited to show judicial disagreement on the legality of various COVID-19 safety measures, such as vaccine mandates, social-distancing rules, and masking requirements. *See* Dkt. 44 at 34-38; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017) ("it would be unfair to subject officers to damages liability when even judges disagree.") (internal quotations and citations omitted). Taken together, the case law cited in the Individual Defendants' opening brief confirms what Plaintiffs themselves have essentially admitted: that there was never a time of "fulsome consensus" on the novel legal issues created by the COVID-19 pandemic. Dkt. 6 (Am. Compl.) at ¶¶ 3-4. Accordingly, the Individual Defendants are entitled to qualified immunity from Plaintiffs' RFRA claim related to the implementation of policies designed to blunt the pandemic's impact and safeguard the health of the federal workforce during an unprecedented crisis. *See Mullenix*, 577 U.S. at 11 (to be clearly established, a right or law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right [or law.]").[5]

## Conclusion

For all the foregoing reasons, and for the reasons stated in the Individual Defendants' opening brief (Dkt. 44), the Court should grant the Individual Defendants' motion and dismiss all claims against the Individual Defendants with prejudice.

---

[5] Legal developments since the filing of the Individual Defendants' Motion further confirm their entitlement to qualified immunity and arguments for dismissal. First, the Supreme Court vacated the Fifth Circuit's opinion in *Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023), and dissolved the preliminary injunction precluding enforcement of EO 14043. *See Biden v. Feds for Med. Freedom*, -- S. Ct. --, 2023 WL 8531839 (U.S. Dec. 11, 2023). Second, in *Thornton v. Blinken,* No. 1:23-cv-266 (PTG/IDD) (E.D. Va. Nov. 16, 2023) (order attached), Judge Giles dismissed identical RFRA and Title VII claims filed by members of Feds for Medical Freedom employed by the State Department. DOJ has ordered a transcript of the hearing that preceded Judge Giles' decision, which counsel can produce upon receipt.

Dated this 22nd day of December, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, Jr.
Director
Civil Division, Torts Branch

JAMES G. BARTOLOTTO
Senior Trial Counsel
Civil Division, Torts Branch

*/s/ Jacob A. Bennett*
JACOB A. BENNETT
"Attorney-in-Charge"
NY Bar # 5753744
SDTX Bar # 3839455
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Constitutional & Specialized Tort Litigation
175 N. St. NE, Room 7.1815
Washington, DC 20002
Phone: (202) 451-7745
Facsimile: (202) 616-4314
Email: Jacob.A.Bennett@usdoj.gov
*Attorneys for Individual Defendants Merrick B. Garland and Christopher Wray*

## CERTIFICATES OF SERVICE & CONFERENCE

I certify that on December 22, 2023, the foregoing was filed and served on Plaintiffs and counsel of record through the Court's electronic filing system (ECF).

I further certify that this filing, a motion under Fed. R. Civ. P. 12(b), is exempt from the Local Rules' Conference Requirements. *See* S.D. Tex. L.R. 7.1D.

*/s/ Jacob A. Bennett*
Jacob A. Bennett, Trial Attorney