United States District Court
Southern District of Texas
**ENTERED**
April 29, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **FEDS FOR MEDICAL FREEDOM**, *et al*, | § § § | |
| **Plaintiffs**, | § § | |
| **VS.** | § § § | **CIVIL ACTION NO. 4:23-cv-1817** |
| **MERRICK B. GARLAND** *et al*, | § § § | |
| **Defendants**. | | |

## MEMORANDUM & ORDER

Before the Court are two Motions to Dismiss: one filed by Defendants Merrick B. Garland and Christopher Wray in their individual capacities (collectively, "Individual Capacity Defendants"), and one filed by Defendants U.S. Department of Justice ("DOJ") and Federal Bureau of Investigations ("FBI"), together with Defendants Garland and Wray in their official capacities (collectively, "Official Capacity Defendants"). ECF Nos. 44, 45. The Court held a hearing on the Motions on April 22, 2024. For the reasons that follow, the Court now **GRANTS** Defendants' Motions.

1

## I.  BACKGROUND[1]

This case is one of many across the country challenging COVID-19 vaccine mandates. Plaintiffs are 39 current and former FBI employees, as well as the organization Feds for Medical Freedom. Plaintiffs' suit stems from the federal government's September 2021 vaccine requirement, which they argue interfered with their religious freedoms.

On September 9, 2021, President Biden issued Exec. Order No. 14,043 ("EO 14043"), which sought to "halt the spread of coronavirus disease 2019 . . . by relying on the best available data and science-based public health measures." 86 Fed. Reg. 50989 (Sept. 9, 2021). The Executive Order noted the wide availability of vaccines, along with the Center for Disease Control and Prevention's finding that vaccination represented the "best way" for federal employees to "protect themselves and avoid spreading COVID-19 to their co-workers and members of the public." *Id.* As such, EO 14043 required COVID-19 vaccination for all federal employees and directed each agency to implement programs requiring as much, "with exceptions only as required by law." *Id.*

The DOJ and the FBI subsequently implemented EO 14043 in the days following its issuance. On September 13, 2021, Assistant Attorney General for Administration ("AAG") Lee J. Lofthus sent an email to all DOJ and FBI employees ordering them to comply with the vaccine mandate by no later than November 22, 2021. Pls.' First Am. Compl. ("FAC") ¶ 74, ECF No. 6.

---

[1] At this stage, the Court accepts the well-pleaded facts alleged in Plaintiffs' complaint as true, and views them in the light most favorable to Plaintiffs. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). In addition to the factual allegations in Plaintiffs' complaint, the Court may consider documents incorporated into the complaint by reference, matters of public record, and judicially noticeable material such as government websites, agency memos, and reports. *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (stating that "it is clearly proper" to "take judicial notice of matters of public record" when deciding a motion to dismiss); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 (5th Cir. 1981) (collecting cases in which courts took judicial notice of agency records and reports); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of government website).

On September 17, 2021, AAG Lofthus sent a follow-up email, informing DOJ and FBI employees that failure to meet the November 22, 2021 deadline would subject employees to "'possible disciplinary action, up to and including removal from federal service,' unless employees secured an exemption through the reasonable accommodations process." *Id.* at ¶ 75.

The FBI also created a process through which its employees could request exemptions from the mandate. *Id.* at ¶ 77. Pursuant to this process, employees seeking an exemption were directed to submit forms by October 12, 2021. *Id.* at ¶ 77. About 2,500 employees requested exemptions via online form. *See id.* at ¶ 80.

On November 17, 2021—five days prior to the compliance deadline—the FBI's Office of Equal Employment Opportunity Affairs ("OEEOA") circulated a memorandum to all FBI employees, informing them that all of the requests for accommodations had been assigned individual coordinators who would "provide individual assessments" and then "contact requesters' supervisors" to assess whether accommodation would "pose an undue hardship." *Id.* at ¶ 80. The memo also noted that "[f]or those who have completed the required COVID-19 vaccination attestations and requested a reasonable accommodation, no disciplinary action will be taken until an HR decision is rendered." *Id.* at ¶ 81. Lastly, the memo stated that all "employees seeking a reasonable accommodation, whether partially vaccinated or unvaccinated," that is, those seeking medical and religious accommodations, were required to adhere to certain safety protocols—specifically, masking, social distancing, and frequent testing.[2] *Id.* at ¶ 88. Under this policy, employees who failed to provide proof of a negative COVID-19 test would be "charged Absent

---

[2] At first, the FBI required testing every 72 hours; on December 13, 2021, the requirement was updated to testing every 7 days. *Id.* at ¶ 90.

