IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDS FOR MEDICAL FREEDOM *et al.*, | ) | |
| | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | Civil Action No. 4:23-cv-01817 |
| v. | ) | |
| | ) | |
| MERRICK B. GARLAND *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION**

COME NOW, Plaintiffs and Putative Class Agents José Villela and Kyle Seraphin, by counsel, on behalf of themselves and a putative class of similarly situated employees (together, "Putative Class" or "Class"), pursuant to Federal Rule of Civil Procedure 23(c)(1)(A), and submit the following reply in support of their Motion for Class Certification.

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs filed a complaint in this Court on May 17, 2023, which they amended as a class complaint on July 11, 2023. Docket No. 6. The Amended Complaint included counts against Defendants Merrick B. Garland and Christopher Wray in both their individual capacities and their official capacities. It also included claims against the Department of Justice (DOJ) and the Federal Bureau of Investigation ("FBI" or "Bureau") and claims alleging violations under the Religious Freedom Restoration Act (RFRA) and Title VII of the Civil Rights Act. *Id*.

Both the individual and official-capacity defendants filed motions to dismiss, and this Court heard arguments on April 22, 2024. Docket No. 44-45. In a decision dated April 29, 2024, Judge Keith P. Ellison dismissed all of institutional Plaintiff Feds for Medical Freedom's claims with prejudice. Docket No. 59. The Court also dismissed all claims against individual-capacity defendants without prejudice and against Defendant Wray, the FBI, and DOJ with prejudice. *Id*.

Finally, the Court dismissed the claims against defendant Garland in his official capacity with prejudice except Count I (failure to accommodate regarding testing, masking, and distancing protocols) as to Plaintiffs Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin, and Count IV (constructive discharge) as to Malcolm Bezet, Jennifer Geren, and Kyle Seraphin. *Id*. A claim of disparate treatment on the basis of religion by all plaintiffs (Count II) also survives.

Later, the Parties filed, and the Court granted, a stipulation of voluntary dismissal for Plaintiffs James Drohan, Ann Parrillo, Brian Toy, (without prejudice) and Adalbert Bielski (with prejudice).[1] Docket Nos. 73 – 74.

On October 1, 2025, Plaintiffs filed a Motion for Class Certification. Docket No. 107. Defendants filed a Response in Opposition on December 18, 2025. Docket 117. Plaintiffs now submit this Reply. The full facts of this case are contained in Plaintiffs' Amended Class Action Complaint, filed July 11, 2023, and are incorporated herein.

In brief, despite contemporary statements from the CDC claiming that that the vaccine "can't […] prevent transmission," the FBI implemented a COVID-19 vaccine mandate in September of 2021. (Am. Compl. ¶¶ 70-71, 74). Employees who did not vaccinate were subject disciplinary action, including removal from federal service. *Id* at ¶ 75. The Bureau set up a novel religious exemption process and received nearly 2,000 requests. *Id* at 77-78, 80.

The FBI required all employees seeking an accommodation to mask, socially distance,

and test initially every 72 hours, which a month later became once every seven days. *Id* at ¶88, 90. Those who did not have proof of a negative COVID-19 test would be barred from the office and would be considered absent without leave (AWOL). *Id* at ¶92. The testing was inconsistent with CDC guidelines, which recommended testing only when symptoms were present or there had been exposure to an infected person. *Id* at ¶94. Vaccinated employees could, of course, still get sick and transmit the disease. *Id* at ¶¶ 70- 71, 74, 97-98. Task Force officers, who worked in the same facilities as the Plaintiffs, did not have to receive a vaccination. *Id* at 26.

The Bureau denied all religious accommodation requests for the testing requirement and placed those who did not take the test on AWOL status. *Id* at ¶96. Plaintiffs experienced harassing behavior, intimidation, ridicule, and insult. *Id* at 99-106. They also experienced exclusion from necessary travel, denial of opportunity, use of accrued leave, residence on "naughty lists," reassignments, AWOL, disclosure of private medical information, constructive discharge, and a bloody nose from testing in one instance. *Id* at 107-116.

