**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Feds for Medical Freedom, et al., | § § § § | |
| Plaintiff, | § | |
| v. | § § | Civil Action No. 4:23-cv-01817 |
| Merrick B Garland, et al., | § § § | |
| Defendants. | § | |

**DEFENDANTS' SUPPLEMENTAL BRIEFING**

Plaintiffs moved to certify a class under Fed. R. Civ. P. 23(b)(3) for harms alleged in connection with the Federal Bureau of Investigation's ("FBI") COVID-19 protocols. The proposed classes including those bringing claims for (1) disparate impact, (2) failure to accommodate, and (3) constructive discharge. After a hearing on the class certification, the Court provided the parties an opportunity to submit additional briefing regarding the calculation of individual damages in this case and, in particular, the calculation of damages for the proposed disparate impact class. *See* 4/22/2026 Minute Entry.

**I.    Plaintiffs have not proposed a damage model, much less one that satisfies the law, and have failed to show that common questions will predominate over individual questions.**

To certify a class under Rule 23(b)(3), Plaintiffs must show that "(1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As a threshold matter, since filing this lawsuit in May 2023, Plaintiffs have never presented a damage model for any of the proposed classes. Without a damage model, Plaintiffs have failed

to meet their burden under the Rule 23(b)(3) predominance requirement as a matter of law. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013) ("Without presenting another methodology [or any methodology], respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class."); *see also Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) ("Even where plaintiffs seeking class certification show that common issues predominate on questions of liability, they must also present a damage model establishing that damages are capable of measurement on a classwide basis.") (internal citations omitted).

Although calculations tend not be precise, "at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case[.]" *Comcast*, 569 U.S. at 35. Plaintiffs have proposed no damage model, let alone a damage model consistent with their liability case. Because Plaintiffs have failed to satisfy their burden under Rule 23(b)(3), class certification should be denied. *See Bright v. Asset Acceptance, Inc.* 292 F.R.D. 190, 202 (D.N.J. 2013) (finding that plaintiffs could not meet predominance because of their failure to provide any model that could calculate actual damages on a class-wide basis); *see also Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 130 (N.D. Cal. 2014) (finding that predominance was not met because plaintiffs provided no proof that calculation of damages on a class wide basis was possible and that "calculating damages would require manual review of each claimant's records . . . thus necessitating mini-trials on individualized issues").

Even if Plaintiffs had proposed a damage model, the Court still would have the responsibility to "determine whether Plaintiffs' proposed damages methodologies (1) quantify the injury caused by Defendants' alleged wrongful conduct, and (2) can be deployed on a classwide basis such that common issues will predominate over individualized ones." *In re BP p.l.c. Sec.*

2

*Litig.*, No. 10-md-2185, 2014 U.S. Dist. LEXIS 69900, at *51 (S.D. Tex. May 20, 2014) (Ellison, J.). Plaintiffs have not identified a damage model, much less one that quantifies the injury caused by Defendants' alleged wrongful conduct and that can be deployed on a classwide basis such that common issues will predominate over individualized ones. Thus, Plaintiffs have not met their burden in showing that common issues will predominate or that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.[1]

## II.   Assuming Plaintiffs can propose a damage model, they will be unable to provide a model capable of class certification on emotional damages.

Even if Plaintiffs propose a damage model, they will be unable to provide a damage model that allows for classwide resolution of emotional damages.

First, Plaintiffs suffered different harms and adverse employment actions, which will not be capable of being applied to a classwide damages model. In their Motion for Class Certification, Plaintiff state, but cite to no evidentiary support, that Plaintiffs have "similarity in experience and in harm." Dkt. 108 at 16. As explained more thoroughly in Defendant's Response, Plaintiffs are not similarly situated, nor do they allege the same adverse employment action took place. For example, the putative class representative Jose Villela took only eight COVID tests, Dkt. 118-1, Ex. 3, Villela Dep., 89:12-26, and never suffered a demotion, was denied work travel, or placed on unpaid or administrative leave. *Id.*, 102:5-7, 101:24-102:1, 101:20-23, 105:6-105:10. In contrast, Plaintiff Jennifer Geren alleges she was placed on leave without pay status for three months, and Plaintiff Adam Arce alleges he was denied work travel. *Id.*, Ex. 1, Geren Dep., 49:7-9; *Id.*, Ex. 8, Arce Interrog. Resp. No. 13. These unique alleged adverse employment actions and harms will result in individualized facts that cannot fit into any standard formula for classwide

