**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Feds for Medical Freedom, et al., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-01817 |
| Merrick B Garland, et al., | § § § | |
| Defendants. | § | |

**DEFENDANTS' SUPPLEMENTAL BRIEFING**

Pursuant to the Court's order, Defendants provide this brief response to Plaintiffs' proposed damage model.

**I.      Plaintiffs' proposed damage model does not allow for class-wide resolution.**

For the first time, Plaintiffs propose a damage model in their supplemental briefing. However, there are several problems with Plaintiffs' proposal.

First, Plaintiffs suggest that "generalized compensatory damages for stress, anxiety, and similar distress may be applied to all members of the disparate impact class," and can be calculated in a uniform fashion. Dkt. 131 at 4-5. As discussed in prior briefing and at the hearing on Plaintiffs' motion for class certification, the Fifth Circuit has clearly stated that "compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1998). Plaintiffs do not distinguish their case from case law in this Circuit finding that damages involving stress, and anxiety are not capable of class-wide resolution.

Indeed, the proposed class representative Jose Villela admitted that Plaintiffs suffered different emotional reactions to the challenged policy and disagree on what dollar amount is appropriate compensation. Ex. 1, Villela Dep., 109:16-23 ("I could care less about the money. There are people in the group, though, that are claiming that they were stressed and that there was emotional . . . Emotional distress or people that couldn't sleep and they had changes in their health. That's different. If -- if -- if -- and it's legitimate. If they can get some sort of money for that, good for them."); *see also id.*, 110:17-111:5 ("Q. Do you think that other plaintiffs in your class action will have the same damages, as in zero damages, to the masking and testing policy? A. Again, I will say that I am -- in talking to a lot of the individuals, some of them were distressed in having to wear a mask. Some of them were very upset as to having to actually pick up and go somewhere to get a test for the COVID. And if those people think that they deserve some sort of monetary compensation because of their mental or psychological distress, so be it, that's fine, that's on them.").

In an attempt to remedy the fact that individual questions will predominate over class-wide questions, Plaintiffs request a Special Master to parse through documents provided by Plaintiffs to determine damages. Defendants are thus opposed to the appointment of a special master. The purpose "of masters is to 'aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause, and not to displace the court.'" *Sierra Club v. Browner*, 257 F.3d 444, 446 (5th Cir. 2001). Further, "[i]n actions to be tried by a jury a reference shall be made only when the issues are complicated." *See Gary W. v. Louisiana*, 601 F.2d 240, 242 n.2 (5th Cir. 1979) (citing Fed. R. Civ. P. 53(b)). The use of a special master to judge and resolve disparities in facts among the Plaintiffs does not cure the fact that emotional damages are inherently individualized inquiries that cannot be assigned a uniform *per diem* value. Plaintiff's model is thus unworkable.

2

Plaintiffs have also not indicated what makes this case warrant a special master. *Ricks v. Dma Co.,* No. 1:22-cv-773-LY, 2023 U.S. Dist. LEXIS 829, at *3 (W.D. Tex. Jan. 3, 2023) ("Plaintiff has neither alleged the need to perform an accounting or resolve a different computation of damages[.]"). The mere fact that a trial on this matter may take weeks and require extensive discovery does not warrant the appointment of a special master. *See Sierra Club*, 257 F.3d at 446 ("[A] congested docket, the complexity of issues, and the extensive amount of time required for a trial do not, either individually or as a whole, constitute an exceptional condition justifying a Rule 53 reference[.]").

Even now, when given the opportunity to provide a formula, Plaintiffs provide two speculative examples of how damages could be calculated. Both require use of the Special Master to parse through Plaintiffs' evidence and determine how to resolve the varied facts underlying Plaintiffs' claims. And as explained prior, the purpose of the Special Master is not to displace the Court. *See Sierra Club*, 257 F.3d at 446. The discovery already taken in this case shows that the diversity in consequences (or lack of consequences) faced by Plaintiffs further shows that a factfinder will not be able to apply a uniform *per diem* value to the unique, individual experiences of the Plaintiffs. *See* Ex. 2, Parsons Dep., 81:7-15 ("Q. How was the testing policy enforced? . . . . A. [I]t appeared -- I talked to friends in other divisions and it seemed to be very haphazardly enforced depending what division you were in, what office you were at."); *compare* Ex. 3, Geren Dep., 39:13-24 (supervisor never spoke to or counseled Geren regarding failure to mask) *with* Ex. 1, Villela Dep., 77:20-78:4 ("There was this one lady, she was in administration, she wasn't in the agent branch. . . . every single time I bumped into her, it's like 'Where's your mask?' 'At my desk.' Again, 'Where's your mask?' 'I think I left in the car.' 'Where's your mask?' And it was repetitive."). Moreover, the limited discovery taken so far has shown that some Plaintiffs simply

cannot recall how many times they masked and tested. Ex. 4, Glenn Dep., 74:3-12 (when asked how many COVID tests taken, answered: "I really couldn't say an exact number."). Without the very basic details of how many times a Plaintiff tested and masked, there is no formula that can resolve the damages question on a class-wide basis.

Dated: May 14, 2026

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

By: /s/ Natasha Alexander
Natasha Alexander
Assistant United States Attorney
Southern District No. 3770021
Texas Bar No.  24125476
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9422
Fax: (713) 718-3300
E-mail: Natasha.Alexander@usdoj.gov
E-mail: myra.siddiqui@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 14, 2026, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*/s/ Natasha Alexander*
Natasha Alexander
Assistant United States Attorney