**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FEDS FOR MEDICAL FREEDOM, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-01817 |
| | § | |
| MERRICK B GARLAND, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM & ORDER**

Before the Court is Plaintiffs' and Putative Class Agents José Villela and Kyle Seraphin's Motion for Class Certification (ECF No. 107). For the reasons that follow, the Court **DENIES** the Motion.

## I.      BACKGROUND

The Court will briefly summarize the relevant facts and procedural history. The alleged facts giving rise to this case are described in more detail in this Court's Memorandum and Order on Defendants' Motion to Dismiss. *See Feds for Med. Freedom v. Garland*, No. 4:23-CV-1817, 2024 WL 1859958, at *1-2 (S.D. Tex. Apr. 29, 2024).

On September 9, 2021, President Biden issued Exec. Order No. 14,043 ("EO 14043"), which sought to "halt the spread of coronavirus disease 2019 . . . by relying on the best available data and science-based public health measures." 86 Fed. Reg. 50989 (Sept. 9, 2021). The Order required COVID-19 vaccination for all federal employees and directed each agency to implement programs requiring as much, "with exceptions only as required by law." *Id.* The Department of Justice (DOJ) and the Federal Bureau of Investigation ("the FBI" or "the Bureau") implemented

1 / 20

EO 14043 in the days following its issuance, ordering all FBI and DOJ employees to comply with the vaccine mandate by no later than November 22, 2021. ECF No. 6 (Amended Complaint) at ¶ 74.

The FBI also created a process through which its employees could request exemptions from the mandate. *Id.* at ¶ 77. Pursuant to this process, employees seeking exemptions were directed to submit forms by October 12, 2021. *Id.* at ¶ 77. About 2,500 employees requested exemptions via online form. *See id.* at ¶ 80.

On November 17, 2021—five days prior to the compliance deadline—the FBI's Office of Equal Employment Opportunity Affairs (OEEOA) circulated a memorandum to all FBI employees, informing them that all of the requests for accommodations had been assigned individual coordinators who would "provide individual assessments" and then "contact requesters' supervisors" to assess whether accommodation would "pose an undue hardship." *Id.* at ¶ 80. The memo also noted that "[f]or those who have completed the required COVID-19 vaccination attestations and requested a reasonable accommodation, no disciplinary action will be taken until an HR decision is rendered." *Id.* at ¶ 81. Finally, the memo stated that all "employees seeking a reasonable accommodation, whether partially vaccinated or unvaccinated," that is, those seeking medical and religious accommodations, were required to adhere to certain safety protocols— specifically, masking, social distancing, and frequent testing. *Id.* at ¶ 88. Under this policy, employees who failed to provide proof of a negative COVID-19 test would be "charged Absent Without Leave (AWOL)," a disciplinary unpaid leave, or subjected to "further punitive action up to and including termination." *Id.* at ¶¶ 92–93.

On January 22, 2022, the FBI HR Department informed employees that the vaccine mandate was suspended, following a federal court's issuance of a temporary injunction, but that

"[e]xisting protocols such as masks, physical distancing, testing, and quarantines remain[ed] in place." *Id.* at ¶ 36. The result of ensuing litigation was that those federal employees who requested accommodations never had to comply with the vaccine mandate. *See id.* at ¶¶ 84, 89, 131.

The remaining Plaintiffs in this case consist of current and former FBI employees who requested religious exemptions to the vaccine requirement and were required to regularly test for COVID, wear masks, and socially distance as a result.[1] Some plaintiffs complied with these requirements but suffered discomfort. Others failed to comply to varying degrees and faced various levels of discipline for this failure, including placement on AWOL. Others, including plaintiffs Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin, requested and were denied religious exemptions to the testing and masking requirements. Still others, including plaintiffs Malcom Bezet, Jennifer Geren, and Kyle Seraphin, eventually left their jobs for reasons related to the COVID restrictions.

