**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FEDS FOR MEDICAL FREEDOM, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL NO. 4:23-cv-1817 |
| | § | |
| TODD BLANCHE, ACTING ATTORNEY GENERAL OF THE UNITED STATES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO SEVER AND TRANSFER**

Defendants Todd Blanche[1], Acting Attorney General of the United States, *et al.*, in accordance with Rule 6(b)(1)(A) of the Federal Rules of Civil Procedure, respectfully move to sever and transfer the Named Plaintiffs to the districts where the underlying claims originate.

## INTRODUCTION

In this lawsuit, Plaintiffs sought class action certification for three classes: a disparate impact class, failure to accommodate class, and a constructive discharge class. After three years of litigation, the Court denied Plaintiffs' Motion for Class Certification. Dkt. 135. Now, the Court has 34 distinct employment discrimination claims in one lawsuit. Each Named Plaintiff will need to meet their individual burden to prove their individual discrimination claims. Rather than have all 34 Plaintiffs proceed in one lawsuit, Defendants now move to sever and transfer the Plaintiffs to the venue where the Named Plaintiff worked when the FBI put into place the challenged COVID

[1] Per Federal Rule of Civil Procedure 25(d), Acting Attorney General Todd Blanche is automatically substituted as the successor to Attorney General Merrick Garland.

protocols. Severance and transfer will allow for better management of these individual employment discrimination lawsuits, bring the lawsuits closer to the sources of proof, and conserve judicial and government resources.

**PROCEDURAL HISTORY**

1. Plaintiffs filed their amended complaint on July 11, 2023. Dkt. 6.

2. Defendants moved to dismiss on November 10, 2023. *See* Dkt. 41, 44.

3. In response, Plaintiffs stipulated to dismissal of Feds for Medical Freedom as a Plaintiff and dismissal of all claims except for (1) the RFRA claim against the Individual Capacity Defendants and (2) the disparate impact, harassment/hostile work environment, retaliatory harassment, and constructive discharge Title VII claims against Defendant Garland in his official capacity. Dkt. 51 at 2.

4. On April 29, 2024, the Court dismissed all claims except the (1) disparate impact claim, (2) the failure to accommodate claim brought by Alexander Bayon, Kimberly Corpora, Rachelle Glenn, Bradley Johnson, Scott McGlothin, and Kyle Seraphin, and (3) the constructive discharge claim brought by Plaintiffs Malcom Bezet, Jennifer Geren, and Kyle Seraphin. Dkt. 59 at 21.

5. Four months later, Plaintiffs moved to certify one class and two subclasses on August 21, 2024. Dkt. 64, 65. The Parties engaged in class certification discovery through April 21, 2025, including six depositions and the production of hundreds of pages. Plaintiffs filed an amended motion to certify class on May 12, 2024. Dkt. 80.

6. On October 1, 2025, after a failed mediation, Plaintiffs moved for the third time to certify the three classes. Dkt. 107.

7. On April 22, 2026, the Court held a hearing on the Plaintiffs' Motion for Class Certification. Dkt. 129; Minute Entry dated Apr. 22, 2026.

8. On July 7, 2026, after the Parties submitted supplemental briefing, the Court denied Plaintiffs' Motion for Class Certification. Dkt. 135.

## ARGUMENT

### I. This Court should refuse joinder of this action and sever the remaining Named Plaintiffs.

Under Federal Rule of Civil Procedure 21, the district court has discretion to sever any claim or party from an action. Specifically, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, . . . ensuring judicial economy, . . . or safeguarding principles of fundamental fairness. *See Acevedo v. Allsup*'s *Convenience Stores, Inc*., 600 F.3d 516, 521 (5th Cir. 2010) ("internal citations omitted"); *see also UWM Student Ass'n v. Lovell*, 888 F.3d 854, 859 (7th Cir. 2018) (discussing discretion in context of Rule 20 joinder); *Gomez v. Global Precision Sys., LLC*, 636 F. Supp. 3d 746, 752 (W.D. Tex. 2022) ("[T]oo many individual plaintiffs, each having to separately litigate their claims, creates a hectic if not unworkable scenario for all involved… ."). In determining whether severance is appropriate, district courts look to five factors: "(1) whether claims arise out of the same transaction, occurrence, or series of transactions or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated, (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Def. Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022).

