**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Feds for Freedom, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>Todd Blanche, et al.,<br><br>*Defendants*. | Case No.: 4:23-cv-01817 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS**
**TO SEVER AND TRANSFER**

COME NOW, Plaintiffs, by and through undersigned counsel, and argue the following in opposition to Defendants' motions to sever and transfer.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs Amended Complaint provides a detailed chronology of the events in this case. For purposes of the present motion, the essential facts are as follows:

Plaintiffs challenge the FBI's implementation of Executive Order 14043, which required that federal employees be vaccinated against COVID-19, to the extent consistent with applicable law. *Dkt.* 6, ¶ 71. President Biden implemented the mandate "to protect vaccinated workers from unvaccinated co-workers," despite the fact that it was public knowledge the vaccine did not prevent transmission of the disease; it merely worked well in preventing severe illness and death. *Id*. at ¶¶ 70-73.

On September 13, 2021, DOJ and FBI implemented the President's mandate. *Id*. at ¶74 They threatened that employees who failed to be fully vaccinated would be subject to "possible

disciplinary action up to and including removal from federal service," unless they secured an exemption through the reasonable accommodation process. Id. at ¶¶75-76. Holding religious beliefs that conflicted with the mandate, Plaintiffs, employees of the FBI, filed for reasonable accommodations based on those beliefs in the fall of 2021. *Id*. at ¶¶ 9, 161. Defendants neither adjudicated Plaintiffs' requests nor engaged in any interactive process or communication about how, when or whether to accommodate Plaintiffs' requests. *See e.g*., *id*. at ¶¶ 82, 89, 180.

Instead, Defendants required all employees who requested religious accommodations to the vaccine to engage in mandatory safety protocols such as testing, masking, and social distancing, pending the outcome of their accommodation requests. Id. at ¶¶ 88, 89. Defendants did not require workers who had no religious objections to the vaccine to undergo such testing, nor did they require contractors, Task Force Officers or detailees to be vaccinated or test. *Id*. at ¶ 98. Not only was it public knowledge that the vaccine did not prevent spread, but also vaccinated employees working in the FBI were spreading COVID-19 at work and were still not required to test, even after returning to work from being sick. *Id.* at ¶¶ 70-73, 97.

When several Plaintiffs filed religious accommodation requests to be exempt from testing, they found their requests denied in short order and their statuses on AWOL. *Id.* at ¶ 96. Plaintiffs suffered adverse employment actions due to their religious beliefs; defendants prohibited Plaintiffs from work travel and temporary assignments, denied them training and career opportunities, and restricted job duties. *Id.* at ¶¶ 107-109. They placed many Plaintiffs on AWOL status or required them to take accrued leave; they subjected them to disciplinary findings in their personnel files; and they reassigned them to different roles. *Id.* at ¶¶ 110-112. Defendants repeatedly threatened them with disciplinary action and termination and constructively discharged several of them.

**ARGUMENT**

Defendants move for joint severance and transfer of those Plaintiffs who were stationed outside of the Southern District of Texas. It is clear from precedent that the Fifth Circuit analyzes joint severance and transfer differently than cases that analyze severance or transfer alone.

In *Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), the Court explained that it had occasion to discuss the standards for joint severance and transfer on two occasions. "In a well-known opinion, this court noted that our jurisprudence suggests the severance inquiry is different—and more focused on judicial efficiency—when it is combined with a section 1404 motion to transfer than when the severed case would remain in the original judicial district." *Id* at 431.

Turning first to severance, "In the Fifth Circuit, the accepted basis for Rule 21 severance analysis considers five factors: (1) whether claims arise out of the same transaction, occurrence, or series of transactions or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Def. Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022)

"Although a district court has broad discretion to sever parties that were otherwise properly joined by a Plaintiff, under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id* at 427 (quoting *United Mine Workers v Gibbs*, 383 U.S. 715, 724 (1966), cleaned up.)

Here, Plaintiffs are challenging a national policy enforced uniformly throughout the Bureau. *See*, Am. Compl. ¶¶ 67-106, dckt. No. 86. To the extent that there was any variation in the enforcement, this will tend to speak to the damages, not the offense, and where it speaks to the offense (as in the constructive discharge plaintiffs) the variation is in the smaller subset of plaintiffs.

It follows that the claims arise out of the same transaction, occurrence, or series of transactions or occurrences. This Court already found as much with respect to the putative disparate impact class, which is the largest group of plaintiffs, and suggested that it may have been possible to find the same for the putative

subclass of plaintiffs who were denied accommodations for masking and testing. *See* Dckt. No. 135.

Severance would not serve the purpose of judicial economy, as it would require groups of plaintiffs spread out in eighteen locations[1] across the nation to call any common witnesses involved in setting the Bureau's national COVID policy into potentially eighteen different courts to testify, to say nothing of difficulties involving discovery, including depositions. Severance would prejudice the plaintiffs, who would have to shoulder the additional burden and expense of litigating in eighteen, instead of one, jurisdiction. Finally, as discussed above, although there are some differences in witnesses and documentary proof, most of this evidence is the same across Plaintiffs' claims, but would have to be brought into eighteen different courts with the possibility of conflicting outcomes arising out of the same evidence.

Turning next to transfer, in one instance where, as here, the Fifth Circuit considered a severance and transfer request, the Court set out parameters for considerations:

> [A]court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places. That being the situation here, the district court should not have severed the claims if there were any alternative. Manifestly, the Plaintiffs will suffer some inconvenience if they are forced to litigate their claims in two courts, half the world apart from each other, with not only the consequent added expense and inconvenience but also the possible detriment of inconsistent results. […] The public also has an interest in facilitating a speedy and less-expensive determination in one forum of all of the issues arising out of one episode.

*Liaw Su Teng v. Skaarup Shipping Corp*., 743 F.2d 1140, 1148-49 (5th Cir. 1984)

Although the question in *Liaw Su Teng* was severance of defendants as opposed to plaintiffs, the analysis turned on the expense and inconvenience to the plaintiffs, in addition to the possibility of inconsistent results.

All of these concerns exist in this case and prejudice Plaintiffs more dramatically than Defendants. In the case of transfer, a core group of witnesses would be common to all of the Plaintiffs' cases, yet these witnesses would have to travel and testify in as many as eighteen different

[1] Birmingham, AL; Chantilly, VA; Charlotte, NC; Chicago, IL; Clarksburg, WV; El Paso, TX; Houston, TX; Jacksonville, FL; Las Cruces, NM; Las Vegas, NV; Miami, FL; Philadelphia, PA; New Orleans, LA; Phoenix, AZ; Quantico, VA; San Francisco, CA; Tampa, FL; Washington, DC.

jurisdictions, perhaps providing inconsistent testimony on a common set of facts. Should the group remain intact in this District, it is likely that local Bureau staff would have to travel here to testify, but the testimony would not be duplicative, as it would be in the case of severance and transfer.

## CONCLUSION

The framework for considering a request for severance and transfer favor Plaintiffs' desire to maintain the *status quo*, with Plaintiffs joined in one action in this Court. Accordingly, this Court should deny Defendants' motion for severance and transfer.

Dated: August 14, 2026

Respectfully Submitted,

/s/ E. Scott Lloyd
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
(540) 823-1110
scott@lloydlg.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 14, 2026, I caused the foregoing to be served upon the Defendants by electronic service through ECF.

/s/ E. Scott Lloyd
E. Scott Lloyd