Without Leave (AWOL)," a disciplinary unpaid leave, or subjected to "further punitive action up to and including termination." *Id.* at ¶¶ 92–93.

On January 22, 2022, the FBI HR Department informed employees that the vaccine mandate was suspended, following a federal court's issuance of a temporary injunction, but that "[e]xisting protocols such as masks, physical distancing, testing, and quarantines remain[ed] in place." *Id.* at ¶ 36. The judicial decisions following the January 2022 injunction were equivocal,[3] but their impact on Plaintiffs was not—those who requested accommodations never had to comply with the vaccine mandate. *See id.* at ¶¶ 84, 89, 131.

Plaintiffs bring nine claims in connection with the above-described factual allegations.[4] Counts I through VI arise under Title VII of the Civil Rights Act; Count VII arises under the Religious Freedom Restoration Act of 1993 ("RFRA"); and Counts VIII through IX arise under the First and Fifth Amendments, via *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Since the filing of their First Amended Complaint, Plaintiffs have stipulated to dismissal of Feds for Medical Freedom as a Plaintiff, and to dismissal of all claims except for (1) the RFRA claim against the Individual Capacity Defendants and (2) the disparate impact, harassment/hostile work environment, retaliatory harassment, and constructive discharge Title VII claims against Defendant Garland in his official capacity. Accordingly, the Court

---

[3] On January 21, 2022, a federal judge in this district issued a nationwide injunction that prohibited the enforcement of EO 14043. *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 837 (S.D. Tex. 2022). A three-judge panel of the Fifth Circuit subsequently vacated that injunction, *see Feds for Med. Freedom v. Biden*, 30 F.4th 503 (5th Cir. 2022), but, before the federal government could reinstate the vaccine mandate, the Fifth Circuit granted rehearing *en banc*, vacated the panel opinion, and affirmed the injunction, *see Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023). President Biden formally rescinded EO 14043 in May 2023. FAC ¶ 131; *see also* Exec. Order No. 14,099, 88 Fed. Reg. 30891 (May 9, 2023).
[4] In addition to the factual allegations described herein, each of the 39 named plaintiffs asserts individualized factual allegations. FAC ¶¶ 24–62. The Court will discuss the individual named Plaintiffs' allegations insofar as they are relevant to the Court's analysis.

**DISMISSES WITH PREJUDICE** all claims besides those just listed and all claims brought by Plaintiff Feds for Medical Freedom.

Of the remaining claims, the Individual Capacity Defendants move to dismiss Plaintiffs' RFRA claim against them, and Defendant Garland in his official capacity moves to dismiss Plaintiffs' failure to accommodate claim (in part), hostile work environment claim, retaliation claim, and constructive discharge claim (in part).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1) Standard

Under Rule 12(b)(1), a court must dismiss an action if it lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Under Rule 12(b)(1), "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. U.S.*, 281 F.3d 158, 161 (2001). The party asserting federal jurisdiction bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

### B.  Rule 12(b)(2) Standard

Rule 12(b)(2) dictates that a court must dismiss an action if it lacks personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). "There is personal jurisdiction if the state's long-arm

statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court must make a *prima facie* showing that jurisdiction exists. *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When evaluating this jurisdictional showing, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery, and must resolve all undisputed facts in favor of jurisdiction. *Id.*

### C.  Rule 12(b)(6) Standard

Lastly, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III.    ANALYSIS

### A.  Individual Capacity Defendants

As noted above, following Plaintiffs' stipulations, the only remaining claim against the Individual Capacity Defendants is Plaintiffs' RFRA claim. The Individual Capacity Defendants

levy four challenges to this claim: (1) the Court lacks subject matter jurisdiction over the claim; (2) the Court lacks personal jurisdiction over the individual defendants; (3) the individual defendants are entitled to qualified immunity; and (4) Plaintiffs' allegations do not support availability of damages under RFRA.