Procedurally, at the beginning of this litigation while Motions to Dismiss were pending, Plaintiffs stipulated to the dismissal of an institutional plaintiff (Feds for Medical Freedom) and to several other claims. Plaintiffs kept, however, the following claims: a Religious Freedom Restoration Act (RFRA) claim against the Individual Capacity defendants and official capacity claims for disparate impact, harassment / hostile work environment, retaliatory harassment, and constructive discharge under Title VII of the Civil Rights Act of 1964.

As Plaintiffs have noted above, the following claims survive: (i) a Disparate Treatment claim under Title VII of the Civil Rights Act for all plaintiffs (Count III), (ii) failure to accommodate claims under Title VII of the Civil Rights Act for religious accommodation requests for testing, masking, and distancing protocols for plaintiffs Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin, and (iii)

constructive discharge claims under Title VII of the Civil Rights Act for plaintiffs Malcom Bezet, Jennifer Geren, and Kyle Seraphin.

Plaintiffs seek certification of a class and subclasses as follows:

- A class consisting of all plaintiffs to this action and all Bureau individuals who requested a religious accommodation to the vaccine mandate and who the Bureau subsequently required to test, mask, and / or social distance.

- A subclass consisting of plaintiffs Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, Kyle Seraphin, and all Bureau employees who requested a religious accommodation for testing and that the FBI refused.

- A subclass consisting of plaintiffs who experienced constructive discharge after requesting a religious accommodation for vaccination and / or testing / masking.

Defendants attempt to manufacture the impression that class certification is not possible because the litigation lacks the requisite cohesion necessary under the Rule 23 framework. Defendants, for example, lead with the idea that the Bureau decided at an early phase that "no disciplinary action will be taken" as a result of any non-adherence to the vaccine mandate. Def. Opp. at 4. This obscures the fact that the Bureau required all Plaintiffs to test and mask, some of them despite their religious objections. Many of these experienced employment harms as a result, and a potential subclass of individuals experienced constructive discharge. Despite the Bureau's posturing that there would be no disciplinary measures, the Bureau nonetheless disciplined through meaningless and unscientific testing protocols and employment harms up to and including constructive discharge.

Defendants go on to claim that "Plaintiffs identify with various religions," (*Id*.) when in fact all Plaintiffs are Christian. As Putative Class Agent Jose Villela stated in his deposition,

Q. Do you know if anyone in this class action is not a Christian?

> A. No. And I know that for a fact because our initial meetings -- in-person meetings when we first started, I told them, "We can't be hypocrites." So we would start our meetings with a prayer and we would end our meetings with a prayer. Scott will tell you the very first time I spoke to him, we prayed over the phone together. So I -- me as the -- you know, shepherding this -- this effort, I was not going to allow some -- a non-Christian on the lawsuit because that would be hypocritical. Villela Dep. 59:13-24.

The one variation on this theme is Rachelle Glenn who maintains that she is agnostic, but that she was raised in the Christian tradition.

Defendants then state that "[a]ll groups of unvaccinated FBI employees were treated the same […] religious, medical, or otherwise." Def. Opp. at 5. This, too, is a mischaracterization, as the only unvaccinated employees were those who could obtain a religious or medical accommodation—there was no "otherwise." In any case, the Bureau here attempts to use its mistreatment of those who requested medical exemptions to absolve its mistreatment of those who requested religious exemptions. There is likely a multiplicity of offenses that the Bureau committed in its treatment of its employees who requested a medical accommodation, but they are not the subject of this litigation. The fact, however, that the Bureau perhaps treated those requesting a medical accommodation equally as bad as they treated those who requested a religious accommodation does not mean that they did not incur liability with their treatment of the religious accommodation group.

Defendants also claim that the "protocols themselves differed by office," (*Id* at 6) when in fact what they are describing is a single, Bureau-wide policy that put masking requirements on a sliding scale based on community levels of COVID. So while an FBI office in

New Orleans might be required to wear masks when one in Tampa might not, this was according to the same standard applied to different facts on the ground.

II. **ARGUMENT**

The class-action device was intended to establish a procedure for the adjudication of common questions of law or fact. *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880, 104 S. Ct. 2794, 2802 (1984). "The legal requirement that class members have all "suffered the same injury" can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014).