---

[1] Should Plaintiffs propose a damage model for the first time in their supplemental brief, Defendants reserve the right to make arguments in response to the proposed damage model.

relief. In another challenge to COVID protocols, the Fifth Circuit affirmed a denial of class certification based on the diversity of alleged injuries. In *Kincannon*, the Fifth Circuit affirmed the district court's finding that "masking-and-testing inflicted diverse injuries," and that "although these harms—such as eating alone or being sprayed with Lysol—purportedly stem from forced mask-wearing, each putative member would have to present evidence demonstrating the extent of his or her injury; Plaintiffs cannot rely merely on their characterization of the accommodation as 'punitive' to establish a uniform harm, given that putative members had different experiences." *Kincannon v. United Airlines, Inc.*, 168 F.4th 713, 725 (5th Cir. 2026).

Moreover, emotional distress damages are an individualized, not class-wide, remedy. Here, many Plaintiffs seek large, varying amounts of emotional distress damages without sufficient proof. *See id.*, Ex. 7, Elliot Interrog. Resp. No. 19 (requesting $8 million for "emotional damages due to the stress, anguish, harassment, embarrassment, and serious health problems"); *see also id.*, Ex. 2, Cribbs Dep., 121:3-12 (requesting $3 million in damages but conceding "it's hard to quantify the amount of stress and burden we've been under"). However, as the Fifth Circuit has made clear, in another case involving a disparate impact claim: "The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1998). The nature of these damages meant that "[s]pecific individualized proof is necessary, and testimony from the plaintiff alone is not ordinarily sufficient." *Id.* (citation omitted).

The Fifth Circuit elaborated on the individualized inquiry that would be necessary and that defeated class certification:

> The plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what kind of discrimination was each plaintiff subjected to; how did it affect each plaintiff emotionally and physically, at work and at home; what medical treatment did each plaintiff receive and at what expense; and so on and so on. Under such circumstances, an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

*Id.* at 419 (citation and quotations omitted); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (upholding denial of class certification where no damage model could be created to compensate plaintiffs for emotional and other intangible injuries, due to subjective and individual nature of the alleged injuries).

Further, Plaintiffs' arguments regarding *Bertulli* does not remedy their inability to propose an appropriate damage model. First, *Bertulli* was decided prior to the Supreme Court decision in *Comcast*, which addressed the requirements for damage models as discussed in the previous section. *See Bertulli v. Indep. Ass'n of Cont'l* Pilots, 242 F.3d 290, 298 (5th Cir. 2001); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013). Second, in *Bertulli*, unlike in this case, the adverse employment action and alleged injury was the same across the board, i.e. the plaintiff pilots' seniority rank fell when the pilots' association and airline changed the seniority rankings of their pilots and agreed to restore the seniority of eleven pilots who had lost their seniority after participating in a strike. *Bertulli*, 242 F.3d at 293-94. Both the injury and the cause of the injury were the same in *Bertulli*. Here, the FBI offices implemented and enforced the FBI COVID protocols differently; the individual Plaintiffs complied with the protocols at wildly differing degrees; and the individual Plaintiffs faced different adverse employment actions ranging from the quantifiable to the intangible and subjective.

5

Moreover, the injunctive relief sought by the Plaintiffs in *Bertulli* was appropriate for classwide resolution. *Id.* at 299. ("[F]or the vast majority of plaintiffs, their only damages stem from loss of seniority itself and not lost work assignments. For them, damages will be nominal and their primary relief will be injunctive. A large group of plaintiffs, each with small damages, seeking injunctive relief that benefits the group as a whole, is the prototypical class."). Here, Plaintiffs do not seek a uniform injunction, and instead seek compensatory damages which cannot be resolved on a classwide basis.

For the foregoing reasons, and those argued by Defendants in their briefing and at the motion hearing, Plaintiffs' motion for class certification should be denied.

Dated: May 7, 2026

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

By: */s/ Natasha Alexander*
Natasha Alexander
Assistant United States Attorney
Southern District No. 3770021
Texas Bar No.  24125476
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9422
Fax: (713) 718-3303
E-mail: Natasha.Alexander@usdoj.gov
E-mail: myra.siddiqui@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on May 7, 2026, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*/s/ Natasha Alexander*
Natasha Alexander
Assistant United States Attorney