Plaintiffs filed suit in this Court on May 17, 2023 against the DOJ, the FBI, former Attorney General Merrick B. Garland in his official and individual capacity, and former FBI Director Christopher Wray in his official and individual capacity. Plaintiffs brought claims under Title VII for failure to accommodate, disparate treatment, disparate impact, harassment/hostile work environment, retaliation, and constructive discharge, as well as claims for violations of the Religious Freedom Restoration Act (RFRA), 42 U.S.C.S. § 2000bb, the First Amendment, and the Due Process Clause of the Fifth Amendment. *See* ECF No. 6 (Amended Complaint). Plaintiffs subsequently stipulated to the dismissal of all claims except the RFRA claim against the Individual Capacity Defendants and the disparate impact, harassment/hostile work environment, retaliatory

---

[1] Plaintiffs previously stipulated to the dismissal of the organizational plaintiff, Feds for Medical Freedom.

harassment, and constructive discharge Title VII claims against Defendant Garland in his official capacity. On Defendants' Motions, the Court later dismissed with prejudice all claims except (1) the disparate impact claim on behalf of all remaining plaintiffs, (2) the failure to accommodate claim on behalf of those plaintiffs who requested and were denied religious exemptions to the masking and testing requirement, and (3) the constructive discharge claims on behalf of plaintiffs who eventually left their jobs at the FBI, all against Defendant Garland in his official capacity.[2]

On October 1, 2025, Plaintiffs filed the instant Motion for Class Certification (ECF No. 107).   Plaintiffs seek to certify one overarching class and two subclasses, each of which corresponds to one of the three remaining claims for relief. The proposed classes are as follows:

1.  A class to pursue Plaintiffs' disparate impact claim, consisting of all current and former Bureau employees who requested a religious accommodation to the vaccine requirement and were subsequently required to test, mask, and/or socially distance, which includes all remaining Plaintiffs to this action ("the Disparate Impact Class");

2.  A sub-class to pursue the failure to accommodate claim, consisting of all current and former Bureau employees who requested and were denied a religious exemption or accommodation for the testing, masking, and/or social distancing requirements, which includes Plaintiffs Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin ("the Failure to Accommodate Subclass"); and

3.  A sub-class to pursue the constructive discharge claim, consisting of former Bureau employees who experienced constructive discharge after requesting a religious accommodation for vaccination, testing, masking, and/or social distancing, which includes Plaintiffs Malcom Bezet, Jennifer Geren, and Kyle Seraphin ("the Constructive Discharge Subclass").

After several unsuccessful attempts at mediation and other delays, the Court held a hearing on the Motion on April 22, 2026, after which the Court allowed both parties an opportunity to

---

[2] Pursuant to Fed. R. Civ. P. 25(d), a successor is automatically substituted as a party. Therefore, Acting Attorney General Todd Blanche is now substituted for former Attorney General Merrick Garland for all remaining claims against former Attorney General Garland in his official capacity.

submit supplemental briefing focused on the calculation of damages for the proposed disparate impact class. The Court has received this briefing, and Plaintiffs' Motion for Class Certification is now ripe for decision.

## II.    LEGAL STANDARD

Plaintiffs may proceed as a class only if they demonstrate the following under Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable ("numerosity");
>
> (2) there are questions of law or fact common to the class ("commonality");
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").[3]

FED. R. CIV. PRO. 23(a). The party seeking class certification has the burden to show that these requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).

Plaintiffs must also show that their proposed classes satisfy one of the three prongs of Rule 23(b). Here, Plaintiffs seek to certify their proposed classes on the basis of Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

---

[3] In addition to the requirements in Rules 23(a) and 23(b), the Fifth Circuit separately requires plaintiffs to show that the class is "ascertainable." *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007). This requirement is not disputed here. Because each of the proposed classes are limited to Bureau employees who requested religious exemptions to the 2021 vaccination requirement, the Court concludes that the classes are ascertainable.

available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. PRO. 23(b)(3).

## III.   ANALYSIS

In brief, the Court concludes that the proposed disparate impact class and failure to accommodate subclass fail to satisfy Rule 23(b)(3)'s predominance requirement, and the proposed constructive discharge subclass fails to satisfy both Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

The Court will address the Rule 23 requirements separately for each proposed class.