In *Acevado*, the district court denied joinder of claims where current and former employees brought suit against their employer for payment of unpaid wages and overtime. *Acevado,* 600 F.3d 516. There, after class certification was denied, the employees attempted to join their claims

against the former employer in a single action. *Id*. The Fifth Circuit affirmed the district court's decision to sever the plaintiffs. Although Plaintiffs all worked for the same employer, the district court determined that the former and current employees worked at different stores where a different manager was responsible for implementing the policies of the employer. *Id*. at 522. Because the evidence and witnesses were located in different locations, severance was the appropriate remedy. *See id.*

Similar to *Acevado*, here, the Court should deny joinder since the individual Named Plaintiffs' witnesses and documentary proof are spread out across the country. It is undisputed that the Plaintiffs were employed at different locations of the FBI with different managers in charge of implementing the COVID protocols. *E.g.*, Dkt. 118, Exh. 1, Geren Dep., 9:6-8, 10:1-2 (Phoenix Field Office); Dkt. 80-1 at 14, Brunstetter Decl., ¶ 1 (Texas City Resident Agency of the Houston Division); Dkt. 118 Exh. 2, Cribbs Dep., 11:20-24, 24:4-13 (Harrisburg, PA). Of the Named Plaintiffs, only four reside in the Southern District of Texas. Severance is proper on this basis alone. *See Henderson v. AT&T Corp.,* 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (finding severance appropriate where plaintiffs brought a pattern of discrimination and were located on separate teams in different offices).

In addition, Defendants will assert different defenses and develop different evidentiary records based on each individual Named Plaintiff. For example, the Plaintiffs bringing failure to accommodate claims will require individualized inquiries into whether an accommodation would have placed an undue hardship on the specific team or office they were working in, such that litigation near the sources of proof would promote efficiency and convenience to the witnesses. *See Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (failure to accommodate claim's "undue hardship"

is a "fact-specific inquiry" that is "shown when a burden is substantial in the overall context of an employer's business").

Last, Defendants would be prejudiced by the joinder of these actions. As this Court found in the class action decision, the Plaintiffs have varying levels of injuries and damage which will require each individual to meet their burden of proof as to damages. Without severance, the U.S. Attorney's Office in this district would be required to expend significant resources managing a massive lawsuit in the same district where the individual Plaintiffs do not have the same evidentiary record or damages.

Accordingly, the Court should sever the Named Plaintiffs' claims because they bring individual and distinct claims of discrimination that will need individualized proof necessary to support each claim of discrimination. *See Thompson v. Ingalls Shipbuilding*, No. 1:01CV111-LG-RHW, 2006 U.S. Dist. LEXIS 58117, at *8-9 (S.D. Miss. Aug. 17, 2006) ("Most if not all, of the central claims of discrimination will require different witnesses and documentary proof. Although severing the claims will result in a greater number of trials, severance will allow the Court to better manage and resolve the individual claims of Plaintiffs.").

## II. The Court should transfer the Named Plaintiffs' claims to the venue for where their claims arose.

In addition to severance, this Court should transfer the Named Plaintiffs' lawsuits to the venue where each Named Plaintiff was employed when the COVID Protocol went into place. *See* Ex. 1, List of Plaintiffs' work locations and Proposed Transfer Locations.[2] Given the fact that the actions at issue occurred in the location where each Plaintiff was working at the time, Plaintiffs' claims will require evidence and testimony of witnesses located in the venue in which their claims arose.

[2] Defendants are not requesting transfer of the Plaintiffs located in the Southern District of Texas, just severance.

**A. Venue is not proper in this district for Plaintiffs who did not work for the FBI in the Southern District of Texas.**

For Plaintiffs who do not reside in this district and for whom the events giving rise to suit did not occur in this district, there is no basis for venue in this district.

The federal venue statute provides that in suits brought against an officer of the United States, venue is proper where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).

Focusing on the first prong, Courts have rejected the view that section 1391(e)(1)(A) provides that venue for suits against the United States and its agencies and officers can brought in every judicial district in the country. *E.g.*, *RAJMP, Inc. v. United States*, No. 18-CV-03045-PAB, 2019 WL 2613304, at *2 (D. Colo. May 9, 2019) (rejecting argument that the United States resides in every judicial district) (citation omitted); *Adams, Nash & Haskell, Inc. v. United States*, No. 2:19-CV-03529, 2020 WL 1305620, at *2 (D.N.J. Mar. 19, 2020) ("[T]he only named defendant, the United States, resides in the District of Columbia, and thus venue cannot lie in New Jersey . . . ."); *Downey v. US*, No. CV 19-00406 LEK-WRP, 2019 WL 4143288, at *4 (D. Haw. Aug. 30, 2019) (United States not a resident of Hawai'i for venue purposes); *Zhang v. Chertoff*, No. C 08-02589 JW, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) ("[U]nder § 1391(e)(1), federal government defendants do not reside in every judicial district in which an agency has an office.") (citation omitted); *Shaqran v. Blinken*, No. CV 23-1406, 2024 WL 3237595, at *5 (E.D. Pa. June 27, 2024) (dismissing a claim brought against United States and federal agencies for improper venue because "[f]or purposes of § 1391(e)(1)(A), the United States and its agencies reside in Washington, D.C.") (citing *Adams*, 2020 WL 1305620, at *2).