### 1. Subject Matter Jurisdiction

The Court begins by assessing whether it possesses subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999) (explaining that courts generally address subject matter jurisdiction even before personal jurisdiction unless the subject matter question raises a "difficult and novel" question of law). Defendants argue that the Court lacks subject matter jurisdiction because (1) sovereign immunity bars Plaintiffs' RFRA claim, and (2) Plaintiffs lack standing. Ultimately, the Court agrees with Defendants with respect to the former argument, and disagrees as to the latter.

### a. Sovereign Immunity

The Eleventh Amendment presents a jurisdictional bar to suit where the state—rather than the individual defendants—is the real party in interest. *Henley v. Simpson*, 527 F. App'x 303, 305 (5th Cir. 2013). As a general matter, the Eleventh Amendment "does not preclude monetary relief for past harms when the state official is sued in his individual capacity and will be personally liable for the judgment." *Id.* (citing *Hafer v. Melo*, 502 U.S. 21, 112 (1991) and *Kentucky v. Graham*, 473 U.S. 159, 105 (1985)). However, individual-capacity actions cannot be maintained in federal court if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the

Government from acting, or to compel it to act.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 n.11 (1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

In *Henley*, the Fifth Circuit held that it lacked subject matter jurisdiction where plaintiffs alleged that individual capacity defendants implemented an unconstitutional policy but did not allege any individual wrongdoing on the part of defendants. 527 F. App'x at 307. The Fifth Circuit explained that this constituted an impermissible "'end run' around the Eleventh Amendment" as the plaintiff's desired money judgment would "'expend itself on the public treasury' and 'compel the [State]' to revise [its policy]." *Id.* (quoting *Pennhurst*, 465 U.S. at 101 n. 11).

In this case, Plaintiffs attempt a similar "end run" around the Eleventh Amendment. *Id.* Plaintiffs do not allege any wrongdoing on behalf of Garland and Wray in their individual capacities—in fact, the only allegations specific to these two Defendants are that Wray "is the Director of the FBI" and that Garland "is the Attorney General of the United States and oversees the Department of Justice." FAC ¶¶ 65–66. As in *Henley*, Plaintiffs assert only that the policy the Individual Capacity Defendants implemented was unlawful. *See* Pls.' Resp. Br. at 7, ECF No. 48 (noting that "[t]he harm . . . occurred as a matter of policy, which Defendants set"); *cf.* Transcript of Hearing at 14:4–12, *Feds for Medical Freedom v. Blinken*, No. 1:23-cv-266 (E.D. Va. Nov. 16, 2023), ECF No. 54-1 (dismissing State Department employees' analogous challenges to vaccine mandate based on *Henley*). Therefore, Plaintiffs' claims against the Individual Capacity Defendants are entitled to dismissal on sovereign-immunity grounds. That conclusion alone is enough to dismiss Plaintiffs' RFRA claim. But for the avoidance of doubt, the Court will address the Individual Capacity Defendants' separate jurisdictional challenges.

### b.  Standing

Article III of the U.S. Constitution provides that federal courts may hear only "Cases" and "Controversies." U.S. CONST. art. III, § 2. The doctrine of standing distills Article III's case-or-controversy requirement into three distinct elements: "(1) an "injury in fact," (2) that is "fairly . . . trace[able] to the challenged action of the defendant," and (3) that is "likely . . . redress[able] by a favorable decision." *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The second element is at issue in this case. Defendants submit that Plaintiffs' injuries—if any—are not "fairly traceable" to the Individual Capacity Defendants, because "Plaintiffs include no specific allegations that either of the Individual Defendants—both of whom are high-level officials—personally harassed or avoided them, instead attributing these actions to unnamed coworkers and supervisors." ECF No. 44 at 17. Defendants point the Court to *Ghedi v. Mayorkas*, a Fifth Circuit case with similar facts to this case. There, the plaintiff alleged that he was harmed by TSA and CBP agents, yet he did not sue those agents directly—instead, he brought claims against the heads of DHS, TSA, and CBP, though he did not allege that any of those agency heads personally harmed him. *Ghedi*, 16 F.4th at 465–66. The Fifth Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction, noting that "[plaintiff] has failed to plausibly plead that his injury in fact is fairly traceable to the Defendants he has sued." *Id.* at 466. It explained that it could not "reasonably infer that the heads of DHS, TSA, or CBP will immediately cause or ever have caused the kind of [injury] [plaintiff] alleges" and that the independent actions of agents who were not before the court could not support traceability for standing. *Id.*