In this case, "every issue prior to damages [i]s a common issue." *See*, *Id*. All of the Plaintiffs suffered the injuries they suffered as a result of Bureau-wide policies: 1) a Bureau-wid vaccine policy that resulted in a disparate impact on the Plaintiffs, 2) "no" to all requests for accommodation for testing, masking, and distancing requirements, and 3) punishment for those who did not test, mask, and / or distance, regardless of whether they requested an accommodation or not.

A. **FRCP 23(a)**

1. **Numerosity**

<ins>Disparate Impact</ins>

Defendants do not challenge the numerosity requisite for the Disparate Impact claim.

<ins>Failure to Accommodate: Testing</ins>

The Fifth Circuit has "repeatedly noted that the number of members in a proposed class is not determinative of whether joinder is impracticable," and "a number of facts other than the actual or estimated number of purported class members may be relevant to the numerosity

question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2019) (citations omitted).

Thirty-one FBI employees requested accommodations to the masking, testing, and / or social distancing protocols. While this number slightly less than often seen in class litigation, the numerosity of Plaintiffs for the other theories of liability are more than sufficient, and to break this group off does not make sense in the broader context of this litigation.

Joinder is impracticable because the members are disbursed throughout the country (17 locations)[1] and would have to institute individual claims throughout the country. They would furthermore have to do so where many or most of the members of this group would litigate as a class in pursuit of the other theories of liability—disparate impact and constructive discharge.

## Constructive Discharge

Plaintiffs argued in their Motion for Class Certification that, of the 39 members of the original group of plaintiffs, three experienced constructive discharge, which is 7.7%, and amounts to an estimate of 192 individuals FBI-wide. Defendants, furthermore, have admitted that 253 FBI employees "resigned, retired, transferred to other agencies, or took mandatory retirement, disability retirement or early retirement after requesting a religious accommodation to the COVID-19 vaccine mandate." These 253 members of the workforce were not just any members who left the agency after the institution of the COVID-19 protocols, these were individuals who left the Bureau *after requesting a religious accommodation to the COVID-19 vaccine mandate*. If only ¼ of these left *because* of the COVID-19 vaccine mandate protocols, we would still be working 63 individuals, a number that is well above the typical threshold for numerosity.

---

[1] Albuquerque, Birmingham, Charlotte, Chicago, Washington, D.C., El Paso, Houston, Jacksonville, Kansas City, Las Vegas, Miami, New Orleans, Philadelphia, Phoenix, San Diego, Tampa, and West Virginia.

Plaintiffs have met their burden regarding the numerosity of the constructive discharge group.

### 2. Commonality / Typicality

<u>Disparate Impact</u>

The Commonality / Typicality requirement for the disparate impact group turns on a single analysis: whether the Bureau's COVID-19 protocols affected a protected class. Here, it was a single Bureau-wide policy that affected every one of the more than thirty named plaintiffs in this case, representing a group as broad as 1,937 employees Bureau-wide. That the employees do not share work responsibilities or job locations would be material only if it affected the treatment that they received, and it did not. All of these individuals experienced the same policy Bureau-wide with the same effects—they were made to mask and test while others in their office did not, despite the fact that the vaccinated in their workplaces did not have to test, and Task Force members from state law enforcement agencies and / or other federal agencies did not have to vaccinate at all. *See*, Villela Dep. 75:1-25.

<u>Failure to Accommodate: Testing</u>

The resolution of whether the Bureau failed to accommodate one religious believer regarding testing, masking, and social distancing would indicate whether the policy was unlawful across the FBI. From all of the evidence available, the Bureau did not grant accommodations for any employees requesting a religious accommodation for testing, masking and / or social distancing, and according to all of the evidence available and submitted as part of this litigation, the Bureau took a single, Bureau-wide approach to this group of individuals.

<u>Constructive Discharge</u>

As indicated in their Motion for Class Certification, although the circumstances of constructive discharge in the normal course of workplace disputes could take many shapes, from the three plaintiffs who experienced it in this particular context it is clear that they

followed a pattern: either the employees were placed on AWOL status for not testing and resigned before their termination (Geren, Seraphin), or they could not bear the uncertainty of waiting for a religious accommodation while under threat of termination and resigned (Bezet). The same sets of issues apply both to the individuals named in this litigation and to a broader group of FBI employees who are members of a potential subclass.