### A. The Disparate Impact Class

Title VII makes it unlawful for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's. . .  religion." 42 U.S.C. § 2000e–2(a). A disparate impact claim requires proof of "(1) a specific, facially-neutral employment practice, (2) that there is a statistically significant disparity among members of different groups affected by the practice, and (3) that there is a causal nexus between the facially-neutral employment practice and the statistically significant disparity." *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 366 (S.D. Tex. 2006). Of course, the plaintiff must also show that the challenged practice's impact on the protected group was "adverse." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) ("Disparate-impact discrimination. . . addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately *adverse* effect on such a protected group.") (emphasis added).

6 / 20

"An employer may defend against liability by demonstrating that the practice is 'job related for the position in question and consistent with business necessity.'" *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (citing 42 U.S.C. § 2000e-2(k)(1)(A)(i)). The burden then shifts back to the plaintiff to show "that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Id.* (citing 42 U.S.C. §§ 2000e–2(k)(1)(A)(ii) and (C)).

Here, Plaintiffs contend that Defendants' facially neutral policy (the vaccine requirement) had a disparate impact on "religious believers who opposed the vaccine." ECF No. 6 (Amended Complaint) at ¶ 204. More specifically, Plaintiffs contend that the FBI's requirement that unvaccinated employees mask, test regularly for COVID, and socially distance, when the same was not required for vaccinated employees, constituted a disparate impact on the basis of religion—specifically Christianity. It is undisputed that employees who chose to vaccinate were not subject to the masking and testing requirements.

### i. Numerosity

Plaintiffs have identified 35 members of the disparate impact class. However, the FBI received 1,937 requests for religious accommodations to the vaccine policy. Assuming that even a small percentage of those employees requested accommodations based on Christian beliefs, the class would well exceed 100 members. Defendants have not disputed numerosity for the disparate impact class, and the Court concludes that this class meets Rule 23's numerosity requirement.

### ii. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting *General*

7 / 20

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). "Even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'" *Ibe*, 836 F.3d at 528 (quoting *Wal-Mart Stores*, 564 U.S. at 350). "The legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014).

Plaintiffs have met their burden to show that there are "questions of law or fact common to [the disparate impact] class." FED. R. CIV. PRO. 23(a)(2). Here, the question of whether the masking and testing requirements constituted disparate impact on the basis of religion is common to all putative class members' claims and resolution of that question "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. If this policy did have a disparate impact on Christian religious believers in violation of Title VII, all class members suffered some form of "the same injury": religious discrimination. If it did not, no class member suffered any cognizable injury.[4]

Defendants' arguments to the contrary rely on the individual differences in Plaintiffs' job responsibilities, their compliance with masking and testing requirements, and the consequences

---

[4] The Court notes that the merits of the disparate impact claim are not before the Court at this time. Indeed, the Fifth Circuit has held that "district courts do not err by failing to ascertain at the Rule 23 stage whether the class members include persons and entities who have suffered 'no injury at all.'" *In re Deepwater Horizon*, 739 F.3d at 811. Rather, "a 'contention' regarding the class members' injury is sufficient to satisfy Rule 23, so long as the party seeking certification can show that this contention is 'common' to all the class members, is 'central' to the validity of their claims, and is 'capable' of classwide resolution." *Id*. Plaintiffs' disparate impact claim meets these requirements

they experienced for noncompliance, if any. Given the wide differences in the adverse consequences purportedly suffered by different putative class members, the Court agrees that commonality is a close question. But because all of these alleged harms were attributable to the same cause—the vaccine requirement and the masking and testing accommodations for unvaccinated employees—the Court concludes that the commonality requirement is met. This case presents a much more straightforward chain of causation than *Wal-Mart Stores*, in which the plaintiffs argued that Wal-Mart's policy of discretionary promotions and raises had a disparate impact on female employees. *Id*. at 342. The alleged discrimination in that case involved "literally millions of employment decisions at once," whereas the alleged discrimination in this case is largely attributable to one: the decision to require unvaccinated employees to mask and test. *Wal-Mart Stores*, at 352. This common "instance of the defendant's [allegedly] injurious conduct" is therefore sufficient to meet Rule 23(a)'s commonality requirement. *In re Deepwater Horizon*, 739 F.3d at 811.