Accordingly, courts regularly dismiss or transfer cases brought against federal agencies on the basis that venue is improper under section 1391(e)(1)(A), because those agencies reside elsewhere, typically the District of Columbia, even when the agencies have offices and operations throughout the nation. "For venue purposes, agencies and agency heads reside where they maintain [their] official residence, i.e., perform[ ] [their] official duties. That generally makes federal officials and agencies—like defendants Secretary of State Rubio and the U.S. Department of State—"residents" of the District of Columbia under § 1391(e))." *Alghooneh v. U.S. Dep't of State*, No. 25-10878, 2025 WL 3079363, at *2 (E.D. Mich. Nov. 4, 2025).

In other words, "[w]hile the United States and agencies of the United States undoubtedly have offices in nearly every judicial district, it does not mean that a person can bring suit wherever an office is located." *Holz v. United States*, No. 3:08-CV-1568-P, 2009 WL 10704725, at *2 (N.D. Tex. Sept. 28, 2009) (citing *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978)). "To hold that a federal agency can be sued Eo nomine wherever it maintains an office would, as a practical matter render subsections (2) [and] (3) . . . superfluous." *Id*. (citing *Donnelley*, 580 F.2d at 267);

Courts therefore regularly transfer or dismiss cases against federal agencies or officers that are brought outside Washington, D.C. or where official duties are performed. Relevant here, the FBI resides in Washington, D.C. *See, e.g.*, *Perez v. FBI*, Civ. No. 26-4236, 2026 WL 1587495, at *2-3 (S.D.N.Y. June 2, 2026) (transferring case in part because, under section 1391(e)(1)(A), FBI resides in the District of Columbia). Thus, the claims brought by any Plaintiff who does not reside in this district must be transferred.

**B. In the alternative, the claims should be transferred for the sake of convenience.**

Alternatively, when transfer is not mandatory, a district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)

(citing *Caldwell v. Palmetto State Sav. Bank.*, 811 F.2d 916, 919 (5th Cir. 1987)); *see In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312 (5th Cir. 2008) (appellate courts review district court's decision under the abuse of discretion standard, and "in no case will we replace a district court's exercise of discretion with our own.").

28 U.S.C. § 1404 allows for a change of venue "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. §1404. The movant "bears the burden of demonstrating that a transfer of venue is warranted for convenience purposes." *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312. In determining whether transfer is appropriate, the court considers private and public interest factors.

The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen*, 545 F.3d at 315. As for the private interest factors, they are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*

In this case, the public and private interests weigh in favor of transfer. To begin, Plaintiffs do not share a common position, common office location, common supervisors, or common job duties. *See* Dkt. 118 at 19 (citing declarations and depositions showing Plaintiffs different positions

and locations). Regarding the public interest factors, transfer will result in the Named Plaintiffs' witnesses and evidence being located in the local forum for which they were employed during the COVID protocols, which would serve local interests in having localized interests decided at home. The majority of the Named Plaintiffs (31 out of 34) have no connection with the Southern District of Texas. *See* Ex. 1.

As to the private interest factors, the practical challenges with proceeding with this forum also counsel in favor of transfer. If all Named Plaintiffs were to continue in this venue, this would require Plaintiffs and Defendant to expend numerous resources to bring witnesses to trial and depositions and inconvenience witnesses who would have to travel farther. These witnesses could include Plaintiffs, Plaintiffs' current or former supervisors, as well as potentially coworkers or other fact witnesses. *See Hester v. Phillips 65 Co.*, No. H-18-1078, 2019 U.S. Dist. LEXIS 72840, at *10 (S.D. Tex. Apr. 30, 2019) ("The ability to secure the attendance of witnesses 'is arguably the most important of the factors listed."). The relative ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, and the cost of attendance for willing witnesses all weigh in favor of transfer.

Lastly, there is no practical reason for these Plaintiffs to remain in this venue. The district court case is closed- but what is really important here is that there seems to be an appeal and the deadline for appellant's brief is 8/28/2026 and idk if OIL is aware of this appeal or is taking over the appeal. The majority of Plaintiffs' alleged decisionmakers are not located in this district. Further, Plaintiffs themselves have testified that every office handled the COVID protocols differently. This will ultimately result in every Plaintiff relying on different witnesses and evidence. These lawsuits will be better handled by the local district for which the claims arose and will not prejudice the Plaintiffs in pursuing their individual discrimination claims.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court sever and transfer the Plaintiffs.

Dated: July 31, 2026

Respectfully submitted,

AARON REITZ
ACTING UNITED STATES ATTORNEY

By: */s/ Natasha Alexander*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Natasha Alexander
Assistant United States Attorney
Southern District No. 3770021
Texas Bar No. 24125476
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9000
Fax: (713) 718-3303
Email: myra.siddiqui@usdoj.gov
E-mail: natasha.alexander@usdoj.gov
Counsel for Defendants

**CERTIFICATE OF CONFERENCE**

I certify that on July 17, 2026, I conferred with Plaintiffs' counsel about Defendant's decision to move to transfer and sever the Plaintiffs. Plaintiffs indicated they were opposed to this relief.

*/s/ Natasha Alexander*
Natasha Alexander
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that, on July 31, 2026, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*/s/ Natasha Alexander*
Natasha Alexander
Assistant United States Attorney