9

Plaintiffs attempt to distinguish *Ghedi* from this case by pointing out that the *Ghedi* court characterized the individual agents' actions as "atypical" which "cut against an inference that these agents [were] following official policy." *Id.* By contrast, in implementing EO 14043's vaccine mandate, the Individual Capacity Defendants in this case were following official policy. The Court agrees that the fact that Plaintiffs do not allege that Garland and Wray took any "atypical" unlawful actions presents a legally significant difference between this case *Ghedi.* Moreover, at the April 22 hearing, Defendants conceded that, should the Court agree that sovereign immunity bars Plaintiffs' RFRA claims (because Defendants are only alleged to have implemented federal policy), Plaintiffs would have standing. Therefore, the Court concludes that Plaintiffs have cleared Article III's case-or-controversy bar in this case.

### 2. Personal Jurisdiction

Even if the Court had subject matter jurisdiction, dismissal is nevertheless appropriate, because the Court lacks personal jurisdiction over the Individual Capacity Defendants. A federal court may exercise personal jurisdiction over nonresident defendants where (1) the state's long-arm statute permits it and (2) the exercise of jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024). The Texas long-arm statute extends to the limits of federal due process; accordingly, "the two-step inquiry reduces to only the federal due process analysis." *Id.* (quoting *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019)).

There are two types of personal jurisdiction: general and specific. General jurisdiction extends to "any and all claims" brought against a defendant. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A. v.*

*Brown*, 564 U.S. 915, 919 (2011)). A court may assert general jurisdiction only where a party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. To assess whether individuals are "essentially at home" for purposes of general personal jurisdiction, courts look to the individuals' domicile. *Id.* at 924.

By contrast, specific personal jurisdiction is narrower, and attaches only where there is a "sufficient connection between a defendant's forum-related contacts and a plaintiff's causes of action." *Shambaugh*, 91 F.4th at 372 (citing *Ford Motor Co.*, 592 U.S. at 358–60). To determine whether specific jurisdiction exists, courts in the Fifth Circuit apply a three-step test, which asks:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014)). "If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable." *Id.*

In this case, the Court finds that it may not exercise general or specific personal jurisdiction over the Individual Capacity Defendants. First, there is no colorable argument that Attorney General Garland and Director Wray are domiciled in Texas. Both Defendants work in the District of Columbia, and both were served at residences outside of Texas. *See* FAC 1–2 (listing Washington, D.C. addresses for Defendants Garland and Wray); ECF Nos. 31, 36 (service

documents listing non-Texas addresses for Defendants Garland and Wray). Thus, there is no general personal jurisdiction.

Next, Plaintiffs do not allege that the Individual Capacity Defendants have "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone" to Texas. *Walden v. Fiore*, 571 U.S. 277, 289 (2014); *see generally* FAC. Instead, Plaintiffs' claim of specific personal jurisdiction appears to rest on allegations that Garland and Wray, as the individuals in charge of the DOJ and FBI, presided over the implementation of the nationwide vaccine mandate, which affected FBI employees in Texas. *See* FAC ¶¶ 6–8. These allegations, standing alone, cannot support specific personal jurisdiction. Several courts in this circuit and others have held that, absent allegations of minimum contacts with the forum state, the "fact that federal government officials enforce federal laws and policies on a nationwide basis is not sufficient in and of itself to maintain personal jurisdiction." *Vu v. Meese*, 755 F. Supp. 1375, 1378 (E.D. La. 1991); *see also Targeted Just., Inc. v. Garland*, No. CV H-23-1013, 2023 WL 4471553, at *8 (S.D. Tex. July 11, 2023) (Rosenthal, J.) (finding no personal jurisdiction where individual defendants Garland and Wray's only contact with Texas was authority to implement nationwide policy); *Smith v. Carvajal*, 558 F. Supp. 3d 340, 349 (N.D. Tex. 2021) (no personal jurisdiction where defendant had no contacts with Texas beyond nationwide supervisory authority); *Nwanze v. Philip Morris, Inc.*, 100 F. Supp. 2d 215, 220 (S.D.N.Y. 2000) ("Mere supervision over [a federal agency], the reach of which extends into every state, is insufficient to establish a basis for the exercise of personal jurisdiction."); *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."). Here, too, Garland and