### 3. Adequacy of Representation

Class representatives "need not be legal scholars, and are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with complex litigation." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 483 (5th Cir. 2001). "[F]ew persons other than attorneys involved in class litigation could accurately articulate the full extent of the fiduciary responsibilities and other efforts required of a class plaintiff." *Longden v. Sunderman*, 123 F.R.D. 547, 558 (N.D. Tex. 1988).

Here, Mr. Villela and Mr. Seraphin have performed the duties required of them as class representatives adequately. Defendants misrepresented the litigation to Mr. Villella in his deposition, implying that the group had "voluntarily" dismissed claims that they had not. Def. Opp. at 18. Taking the RFRA claims as an example, as indicated above, Plaintiffs did voluntarily dismiss certain RFRA claims (e.g., against Wray in his official capacity), but litigated others that this Court dismissed (e.g. against Wray in his individual capacity), matters that are plainly a part of the record of this litigation. Therefore, when he, "testified that he did not think that the claim was 'voluntarily dismissed' and he understands the dismissal 'was not his [attorney's] fault,'" (*Id.*) he was 100% correct as to the group's claims against Director Wray in his individual capacity. Defendants' mischaracterization of the facts in an attempt to confuse Mr. Villela, who is not a "legal scholar," did not succeed in inducing him to misstate the reality of the litigation.

Such is his understanding as class representative.

As for his other efforts, he testified that he started a chat group and initiated teleconferences to put together the group that brought this litigation, and that he speaks regularly to his attorney regarding the litigation. Villela Dep. 116: 17-24.

Mr. Seraphin for his part stepped in as a class representative for the two subclasses of individuals after a dismissal made it so that Mr. Villela could not represent them. Mr. Seraphin has remained a part of the group throughout the litigation and speaks at regular intervals with his attorney. Since coming on to represent the two subclasses, there have not been any significant amount of administrative tasks that are necessary for him to perform that would not be duplicative of Mr. Villela's efforts.

   B. Rule 23(b)(3)

In all three categories of Plaintiffs—those experiencing disparate impact, a failure to accommodate regarding testing, and constructive discharge—questions of law or fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

With respect all three of these inquiries, the common question is whether the COVID-19 mandates caused the harms that they suffered. The analysis for all three groups turns on whether they were the result of a Bureau-wide policy, and all are interconnected and overlapping. To separate this litigation into more than thirty individual claims would obviate the benefits available to these litigants and the FBI workforce through Rule 23, which allows for the litigation of these common themes as a class. Even in the most fact-specific inquiry—that of constructive discharge—it boils down to a single question—"did you leave the FBI because of the COVID-19 protocols?" To the extent that the answer is "yes," the question is a common one calling for adjudication as a class.

Federal Rule 23(b) requires plaintiffs to identify additional justifications for class certification. Here, class certification is appropriate according to Rule 23(b)(3).

### III. CONCLUSION

For the forgoing reasons, Plaintiffs request this Court certify a class of FBI employees who experienced disparate impact discrimination arising out of the COVID-19 vaccine mandate, and subclasses of FBI employees who were refused religious accommodation for the testing, masking, and distancing protocols and those who experienced constructive discharge arising out of the mandate.

Dated: January 2, 2026                     Respectfully Submitted:

/s/ E. Scott Lloyd
E. Scott Lloyd
Lloyd Law Group, PLLC
106 Chester St, Suite 1
Front Royal, VA 22630
(540) 823-1110
scott@lloydlg.com
*Lead Counsel*
*Counsel for Plaintiffs*
*Admitted pro hac vice*

**Daniel W. Manning**
State Bar No. 24081018
Southern District State Bar No. 3098098
dmanning@bajb.com
*Local Counsel*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I will cause the foregoing to be served upon the Defendants on January 2, 2026:

Myra Farah Siddiqui
DOJ-USAO
1000 Louisiana Street Suite 2300
Houston, TX 77002
713-567-9600
Email: Myra.Siddiqui@usdoj.gov

Natasha Ann Alexander
DOJ-USAO
1000 Louisiana Street Ste #2300
Houston, TX 77002
713-567-9000
Email: Natasha.Alexander@usdoj.gov

Case 4:23-cv-01817    Document 120    Filed 01/02/26 in TXSD    Page 13 of 14

Case 4:23-cv-01817   Document 120   Filed 01/02/26 in TXSD   Page 14 of 14