### iii.    Typicality

To meet the typicality requirement under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (citation omitted). In practice, "the commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 350 n.5. The representative for the disparate impact class, Jose Villela, requested a religious exemption from the vaccine requirement and was required to test, mask, and socially distance while he remained unvaccinated. All other class members share this injury. The Court thus concludes that the disparate impact class meets the typicality requirement.

### iv.    Adequacy

The adequacy inquiry looks at whether the "class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). The proposed class representative "must show themselves sufficiently informed about the litigation to manage the litigation effort." *Id*.

Defendants raise concerns about Mr. Villela's ability to adequately represent the class. These concerns are based on statements made during Mr. Villela's deposition which Defendants claim indicate that Mr. Vilella was not aware that certain claims were voluntarily dismissed by Plaintiffs, indicating a lack of knowledge of and involvement in the litigation. They also cite Mr. Villela's statements that he trusts his attorney "fully with [his] eyes closed." ECF No. 117, Ex. 3, (Villela Depo.) at 38:1-23. Plaintiffs argue that Defendants are misinterpreting Mr. Villela's statements.

The Court concludes that Mr. Villela's statements are not sufficient to render him inadequate to represent the class. Class representatives "need not be legal scholars, and are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with complex litigation." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 483 (5th Cir. 2001). The Court finds that Mr. Villela has been attentive to the lawsuit and that his reliance on counsel does not go beyond that of a normal litigant.

### v.    Predominance

Plaintiffs move for class certification under Rule 23(b)(3), which requires them to show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other methods

for a fair and efficient adjudication of the controversy." FED. R. CIV. PRO. 23(b)(3). The predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks omitted).

"Generally, individualized damages calculations will not preclude a finding of predominance." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016). However, "class treatment 'may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate.'" *Id.* (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003)). "The predominance inquiry. . . requires assessing all the issues in a case—including damages—and deciding whether the common ones will be more central than the individual ones." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016).

Defendants argue that "the predominance of individual-specific issues relating to Plaintiffs' claims means that a class action is not a superior method to resolve these claims." ECF No. 117 at 21. They cite *Allison v. Citgo Petroleum Corp.*, 151 F.3d. 402 (5th Cir. 1998), in which the Fifth Circuit affirmed the denial of class certification under Rule 23(b)(3) on a disparate impact claim involving hiring, promotion, compensation, and training practices that allegedly had a disparate impact on Black applicants. The *Allison* court found that common issues did not predominate because plaintiffs' "claims for compensatory and punitive damages must . . . focus almost entirely on facts and issues specific to individuals rather than the class as a whole: what

11 / 20

kind of discrimination was each plaintiff subjected to; how did it affect each plaintiff emotionally and physically, at work and at home; what medical treatment did each plaintiff receive and at what expense; and so on and so on." *Allison*, 151 F.3d. at 419. Plaintiffs argue that this case is distinguishable from *Allison* because the policy that all unvaccinated employees had to mask, test, and social distance applied equally to all FBI employees who requested a religious exemption to the vaccine requirement, and any differences in impact could be dealt with during damages calculations.