Wray's roles in implementing a nationwide policy, without more, cannot establish the requisite contacts with Texas to subject them to specific personal jurisdiction in this case.

Plaintiffs attempt to distinguish these cases by arguing that RFRA "provid[es] sweeping personal jurisdiction" for claims such as those in this case. ECF No. 48 at 6. However, Plaintiffs do not cite—and this court cannot identify—any case in which courts have declined to apply the typical personal jurisdiction analysis when faced with RFRA claims. *Cf. Wall v. Black*, No. CIV.A508CV274DCBMTP, 2009 WL 3215344, at *1, *7–*8 (S.D. Miss. Sept. 30, 2009) (dismissing suit, including RFRA claim, after conducting ordinary specific personal jurisdiction analysis); *Tinsley v. Comm'r of I.R.S.*, No. 396-CV-1769-P, 1998 WL 59481, at *1, *3 (N.D. Tex. Feb. 9, 1998) (same); *Ali v. D.C.*, 278 F.3d 1, 7 (D.C. Cir. 2002) (affirming district court's dismissal of RFRA claims against individual capacity defendants for lack of personal jurisdiction, based on ordinary specific personal jurisdiction analysis); *Ibrahim v. D.C.*, 357 F. Supp. 2d 187, 193 (D.D.C. 2004) (dismissing RFRA claims for lack of personal jurisdiction based on ordinary analysis).

Moreover, the Court has no basis to independently conclude that RFRA provides for nationwide personal jurisdiction. Plaintiffs do not locate which statutory provision in RFRA could authorize nationwide personal jurisdiction; in the April 22 hearing, Plaintiffs suggested that the relevant provision is 42 U.S.C. § 2000bb-1(c), which states: "A person whose religious exercise has been burdened in violation of this section *may assert that violation as a claim or defense in a judicial proceeding* and obtain appropriate relief against a government." *Id.* (emphasis added). However, the Supreme Court recently explained that "Congress generally uses the expression, where suit 'may be brought,' to indicate the federal districts in which venue is proper," whereas

"Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 408 (2017). RFRA does not employ this "typical mode" of permitting the exercise of personal jurisdiction—authorization of service of process does not appear anywhere in RFRA's text. Accordingly, no court to consider the issue has concluded that RFRA authorizes nationwide personal jurisdiction. *See Nichols v. Fed. Bureau of Prisons*, No. 09-CV-00558-CMA-CBS, 2010 WL 3239291, at *4–*5, *7 (D. Colo. June 22, 2010) (dismissing RFRA claim for lack of personal jurisdiction, after determining that RFRA did not authorize nationwide service of process and conducting minimum contacts test), *report and recommendation adopted in part, overruled in part*, No. 09-CV-00558-CMA-CBS, 2010 WL 3219998 (D. Colo. Aug. 12, 2010) (adopting portion of report and recommendation dismissing RFRA claim for lack of personal jurisdiction); *Muhammad v. United States*, No. 07-CV-01808-WYD-BNB, 2010 WL 551413, at *8–*9 (D. Colo. Feb. 11, 2010) (dismissing RFRA claim for want of personal jurisdiction after concluding that RFRA did not "confer[] [personal] jurisdiction by authorizing service of process*"); Ford v. Fed. Bureau of Prisons*, No. CIV 08-CV-00882-LTB-, 2009 WL 3011112, at *2, *4 (D. Colo. Sept. 16, 2009) (same); *Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10, 13 (D.D.C. 1996) (dismissing RFRA claim for want of personal jurisdiction, noting that the relevant long-arm statute was "the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principal place of business in the District of Columbia"). This Court will not be the first.