The Fifth Circuit recently addressed a very similar question in *Kincannon v. United Airlines, Inc.*, 168 F.4th 713 (5th Cir. 2026). As relevant here, plaintiffs in that case sought to certify a subclass under Rule 23(b)(3) consisting of United Airline employees who received a religious accommodation to the airline's COVID-19 vaccination requirement and, as a result, were required to comply with a "masking-and-testing accommodation" which the plaintiffs characterized as "purposefully punitive."[5] *Kincannon*, 168 F.4th at 720. The masking-and-testing accommodation at issue was very similar to the masking, testing, and social distancing requirements imposed on Plaintiffs in this case. The Fifth Circuit affirmed the district court's denial of class certification on the basis that Rule 23(b)(3)'s predominance requirement was not met. *Id.* at 725. The Fifth Circuit noted that "even if the district court were incorrect [that the masking-and-testing requirement was not an adverse employment action], it still did not abuse its discretion because it reasonably concluded that masking-and-testing inflicted diverse injuries

---

[5] The plaintiffs in *Kincannon* also sought class certification on behalf of employees who requested exemptions from the vaccine for medical reasons and were subject to the same masking-and-testing requirements, but the district court and the Fifth Circuit addressed these employees separately from those who requested exemptions for religious reasons. *See Kincannon*, 168 F.4th at 720 n. 2.

[such that] . . . each putative member would have to present evidence demonstrating the extent of his or her injury." *Id*. Thus "regardless of whether the accommodation was in fact punitive, the putative class members were punished in different ways." *Id*. The court therefore concluded that "the individualized nature of this crucial question [of what harm each plaintiff suffered] is sufficient to find predominance lacking," notwithstanding the existence of other common questions. *Id*.

The Court agrees with Defendants that the wide range of harms allegedly suffered by Plaintiffs on account of the masking, testing, and distancing requirements preclude class certification under Rule 23(b)(3).  Like the plaintiffs in *Kincannon*, Plaintiffs here have alleged a wide range of consequences stemming from these requirements. Some Plaintiffs complied with the masking and testing requirements despite their objections, but suffered varying levels of physical and/or emotional discomfort. *See, e.g.*, ECF No. 109, Ex. H (Cribbs Decl.) (complied but felt "signed out and stigmatized"). Others refused to comply and were placed on unpaid leave. *See, e.g.*, ECF No. 109, Ex. L (Geren Decl.) (placed on absent without leave status for refusal to adhere to the testing requirement). Still others did not comply in part or in full but suffered no formal adverse employment consequences. *See, e.g.*, Villela Depo. at 35:19-21 (noting that some offices were more lenient as to testing and masking" than others). Plaintiffs also claim a similarly wide range ensuing damages. *See, e.g.*, Villela Depo. at 106:10-14 ("Q: What damages . . . are you seeking in this lawsuit? A: I'm not asking for any money."); ECF No. 117, Ex. 7 (Elliott Interrog. Resp.) at No. 19 (requesting damages of $100,000 each for 20 COVID tests taken, requesting $750,000 for "physical damages of difficulty breathing due to wearing a mask," requesting $8 million for "emotional damages due to the stress, anguish, harassment, embarrassment, and serious health problems"); ECF No. 117, Defendants' Ex. 2 (Cribbs Depo.) at 118:20-25 (requesting

13 / 20

damages of $3 million in damages plus attorney fees). Even assuming Plaintiffs are correct that the so-called COVID-19 mandates were the cause of all of these individual harms, "the putative class members were [harmed] in different ways." *Kincannon*, 168 F.4th at 725. The highly individualized nature of the harms allegedly suffered by Plaintiffs are therefore sufficient to preclude a finding of predominance.

Plaintiffs' proposed damage-calculation model does not change this analysis. Plaintiffs suggest a system for calculating damages that involves stipulations to certain amounts of damages for each hour or day of masking and each test taken as well as generalized or *per diem* damages for stress, anxiety, humiliation, and similar distress experienced. *See* ECF No. 131. Plaintiffs who were forced to take unpaid leave or constructively discharged could also submit evidence regarding their position, hours, and pay grade to determine backpay. *Id*. To the extent that these damages are disputed, the Plaintiffs recommend the appointment of a Special Master to make recommendations as to the appropriate amount of damages in individual cases. *Id*. But stipulating to generalized damages for emotional or psychological harm—however convenient—does not alter the fact that "compensatory damages for emotional distress and other forms of intangible injury will not be presumed from mere violation of constitutional or statutory rights" but instead require "[s]pecific individualized proof." *Allison*, 151 F.3d at 416-17. Indeed, "[t]he very nature of these damages [for emotional and other intangible injuries]. . . necessarily implicates the subjective differences of each plaintiff's circumstances." *Id.* at 417. Such damages are therefore "an individual, not class-wide, remedy." *Id*.