Because the Court finds that it lacks subject matter jurisdiction and personal jurisdiction over the Individual Capacity Defendants, it need not address the other bases for dismissal that Defendants put forth in their Motion. The Individual Capacity Defendants' Motion to Dismiss

(ECF No. 44) is **GRANTED** and Plaintiffs' RFRA claims are **DISMISSED WITHOUT PREJUDICE**.

### B. Official Capacity Defendants

As stated above, following Plaintiffs' stipulations, the only remaining claims against the Official Capacity Defendants are the Title VII claims against Defendant Garland in his official capacity. Defendants seek dismissal of nearly all of these claims.

### 1. Failure to accommodate (Count I)

Defendants' Motion seeks dismissal of Plaintiffs' failure to accommodate claim with respect to Plaintiffs who requested an exemption to the vaccine mandate only (not those who also requested an exemption to the testing protocols).[5]

To establish a prima facie religious accommodation claim, a plaintiff must show that "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)). "If the plaintiff can satisfy the prima facie showing, the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

---

[5] That group includes all Plaintiffs except: Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin. *See* FAC ¶¶ 26, 32, 39, 43, 46, 54. Four Plaintiffs do not allege that they requested any religious exemption at all. *See id.* at ¶¶ 44, 56, 59, 61. At this stage, the Court shall assume without deciding that, like the Plaintiffs who requested an exemption to the vaccine mandate, these four Plaintiffs state a *prima facie* claim, and that Defendants accommodated this claim by permitting them to mask, test, and distance rather than receive the vaccine.

Even if this Court assumes without deciding that Plaintiffs have stated a prima facie claim, Defendants reasonably accommodated Plaintiffs' religious beliefs by permitting them to mask, social distance, and test rather than get vaccinated.[6] *See* FAC ¶ 88. "Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee." *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001); *see also Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020), *as revised* (Jan. 13, 2020) ("Once an employer has established that it offered a reasonable accommodation, even if that alternative is not the employee's preference, it has satisfied its obligation under Title VII as a matter of law."). Plaintiffs emphasize the burdensome nature of undergoing frequent testing. *See, e.g.*, FAC ¶¶ 94 (alleging that "[t]he testing itself was onerous, invasive, physically uncomfortable or painful," and that "[e]mployees were required to test outside of work" or "take time outside of their day to conduct the test itself and upload the results on the portal," which, at times, "required [Plaintiffs] to take personal leave until final results were available"). However, Title VII does not "require employers to accommodate an employee's religious practices in a way that spares the employee any cost whatsoever." *Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Ctys.*, 735 F.2d 388, 390–91 (10th Cir. 1984) (citing *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 145–46 (5th Cir. 1982)). Other courts have found similar accommodations to those offered in this case to be

---

[6] Plaintiffs assert that no accommodation was offered, as they were informed via email that coordinators who were assigned to accommodations requests would work with requesters' supervisors "to see if an accommodation would 'pose an undue hardship'" and Plaintiffs never heard back. ECF No. 51 (quoting FAC ¶ 80). However, Plaintiffs acknowledge that the FBI informed them that, in the meantime, "employees seeking reasonable accommodation . . . were required to adhere to new 'safety protocols' (masking, distancing and testing)." *Id.* (quoting FAC ¶ 88). In the Title VII context, the Supreme Court has explained that "accommodation" "means nothing more than allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary." *E.E.O.C. v. Abercrombie & Fitch Stores*, Inc., 575 U.S. 768, 772 n.2 (2015). In this case, due to Plaintiffs' religious objections, the FBI allowed them to remain unvaccinated if they masked, distanced, and tested, despite the FBI's otherwise-applicable vaccine mandate. The Court finds that these measures—masking, distancing, and testing—are best construed as accommodations, and rejects Plaintiffs' argument that no accommodation was offered.

reasonable. *See, e.g.*, *Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *5 (E.D. La. July 21, 2023) (regular COVID-19 testing in lieu of vaccination constituted reasonable accommodation); *Bowlin v. Bd. of Directors of Judah Christian Sch.*, No. 22-CV-1390, 2023 WL 6323302, at *3 (C.D. Ill. Sept. 28, 2023) (same); *Jackson v. Methodist Health Servs. Corp.*, No. 22-CV-1307, 2023 WL 2486599, at *4 (C.D. Ill. Feb. 10, 2023) (same). Moreover, EEOC Guidance lists masking, distancing, and testing as examples of reasonable accommodations for employers who do not get vaccinated due to a sincerely held religious beliefs. What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, EEOC at K.2, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#:~:text=The%20EEO%20laws%2C%20including%20Title,about%20steps%20employers% (May 15, 2023).