In other words, Plaintiffs' damage-calculation model cannot address the fact that it is not only the putative class members' *damages* that are diverse, but also the underlying *harms* from which these damages allegedly arise. While an award of damages for emotional and other

intangible forms of harm might be stipulated to, the existence and extent of the harm itself must be proven by Plaintiffs for each individual putative class member. The aforementioned differences in the types and extents of harm suffered by Plaintiffs are thus material to the merits of the disparate impact claims themselves, not merely to the calculation of damages.

### B.  The Failure to Accommodate Subclass

The proposed failure to accommodate subclass suffers from the same problems with respect to Rule 23(b)(3)'s predominance requirement as discussed above regarding the disparate impact class.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of religion. 42 U.S.C. § 2000e–2(a)(1). A failure to accommodate claim requires a showing that a plaintiff "(1) held a *bona fide* religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Equal Emp. Opportunity Comm'n v. U.S. Steel Tubular Prods., Inc.*, No. 4:14-CV-02747, 2016 WL 11795815, at \*11 (S.D. Tex. Aug. 4, 2016). Once a plaintiff establishes a prima facie case, the burden shifts to the employer "[t]o demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013)). Undue hardship is a "fact-specific" inquiry that requires a showing that "a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

15 / 20

Plaintiffs' failure to accommodate claims are based on Defendants' refusal to accommodate religious objections to the masking, testing, and social distancing requirements that were themselves an accommodation to the vaccination requirement. Plaintiffs move to certify a subclass of all employees who requested religious exemptions to the masking, testing, and distancing requirements and were not accommodated. Because all requests for accommodations to this requirement were denied, this class encompasses all employees who requested accommodations. Because only thirty-one total employees requested religious exemptions to masking and testing, thirty-one is the maximum possible size of this subclass.

Even assuming, as Plaintiffs claim, that their requests for accommodations were denied based on a blanket policy, the resolution of each failure to accommodate claim still requires extensive individualized inquiry. The named plaintiffs' claims are instructive. One plaintiff objected to the masking/testing policy on the basis that her religious beliefs do not allow putting any mask, shield or covering on her face as she is made in the image of God or being assaulted by a foreign body being inserted into her nasal passages. ECF No. 109 at 49, Corpora Decl., ¶ 13. Another plaintiff explained her reasoning as follows: "I felt that testing and the masking was a way to other people, a way to bully people, a way to single people out for ridicule and I don't believe it in that. My personal beliefs, my religious beliefs, I—you don't treat people that way." Defendants' Ex. 5 (Glenn Depo.), 53:13-54:5. Additionally, plaintiffs complied or failed to comply with the requirements in different ways and to different extents. *Compare* Corpora Decl. at ¶ 3 (refused to test), *with* Glenn Decl. at ¶ 11 (tested multiple times to avoid going AWOL status). As these two plaintiffs' claims illustrate, each failure to accommodate claim will require different inquiries as to whether the plaintiffs held *bona fide* religious beliefs, whether these beliefs conflicted with the masking and testing requirements, what adverse employment actions the

16 / 20

plaintiffs experienced, and what damages, if any, are appropriate. The named plaintiffs also worked in different offices and held different roles, meaning that the ways in which the FBI could or could not have accommodated these beliefs without undue hardship are also different. Thus even assuming that Plaintiffs could meet the commonality requirement for the failure to accommodate class, these myriad individual questions will clearly predominate over any common questions of law or fact, rendering certification under Rule 23(b)(3) inappropriate.