As such, the Court finds and holds that the Official Capacity Defendants offered Plaintiffs reasonable accommodations. For this reason, Plaintiffs' failure to accommodate claim fails with respect to the 33 individual Plaintiffs who solely requested exemptions from the vaccine mandate, and not from subsequent safety measures.

**2. Harassment/hostile work environment (Count IV)**

Next, Defendants seek dismissal of Plaintiffs' hostile work environment claim. To establish a hostile work environment claim under Title VII, a plaintiff must prove that he or she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [their] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have

known of the harassment in question and failed to take prompt remedial action." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021). The third prong is at issue in this case. Defendants argue that Plaintiffs have alleged that harassment was due to their vaccination status, not their religion.

Even assuming, *arguendo*, that Plaintiffs have plausibly pled that they were subjected to harassment, the Court agrees that Plaintiffs have not plausibly alleged that this harassment was based on their religion. By Plaintiffs' own admission, the FBI subjected all those who were "seeking a reasonable accommodation, whether partially vaccinated or unvaccinated" to the complained-of harassment. FAC ¶ 88; *see also id.* at ¶ 97 ("Defendants separated employees with religious *and medical objections* to the vaccine from those who did not have those objections.") (emphasis added); *id.* at ¶ 98 ("Plaintiff Scott McGlothin worked in a location where only 3% of employees were required to test (those who requested religious *or medical accommodations*)) (emphasis added). In response, Plaintiffs assert that these allegations are of no moment, as "it may be the case that Defendants also harassed those seeking medical accommodations." ECF No. 51 at 13. Defendants point out that this possibility "further underscores the absence of any allegations suggesting that religion, rather than vaccination status, was the motivation for Plaintiffs' alleged mistreatment." ECF No. 52 at 3–4. The Court agrees with Defendant. Nowhere in Plaintiffs' complaint are there allegations that could lead the Court to conclude that Plaintiffs were harassed because of their religion, rather than their vaccination status.[7]

---

[7] In the April 22 hearing, Plaintiffs pointed out that those who were vaccinated and symptomatic were not subject to the same masking and testing requirements as those who were unvaccinated. This argument further underscores the point that, to the extent that Plaintiffs experienced any alleged harassment, it was based on their vaccination status, and not on their religion.

### 3.  Retaliation (Count V)

Defendants also seek dismissal of Plaintiffs' retaliation claim. A prima facie case of retaliation under Title VII has three elements: (1) the employee engaged in [an] activity protected by Title VII; (2) the employer took [an] adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008) (quoting *Brazoria County, Tex. v. Equal Employment Opportunity Comm'n*, 391 F.3d 685, 692 (5th Cir. 2004)). The third element requires proof of but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Like with Plaintiffs' hostile work environment claim, Defendants point out that "Plaintiffs allege that the purported adverse employment actions were imposed on all employees who remained unvaccinated, including those who sought religious accommodations as well as those requesting medical accommodations to the vaccine requirement." ECF No. 45 at 17; *see* FAC ¶ 97 ("Defendants separated employees with religious *and medical objections* to the vaccine from those who did not have those objections.") (emphasis added); *id.* at ¶ 98 ("Plaintiff Scott McGlothin worked in a location where only 3% of employees were required to test (those who requested religious *or medical accommodations*)") (emphasis added); *id.* at ¶ 88 ("[E]mployees who did not share Plaintiffs' religious beliefs (*and who were not seeking a medical accommodation*) were not required to follow" the protocols.) (emphasis added). Therefore, Defendants argue, because any adverse employment action was the result of Plaintiffs' unvaccinated status—and not their religious beliefs—Plaintiffs have not plausibly pled the requisite but-for causation as to religion, and their retaliation claim necessarily fails. ECF No. 45 at 17.