Plaintiffs attempt to analogize this case to *U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 780 (N.D. Tex. 2022), which certified a class of members of the military who sought religious exemptions to a COVID-era vaccine requirement. The *Navy Seals* court found that "the potential class members have suffered the 'same injury,' arising from violations of their constitutional rights. Each has submitted a religious accommodation request, and each has had his request denied, delayed, or dismissed on appeal. Exactly zero requests have been granted." *U.S. Navy SEALs 1-26 v. Austin*, 594 F. Supp. 3d 767, 779 (N.D. Tex. 2022). But as Defendants point out, *Navy Seals* involved RFRA and First Amendment claims, which have different elements and require different inquiries than a failure to accommodate claim. Additionally, the *Navy Seals* class was certified under Rule 23(b)(2) (common remedy), because they sought injunctive relief. Rule 23(b)(3)'s predominance requirement was therefore not at issue in *Navy Seals*.

Because the failure to accommodate subclass does not meet the Rule 23(b)(3) predominance requirement, the Court declines to address Defendants' additional arguments regarding numerosity and commonality.

### C.  The Constructive Discharge Subclass

"Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment." *Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (quoting *Young v. Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)). To determine whether an employer's actions constitute constructive discharge, courts in the Fifth Circuit look to factors such as "(1) demotion, (2) reduction in salary, (3) reduction in job responsibilities, (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge*." Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Here, Plaintiffs seek to certify a subclass of individuals who felt forced to leave their jobs at the FBI because of the testing and masking requirements.

The multifactor constructive discharge analysis outlined above demonstrates why this claim is a poor fit for class-wide adjudication. Constructive discharge is necessarily a fact-heavy, highly individualized inquiry that depends on the employee's particular circumstances. Given this, it is difficult to think of circumstances where "resolution of [a common] question 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke'" in the context of a constructive discharge claim. *Ibe*, 836 F.3d at 528. Plaintiffs have thus failed to show that the proposed constructive discharge class meets Rule 23(a)'s commonality requirement, let alone Rule 23(b)(3)'s more exacting predominance requirement.

The named plaintiffs' constructive discharge claims illustrate the problem. Plaintiffs argue that commonality is met for this subclass because each plaintiff faced the same pattern that *either*

18 / 20

"the employees were placed on [absent without leave or 'AWOL'] status for not testing and resigned before their termination (Geren, Seraphin), *or* they could not bear the uncertainty of waiting for a religious accommodation while under threat of termination and resigned (Bezet)." ECF No. 108 at 10-11 (emphasis added). Plaintiffs cannot help but admit that the three individuals alleging constructive discharge had different reasons for leaving their jobs (being placed on AWOL status versus being unable to bear the uncertainty). For example, Plaintiffs' proposed class representative, Kyle Seraphin, exemplifies why the constructive discharge claims are not suitable for class-based adjudication. While employed by the Bureau, Seraphin faced a misconduct investigation related to an encounter with law enforcement, had his security clearance suspended, and was eventually suspended on the basis of this alleged misconduct. *See* ECF No. 109, Ex. Y (Seraphin Decl.) at ¶¶ 72-73; 78. By contrast, Malcom Bezet was never demoted, placed on unpaid leave, or suspended, but eventually retired from the FBI in December of 2022. *See* ECF No. 109, Ex. C (Bezet Decl.) at ¶ 21; ECF No. 117, Ex. 4 (Bezet Depo.). The circumstances of each constructive discharge claims are likely to be similarly individual and fact-intensive.

Resolution of Plaintiffs' constructive discharge claims therefore must "focus almost entirely on facts and issues specific to individuals rather than the class as a whole." *Allison*, 151 F.3d. at 419. Under such circumstances, the Court concludes that Plaintiffs have failed to meet both Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement. The Court therefore declines to address Defendants' arguments as to the other Rule 23 requirements.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification is **DENIED**. The parties are **ORDERED** to confer and submit an advisory to the Court regarding how best to proceed with Plaintiffs' remaining claims within **FOURTEEN DAYS**.

**IT IS SO ORDERED.**

Signed at Houston, Texas on July 7, 2026.

        Keith P. Ellison
        United States District Judge