In order to plausibly state a Title VII retaliation claim, Plaintiffs in this case must be able to show that, if they had not requested a religious exception, but still refused to get the COVID-19 vaccine or follow testing procedures, there would not have been any adverse employment action taken against them. *See Nassar*, 570 U.S. at 360. Given their allegations that those who requested medical accommodations faced identical treatment to those who requested religious accommodation, Plaintiffs cannot make such a showing. District courts across the country have held that, where it is clear from a plaintiff's complaint that they were terminated because they refused to comply with COVID-19 policies—rather than because they requested a religious accommodation—a Title VII retaliation claim cannot lie. *See Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *7 (E.D. La. Apr. 11, 2023); *Lucky v. COBX, Co.*, No. 22-12514, 2023 WL 3359607, at *2–*3 (E.D. Mich. May 10, 2023); *Hunter v. AFGroup Emerging Markets*, No. 22-CV-990, 2023 WL 372204, at *3 (E.D. Wis. Jan. 24, 2023); *Collias v. MotorCity Casino*, No. 222CV12650TGBEAS, 2023 WL 6406220, at *7 (E.D. Mich. Sept. 30, 2023). Here, too, Plaintiffs have not pled a plausible Title VII retaliation claim.

### 4. Constructive discharge (Count VI)

Lastly, Defendants argue—and Plaintiffs concede—that, "[t]o the extent that Plaintiffs who did not resign from the FBI seek a constructive discharge claim, these claims should be dismissed." ECF No. 45 at 23.[8] The Court agrees. A constructive discharge claim cannot lie where the plaintiff did not resign. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013) ("Because at the time of his complaint Raj remained a tenured professor at LSU, he has not stated a plausible claim for relief for constructive discharge."); *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x

---

[8] Malcom Bezet, Jennifer Geren, and Kyle Seraphin are the only Plaintiffs who allege that they resigned from the FBI following the vaccine mandate. *See* FAC ¶¶ 27, 38, 54.

874, 879 (5th Cir. 2010) ("Roberts's constructive discharge claim is without merit because she was terminated; she did not resign."); *Pacheco v. Universal Forest Prod. W. Div., Inc.*, No. 3:08-CV-1922-N, 2010 WL 11618656, at *4 (N.D. Tex. Aug. 31, 2010) ("[A] constructive discharge plaintiff must have actually quit her job."); *Green v. Sutherlin*, No. CIV. A. 99-2843, 2000 WL 222853, at *2 (E.D. La. Feb. 17, 2000) ("Green did not resign; therefore, he fails to fulfill the requirements of a constructive discharge claim."). Thus, to the extent that the 36 Plaintiffs who either kept their jobs or were terminated advance constructive discharge claims, those claims are dismissed.

## IV.    CONCLUSION

For the forgoing reasons, Defendants' Motions (ECF Nos. 44, 45) are **GRANTED**.

All claims brought by Feds for Medical Freedom are **DISMISSED WITH PREJUDICE**.

All claims against the Individual Capacity Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

All claims against the DOJ, the FBI, and Defendant Wray in his official capacity are **DISMISSED WITH PREJUDICE**.

Counts II, IV, V, VII, and VIII are **DISMISSED WITH PREJUDICE** as to Defendant Garland in his official capacity.

As to the remaining claims brought against Defendant Garland in his official capacity: Count I is **DISMISSED WITH PREJUDICE** as to all Plaintiffs except Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin. Count VI is **DISMISSED WITH PREJUDICE** as to all Plaintiffs except Malcom Bezet, Jennifer Geren, and Kyle Seraphin.

In sum, the following claims may proceed against Defendant Garland in his official capacity: (i) Title VII failure to accommodate, with respect to the above-named Plaintiffs, all of whom allegedly requested a religious exemption to the masking, distancing, and testing requirements; (ii) Title VII disparate impact; (iii) Title VII constructive discharge, with respect to the above-named Plaintiffs, all of whom allegedly resigned from their FBI positions.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 29th day of April, 2024.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE